# EXHIBIT A-43

# PHILADELPHIA COURT OF COMMON PLEAS
## PETITION/MOTION COVER SHEET

| CONTROL NUMBER: |
| --- |
| 23110834 |
| **(RESPONDING PARTIES MUST INCLUDE THIS NUMBER ON ALL FILINGS)** |

### FOR COURT USE ONLY

| ASSIGNED TO JUDGE: | ANSWER/RESPONSE DATE: |
| --- | --- |
| | 11/27/2023 |

*Do not send Judge courtesy copy of Petition/Motion/Answer/Response.*
*Status may be obtained online at http://courts.phila.gov*

March _____ Term, 2022
*Month* *Year*

No. _____ 02594

---

DRAYTON ETAL VS MEAD JOHNSON & COMPANY, LLC ETAL

Name of Filing Party:

A D-PMNR
SHONDERA DRAYTON-PLF

---

**INDICATE NATURE OF DOCUMENT FILED:**

☐ Petition *(Attach Rule to Show Cause)*  ☒ Motion
☐ Answer to Petition  ☐ Response to Motion

Has another petition/motion been decided in this case? ☒ Yes ☐ No
Is another petition/motion pending? ☒ Yes ☐ No

*If the answer to either question is yes, you must identify the judge(s):*
JUDGE CARPENTER

---

TYPE OF PETITION/MOTION (see list on reverse side)

MOT TO COMPEL DEPOSITION

PETITION/MOTION CODE
(see list on reverse side)
MTCDD

ANSWER / RESPONSE FILED TO (Please insert the title of the corresponding petition/motion to which you are responding):

---

**I. CASE PROGRAM**

DAY FORWARD/MAJOR JURY PROGRAM

Name of Judicial Team Leader: JUDGE LINDA CARPENTER

Applicable Petition/Motion Deadline: 07/06/2023
Has deadline been previously extended by the Court: NO

**II. PARTIES** *(required for proof of service)*
(Name, address and **telephone number** of all counsel of record and unrepresented parties. Attach a stamped addressed envelope for each attorney of record and unrepresented party.)

JAMES A YOUNG
  BURNS WHITE LLC 1880 JOHN F. KENNEDY BOULEVARD 10TH FLOOR , PHILADELPHIA PA 19103
RICHARD S MARGULIES
  BURNS WHITE LLC 1880 JFK BLVD., 10TH FLR , PHILADELPHIA PA 19103
JOSEPH E ONEIL
  CAMPBELL CONROY & ONEIL 1205 WESTLAKES DR SUITE 330 , BERWYN PA 19312
SEAN P FAHEY
  TROUTMAN PEPPER 3000 TWO LOGAN SQ 18TH AND ARCH STREETS , PHILADELPHIA PA 19103-2799
KENNETH A MURPHY
  TUCKER LAW GROUP, LLC 1801 MARKET

---

**III. OTHER**

---

By filing this document and signing below, the moving party certifies that this motion, petition, answer or response along with all documents filed, will be served upon all counsel and unrepresented parties as required by rules of Court (see PA. R.C.P. 206.6, Note to 208.2(a), and 440). Furthermore, moving party verifies that the answers made herein are true and correct and understands that sanctions may be imposed for inaccurate or incomplete answers.

November 3, 2023   TIMOTHY A. BURKE

_____   _____   _____   _____
*(Attorney Signature/Unrepresented Party)*   *(Date)*   *(Print Name)*   *(Attorney I.D. No.)*

**The Petition, Motion and Answer or Response, if any, will be forwarded to the Court after the Answer/Response Date.**
**No extension of the Answer/Response Date will be granted even if the parties so stipulate.**

30-1061B E-File# 2311008204
03-NOV-23 15:36:21

STREET SUITE 2500 , PHILADELPHIA PA
19103-6996
MARQUES HILLMAN RICHESON
JONES DAY 901 LAKESIDE AVENUE NORTH
POINT , CLEVELAND OH 44114
THOMAS R KLINE
KLINE & SPECTER 1525 LOCUST ST., 19TH
FL. , PHILADELPHIA PA 19102
BENJAMIN WHITIING
KELLER POSTMAN 150 N. RIVERSIDE PLAZA
SUITE 1400 , CHICAGO IL 60606

**FILED**
03 NOV 2023 01:07 pm
**Civil Administration**
J. BOYD

| | |
|---|---|
| TERRAINE ABDULLAH, et al.,<br>                    Plaintiff,<br>          v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>                    Defendants. | :<br>:  MARCH TERM, 2022<br>:  No. 220302583<br>:<br>: |
| HOLLI CARTER, et al.,<br>                    Plaintiff,<br>          v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>                    Defendants. | :<br>:  MARCH TERM, 2022<br>:  No. 220302588<br>:<br>: |
| SHONDERA DRAYTON, et al.,<br>                    Plaintiff,<br>          v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>                    Defendants. | :<br>:  MARCH TERM, 2022<br>:  No. 220302594<br>:<br>: |
| JANEE HENDERSON, et al.,<br>                    Plaintiff,<br>          v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>                    Defendants. | :<br>:  APRIL TERM, 2022<br>:  No. 220400127<br>:<br>: |
| SHEMIKA JOHNSON, et al.,<br>                    Plaintiff,<br>          v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>                    Defendants. | :<br>:  APRIL TERM, 2022<br>:  No. 220400162<br>:<br>: |
| DAMEKA MOMENT, et al.,<br>                    Plaintiff,<br>          v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>                    Defendants. | :<br>:  APRIL TERM, 2022<br>:  No. 220400142<br>:<br>: |
| LOREN SANDERS, et al.,<br>                    Plaintiff,<br>          v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>                    Defendants. | :<br>:  APRIL TERM, 2022<br>:  No. 220400153<br>:<br>: |
| SAMAYA SHORT, et al.,<br>                    Plaintiff,<br>          v.<br>MEAD JOHNSON & COMPANY, LLC, et al., | :<br>:  APRIL TERM, 2022<br>:  No. 220400159<br>: |

| | |
|---|---|
| Defendants. : | |
| ALICE STILLS, et al., :<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al., :<br>Defendants. : | MARCH TERM, 2022<br>No. 220302617 |
| CHRISTINA TAYLOR, et al., :<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al., :<br>Defendants. : | MARCH TERM, 2022<br>No. 220302606 |
| NATISHA THOMAS, et al., :<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al., :<br>Defendants. : | MARCH TERM, 2022<br>No. 220400158 |
| TRINA WALKER-SAVAGE and CLIFTON :<br>ISAIAH SAVAGE, JR., et al., :<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al., :<br>Defendants. : | MARCH TERM, 2022<br>No. 220400156 |
| ROBERT WHITFIELD, et al., :<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al., :<br>Defendants. : | APRIL TERM, 2022<br>No. 220400145 |
| GINA WIEGER, et al., :<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al., :<br>Defendants. : | MARCH TERM, 2022<br>No. 220302614 |
| GINA WIEGER, et al., :<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, LLC, et al., :<br>Defendants. : | MARCH TERM, 2022<br>No. 220302601 |
| MELVENIA WILLIAMS, et al., :<br>Plaintiff, :<br>v. :<br>MEAD JOHNSON & COMPANY, :<br>LLC, et al., | APRIL TERM, 2022<br>No. 220400141 |

Case ID: 220302594<br>Control No.: 23110834

| Defendants. | : | |
| IVYANN WITHERSPOON, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400138 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

## ORDER

**AND NOW** this _____ day of _____, 2023, upon

consideration of Plaintiff's Motion to Compel Deposition of Defendant, Hospital of The University

of Pennsylvania's Corporate Designee, and any response thereto, is hereby **ORDERED** that said

Motion is **GRANTED.**

**IT IS FURTHER ORDERED** that counsel for Defendant shall make Defendant's

Corporate Designee available within 20 days of the date of this Order, on a mutually agreeable

date and time.

**BY THE COURT:**

_____
J.

*Discovery Deadline: February 5, 2024*

Case ID: 220302594
Control No.: 23110834

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

| | |
|---|---|
| TERRAINE ABDULLAH, et al., : | |
| Plaintiff, : | MARCH TERM, 2022 |
| v. : | No. 220302583 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| HOLLI CARTER, et al., : | |
| Plaintiff, : | MARCH TERM, 2022 |
| v. : | No. 220302588 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| SHONDERA DRAYTON, et al., : | |
| Plaintiff, : | MARCH TERM, 2022 |
| v. : | No. 220302594 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| JANEE HENDERSON, et al., : | |
| Plaintiff, : | APRIL TERM, 2022 |
| v. : | No. 220400127 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| SHEMIKA JOHNSON, et al., : | |
| Plaintiff, : | APRIL TERM, 2022 |
| v. : | No. 220400162 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| DAMEKA MOMENT, et al., : | |

|  |  |
|---|---|
| Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | : APRIL TERM, 2022<br>: No. 220400142<br>:<br>:<br>: |
| LOREN SANDERS, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400153<br>:<br>: |
| SAMAYA SHORT, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400159<br>:<br>: |
| ALICE STILLS, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220302617<br>:<br>: |
| CHRISTINA TAYLOR, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220302606<br>:<br>: |
| NATISHA THOMAS, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220400158<br>:<br>: |
| TRINA WALKER-SAVAGE and CLIFTON<br>ISAIAH SAVAGE, JR., et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220400156<br>:<br>:<br>: |
| ROBERT WHITFIELD, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400145<br>:<br>: |
| GINA WIEGER, et al.,<br>Plaintiff,<br>v. | :<br>: MARCH TERM, 2022<br>: No. 220302614 |

MEAD JOHNSON & COMPANY, LLC, et al.,      :
            Defendants.      :

GINA WIEGER, et al.,      :
        Plaintiff,      :   MARCH TERM, 2022
     v.      :   No. 220302601
MEAD JOHNSON & COMPANY, LLC, et al.,      :
            Defendants.      :

        MELVENIA WILLIAMS, et al.,      :
   Plaintiff,      :   APRIL TERM, 2022
v.      : No. 220400141
        MEAD JOHNSON & COMPANY,      :
        LLC, et al.,      :
Defendants.      :

        IVYANN WITHERSPOON, et al.,      :
   Plaintiff,      :   APRIL TERM, 2022
v.      : No. 220400138
        MEAD JOHNSON & COMPANY,      :
        LLC, et al.,      :
Defendants.      :

## PLAINTIFFS' MOTION TO COMPEL THE DEPOSITION OF
## CORPORATE DESIGNEE

      Plaintiffs, by and through their counsel, Kline & Specter, P.C., submit this Motion to Compel the Deposition of Defendant Hospital of the University of Pennsylvania's Corporate Designee as follows:

## FACTUAL BACKGROUND

   1.  This action arises out of the injuries suffered by premature infants who were given the Defendant Manufacturers' bovine-based infant feeding products at the named Defendant Hospital. The Defendant Hospital acquired and supplied the Defendant Manufacturers' products to the Injured Infants and negligently failed to warn of their unreasonably dangerous properties in a reasonable manner. This caused the Injured premature Infants to develop necrotizing enterocolitis ("NEC"), a life-altering and potentially deadly disease that largely affects premature babies who are given bovine-based feeding products. As a result, the Injured Infants were

Case ID: 220302594
Control No.: 23110834

seriously injured, resulting in long term health effects and accompanying harm to their parent ("the Plaintiff Parent").

2. Plaintiffs bring these causes of action against Defendants to recover for injuries that are the direct and proximate result of the Injured Infants' consumption of the Defendant Manufacturers' unreasonably dangerous bovine-based infant feeding products, which were acquired and supplied without adequate warning to the Injured Infants by the Defendant Hospital.

3. Plaintiffs commenced these actions by filing complaints in March and April of 2022.

4. On August 17, 2023, Plaintiff's Counsel emailed Defense Counsel indicating the need to depose Defendant's Corporate Designee. See Email of August 17, 2023, and corresponding Letter and Notice of Deposition attached hereto as Exhibit "A".

5. On September 27, 2023, Plaintiff's Counsel emailed Defense Counsel to follow up on the August 17, 2023, request to depose Defendant's Corporate Designee because Defendants never provided dates for said deposition. See Email of September 27, 2023, attached hereto as Exhibit "B".

6. On October 11, 2023, Plaintiff's Counsel emailed Defense Counsel a Notice of Deposition to depose Defendant's Corporate Designee on November 1, 2023, because Defendants never provided dates for said deposition. See Email of October 11, 2023, and corresponding Notice of Deposition attached hereto as Exhibit "C".

7. On October 30, 2023, Defendants emailed Plaintiffs refusing to produce Defendant's Corporate Designee for deposition on November 1, 2023. See Email of October 30, 2023, attached hereto as Exhibit "D".

8. To date, Defense counsel has not provided any available dates for the deposition of Defendant's Corporate Designee.

9.  Pennsylvania Rule of Civil Procedure 4001 states in relevant part that a "party may take the testimony of any person, including a party, by deposition upon oral examination … for the purpose of discovery … or for preparation or trial of a case."

10. Plaintiffs will be severely prejudiced in their ability to prepare their cases for trial and/or resolve these cases through settlement without this deposition.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter an Order in the form attached hereto, compelling the deposition of Defendant's Corporate Designee within twenty (20) days of this Order or suffer appropriate sanctions upon application to this Court.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By:     _/s/ John P. O'Neill_____
JOHN P.  O'NEILL, ESQUIRE
TIMOTHY A. BURKE, ESQUIRE
*Attorneys for Plaintiffs*

DATE:  November 3, 2023

## **VERIFICATION**

I, JOHN P. O'NEILL, ESQUIRE, hereby state that I am counsel for the Plaintiff in the above action and verify that the statements made in the foregoing **Plaintiff's Motion to Compel Depositions**, are true and correct to the best of my knowledge, information, and belief. The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

_____

JOHN P. O'NEILL, ESQUIRE

DATED:   November 3, 2023

## <u>CERTIFICATE OF SERVICE</u>

I, JOHN P. O'NEILL, ESQUIRE, hereby certify that on the date appearing below, a true and correct copy of **Plaintiff's Motion to Compel Depositions** was served upon the following counsel of record for all parties via the Court's electronic filing system:

**KLINE & SPECTER, P.C.**

By:    <u>*/s/ John P. O'Neill*        </u>
           JOHN P.  O'NEILL, ESQUIRE
           *Attorneys for Plaintiffs*

DATE:  <u>November 3, 2023</u>

FILED
03 NOV 2023 01:07 pm
Civil Administration
J. BOYD

# EXHIBIT A

Case ID: 220302594
Control No.: 23110834

| | |
|---|---|
| **From:** | Carol Lippmann |
| **To:** | jayoung@burnswhite.com; rsmargulies@burnswhite.com; srengle@burnswhite.com |
| **Cc:** | Tobi Millrood; Melissa Merk; Timothy Burke; Elizabeth Crawford; Jack O'Neill; Patrick Sidebotham; Ben Whiting; Mark Weinstein; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; Sean.Fahey@troutman.com; dbrooks@eckertseamans.com; Brooke Scicchitano; Jennifer V. Weachter |
| **Bcc:** | NECPhiladelphiaGeneralZ3453077@klinespecter.filevineapp.com |
| **Subject:** | NEC Infant Formula Litigation \| The Pennsylvania Health System d/b/a Pennsylvania Hospital |
| **Date:** | Thursday, August 17, 2023 8:09:00 PM |
| **Attachments:** | 2023-08-17 Letter to Penn Hospital re NoD.pdf |
| | NEC Corp Designee NoD - UPH dba Penn Hospital.pdf |

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate Designee(s) of The The Pennsylvania Health System d/b/a Pennsylvania Hospital.


Thank you,

**Carol Lippmann**
Litigation Paralegal to Tobi Millrood, Esq.
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
D. (215) 772-1392
F. (215) 792-5502
Carol.lippmann@klinespecter.com
www.klinespecter.com

Case ID: 220302594
Control No.: 23110834

# KLINE & SPECTER PC

**ATTORNEYS AT LAW**
**1525 LOCUST STREET**
**PHILADELPHIA, PENNSYLVANIA 19102**
**WWW.KLINESPECTER.COM**

TOBIAS L. MILLROOD                                                     TOBI.MILLROOD@KLINESPECTER.COM

_____

**215-772-1358**

**800-597-9585**

FAX: **215-792-5502**

August 17, 2023

**Via Email Only**
James A. Young, Esquire
Richard S. Margulies, Esquire
Susan R. Engle, Esquire
BURNS WHITE LLC
1880 John F. Kennedy Boulevard, 10th FL
Philadelphia, PA 19103

      Re:    Abdullah, et al.. v. Mead Johnson & Company, et al., Case No. 2203025832
               Carter, et al., v. Mead Johnson & Company, et al., Case No. 220302588
               Drayton et al., v. Mead Johnson & Company, et al., Case No.220302594
               Stills, et al., v. Mead Johnson & Company, et al., Case No. 220302617
               Taylor, et al., v. Mead Johnson & Company, et al., Case No. 220302606
               Wieger, et al., v. Mead Johnson & Company, et al., Case No.220302614
               Wieger, et al., v. Mead Johnson & Company, et al., Case No. 220302601
               Henderson, et al., v. Mead Johnson & Company, et al., Case No. 220400127

Dear Counsel:

      Attached is a Notice of Video Deposition of the Corporate Designee(s) of Defendant The
Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania
Hospital. This notice applies to the following the following cases pending against The
Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania
Hospital in the infant formula litigation.

- Abdullah, et al.. v. Mead Johnson & Company, et al., Case No. 2203025832
- Carter, et al., v. Mead Johnson & Company, et al., Case No. 220302588
- Drayton et al., v. Mead Johnson & Company, et al., Case No.220302594
- Stills, et al., v. Mead Johnson & Company, et al., Case No. 220302617
- Taylor, et al., v. Mead Johnson & Company, et al., Case No. 220302606
- Wieger, et al., v. Mead Johnson & Company, et al., Case No.220302614
- Wieger, et al., v. Mead Johnson & Company, et al., Case No. 220302601
- Henderson, et al., v. Mead Johnson & Company, et al., Case No. 220400127

Page 2

Very truly yours,

Tobias L. Millrood

Enclosure
cc:     All Counsel of Record (via email only)

Case ID: 220302594
Control No.: 23110834

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | | |
|---|---|---|
| TERRAINE ABDULLAH, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302583 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| HOLLI CARTER, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302588 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| SHONDERA DRAYTON, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302594 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| ALICE STILLS, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302617 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| CHRISTINA TAYLOR, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302606 |

1

| | |
|---|---|
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　Defendants. | :<br>: |
| GINA WIEGER, et al.,<br>　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　Defendants. | :<br>:<br>:　MARCH TERM, 2022<br>:　No. 220302614<br>:<br>: |
| GINA WIEGER, et al.,<br>　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　Defendants. | :<br>:<br>:　MARCH TERM, 2022<br>:　No. 220302601<br>:<br>: |
| JANEE HENDERSON, et al.,<br>　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:<br>.　APRIL TERM, 2022<br>.　No. 220400127<br>:<br>: |

**NOTICE OF VIDEO DEPOSITION OF CORPORATE DESIGNEE(S) OF THE
PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA
HEALTH SYSTEM d/b/a PENNSYLVANIA HOSPITAL**

TO:　　James A. Young, Esquire
　　　　Burns White LLC
　　　　1880 John F. Kennedy Blvd., 10th Floor
　　　　Philadelphia, PA 19103

　　　　**KINDLY TAKE NOTICE** that Plaintiffs in the above-captioned matter will take

the deposition(s) of one or more Corporate Designees of The Pennsylvania Hospital of

the University of Pennsylvania Health System d/b/a Pennsylvania Hospital (collectively,

"Defendants") on ___, 2023 at 10:00 a.m. at _____.

　　　　The deposition will be taken before a person duly authorized to administer oaths and

will be recorded by video and stenographic means.

　　　　Defendants are requested to designate one or more officers, directors, managing agents, or

other persons who shall be authorized to testify to matters known or reasonably available to the

2

Case ID: 220302594
Control No.: 23110834

organization and who is the individual most knowledgeable about the Neonatal Intensive Care

Unit at The Pennsylvania Hospital of the University of Pennsylvania Health System from 2002

to the present, and specifically including the following subjects:

1. All policies and procedures relating to premature babies and/or babies in the Neonatal Intensive Care Unit;
2. All policies and procedures relating to the feeding of premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
3. All policies and procedures relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
4. Knowledge of what year donor breast milk became available to mothers of premature babies and/or babies in the Neonatal Intensive Care Unit;
5. All policies and procedures as to when donor breast milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
6. Knowledge of what commercial formula/bovine formula(s) were given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
7. Knowledge of all of Defendants' policies and procedures relating to lactation consultants from 2002 to the present;
8. Knowledge of all policies and procedures pertaining to additional monitoring for premature babies and/or babies in the Neonatal Intensive Care Unit who receive commercial milk/bovine milk from 2002 to the present;
9. Knowledge of any policies and procedures pertaining to consent forms relating to giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
10. Knowledge of any policies and procedures pertaining to consent forms relating to giving donor breast milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
11. Knowledge of any policies and procedures pertaining to preventing necrotizing enterocolitis from 2002 to the present;
12. Knowledge of when it was known to Defendants that commercial milk/bovine milk can increase the risk of necrotizing enterocolitis from 2002 to the present;
13. Knowledge of any communications received by Defendants from Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present.
14. Knowledge of any communications from Defendants to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present;
15. Knowledge of any marketing, training, and/or promotional materials relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present.

3

16. Knowledge of the costs to and/or profits generated from Defendants provision of commercial milk/ bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and/or

17. Knowledge of any scholarly, educational, training and/or other materials relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present

Please consider this a request to produce any and all records, and/or documents that refer, relate, and/or pertain to the to the above-listed categories.

The deponent is also instructed to bring with him/her the following: (1) any and all communications and/or other documents involving Defendants and relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (2) any and all documents relating to communications between Defendants Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present; (3) any and all documents relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present; (4) any and all documents relating to any marketing, training, and/or promotional materials relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present. (5) any and all documents related to the costs to and/or profits generated from Defendants provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (6) any and all documents regarding any complaints and/or warnings related to the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present whether or not initiated or settled through

4

lawsuits, (7) all reports of injuries allegedly arising from the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and (9) any and all other documents relative to or responsive to this Notice of Deposition.

The deponent must also bring with him/her complete copies of all prior deposition transcripts where he/she has offered sworn testimony in cases involving similar or comparable products and/or allegations. The deponent shall also bring a copy of his or her CV or resume. The deposition will continue from day to day until completed.

**KLINE & SPECTER, P.C.**

/s/Tobias L. Millrood

TOBIAS L. MILLROOD, ESQUIRE

***Attorney for Plaintiff***

Case ID: 220302594
Control No.: 23110834

**<u>CERTIFICATE OF SERVICE</u>**

I, Tobias L. Millrood, hereby certify that on the date below, I served a true and correct copy of the foregoing Notice of Deposition on the following counsel of records:

| | |
|---|---|
| Catherine M. Recker (PA Bar No. 56813)<br>Amy B. Carver (PA Bar No. 84819)<br>Richard D. Walk, III (PA Bar No. 329420)<br>WELSH & RECKER, P.C.<br>306 Walnut Street<br>Philadelphia, PA 19106<br>Tel: (215) 972-6430<br>cmrecker@welshrecker.com<br>abcarver@welshrecker.com<br>rwalk@welshrecker.com<br><br>Kenneth A. Murphy, Esquire<br>Heather R. Olson, Esquire<br>TUCKER LAW GROUP, LLC<br>Ten Penn Center<br>1801 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>kmurphy@tlgattorneys.com<br>holson@tlgattorneys.com<br><br>*Attorneys for Defendant Mead Johnson &*<br>*Company LLC and* Mead Johnson Nutrition<br>Company | James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587-1625/1628/1669<br>jayoung@burnswhite.com<br>rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant University of*<br>*Pennsylvania Hospital of the University of*<br>*Pennsylvania Health System d/b/a*<br>*Pennsylvania Hospital and University of*<br>*Pennsylvania Hospital of the University of*<br>*Pennsylvania Health System d/b/a Penn*<br>*Medicine* |
| Sean P. Fahey, Esquire<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>Tel: (215) 981-4296<br>Sean.Fahey@troutman.com<br><br>Ronn E. Fuchs, Esquire<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>301 Carnegie Center, Suite 400 | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br>bscicchitano@eckertseamans.com<br>Jennifer V. Weachter<br>JWeachter@eckertseamans.com |

Case ID: 220302594<br>Control No.: 23110834

| | |
|---|---|
| Princeton, NJ 08540<br>Tel: (609) 951-4184<br>Ronni.Fuchs@troutman.com<br><br>Joseph E. O'Neill<br>Meaghann C. Porth<br>Ryan J. O'Neill<br>CAMPBELL CONROY & O'NEILL, P.C.<br>1205 Westlake Drive, Suite 330<br>Berwyn, PA 19312<br>Tel: (610) 964-1900<br><br><br>John R. Timmer (PA ID No. 89814)<br>SCHNADER HARRISON SEGAL<br>& LEWIS LLIP<br>1600 Market Street, Suite 3600<br>Philadelphia, PA 19103-7286<br>Tel: (215) 751-2309/2451<br>Fax: (215) 751-22-05<br>jtimmer@schnader.com<br><br>Kimberly A. Brown (PA ID No. 56200)<br>JONES DAY<br>500 Grant Street, Suite 4500<br>Pittsburgh, PA 15219<br>Tel: (412) 394-7995<br>Fax: (412) 394-7959<br>kabrown@jonesday.com<br><br><br>*Attorneys for Defendant Abbott Laboratories* | *Attorneys for Defendants Albert Einstein Medical Center a/k/a Einstein Medical Center and Albert Einstein Healthcare Network d/b/a Einstein Healthcare Network* |
| James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLOC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587=1625/1628/1669<br>jayoung@burnswhite.com<br>rsmargulies@burnswhite.com<br>srengle@burnswhite.com | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br>bscicchitano@eckertseamans.com<br>Jennifer V. Weachter<br>JWeachter@eckertseamans.com |

7

Case ID: 220302594<br>Control No.: 23110834

| *Attorneys for Defendant, Temple University Health System, Inc., d/b/a Temple University Hospital* | *Attorney for Defendants, Thomas Jefferson University Hospitals, Inc., d/b/a Thomas Jefferson University Hospital, and Thomas Jefferson University d/b/a Jefferson Health System* |
|---|---|

**KLINE & SPECTER, P.C.**

By: /s/ Tobias L. Millrood
    Tobias L. Millrood
    1525 Locust Street
    Philadelphia, PA 19102
    Phone: 215-772-1000
    Fax: 215-772-1359
    tobi.millrood@klinespecter.com

Dated: August 17, 2023         *Plaintiff's' Counsel*

Case ID: 220302594
Control No.: 23110834

| | |
|---|---|
| **From:** | Carol Lippmann |
| **To:** | jayoung@burnswhite.com; rsmargulies@burnswhite.com; srengle@burnswhite.com |
| **Cc:** | Tobi Millrood; Melissa Merk; Jack O"Neill; Elizabeth Crawford; Helen Lawless; Ben Whiting; Mark Weinstein; Patrick Sidebotham; Timothy Burke; jayoung@burnswhite.com; rsmargulies@burnswhite.com; srengle@burnswhite.com; dbrooks@eckertseamans.com; Brooke Scicchitano; Jennifer V. Weachter; Sean.Fahey@troutman.com; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com |
| **Bcc:** | NECPhiladelphiaGeneralZ3453077@klinespecter.filevineapp.com |
| **Subject:** | NEC Infant Formula Litigation | The Trustees of the University of Pennsylvania d/b/a Penn Medicine |
| **Date:** | Thursday, August 17, 2023 8:07:00 PM |
| **Attachments:** | 2023-08-17 Letter to Penn Medecine re NoD.pdf |
| | NEC Corp Designee NoD - UPH dba Penn Medicine.pdf |

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate Designee(s) of The Trustees of the University of Pennsylvania d/b/a Penn Medicine.


Thank you,

**Carol Lippmann**
Litigation Paralegal to Tobi Millrood, Esq.
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
D. (215) 772-1392
F. (215) 792-5502
Carol.lippmann@klinespecter.com
www.klinespecter.com

# KLINE & SPECTER PC

**ATTORNEYS AT LAW**
**1525 LOCUST STREET**
**PHILADELPHIA, PENNSYLVANIA 19102**
**WWW.KLINESPECTER.COM**

TOBIAS L. MILLROOD                                                    TOBI.MILLROOD@KLINESPECTER.COM

215-772-1358

800-597-9585

FAX: 215-792-5502

August 17, 2023

**Via Email Only**
James A. Young, Esquire
Richard S. Margulies, Esquire
Susan R. Engle, Esquire
BURNS WHITE LLC
1880 John F. Kennedy Boulevard, 10th FL
Philadelphia, PA 19103

> Re:     Johnson, et al.. v. Mead Johnson & Company, et al., Case No. 220400162
> McMillian, et al., v. Mead Johnson & Company, et al., Case No. 220400140
> Moment, et al., v. Mead Johnson & Company, et al., Case No.220400142
> Sanders, et al., v. Mead Johnson & Company, et al., Case No. 220400153
> Short, et al., v. Mead Johnson & Company, et al., Case No. 220400159
> Thomas, et al., v. Mead Johnson & Company, et al., Case No.220400158
> Walker-Savage, et al., v. Mead Johnson & Company, et al., Case No. 220400156
> Whitfield, et al., v. Mead Johnson & Company, et al., Case No. 220400145
> Williams, et al., v. Mead Johnson & Company, et al., Case No. 220400141
> Hines, et al., v. Mead Johnson & Company, et al., Case No. 220400136
> Witherspoon, et al., v. Mead Johnson & Company, et al., Case No. 220400138

Dear Counsel:

Attached is a Notice of Video Deposition of the Corporate Designee(s) of Defendant the Trustees of the University of Pennsylvania d/b/a Penn Medicine. This notice applies to the following the following cases pending against the Trustees of the University of Pennsylvania d/b/a Penn Medicine in the infant formula litigation.

- Johnson, et al.. v. Mead Johnson & Company, et al., Case No. 220400162
- McMillian, et al., v. Mead Johnson & Company, et al., Case No. 220400140
- Moment, et al., v. Mead Johnson & Company, et al., Case No.220400142
- Sanders, et al., v. Mead Johnson & Company, et al., Case No. 220400153
- Short, et al., v. Mead Johnson & Company, et al., Case No. 220400159
- Thomas, et al., v. Mead Johnson & Company, et al., Case No.220400158
- Walker-Savage, et al., v. Mead Johnson & Company, et al., Case No. 220400156
- Whitfield, et al., v. Mead Johnson & Company, et al., Case No. 220400145

Case ID: 220302594
Control No.: 23110834

Page 2

- Williams, et al., v. Mead Johnson & Company, et al., Case No. 220400141
- Hines, et al., v. Mead Johnson & Company, et al., Case No. 220400136
- Witherspoon, et al., v. Mead Johnson & Company, et al., Case No. 220400138

Very truly yours,

Tobias L. Millrood

Enclosure
cc:      All Counsel of Record (via email only)

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| SHEMIKA JOHNSON, et al., : Plaintiff, : v. : MEAD JOHNSON & COMPANY, LLC, et al., : Defendants. : | APRIL TERM, 2022 No. 220400162 |
| CATHERINE McMILLIAN, et al., : Plaintiff, : v. : MEAD JOHNSON & COMPANY, LLC, et al., : Defendants. : | APRIL TERM, 2022 No. 220400140 |
| DAMEKA MOMENT, et al., : Plaintiff, : v. : MEAD JOHNSON & COMPANY, LLC, et al., : Defendants. : | APRIL TERM, 2022 No. 220400142 |
| LOREN SANDERS, et al., : Plaintiff, : v. : MEAD JOHNSON & COMPANY, LLC, et al., : Defendants. : | APRIL TERM, 2022 No. 220400153 |
| SAMAYA SHORT, et al., : Plaintiff, : v. : | APRIL TERM, 2022 No. 220400159 |

1

Case ID: 220302594
Control No.: 23110834

| | |
|---|---|
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>                    Defendants. | :<br>: |
| NATISHA THOMAS, et al.,<br>                    Plaintiff,<br>          v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>                    Defendants. | :<br>:  MARCH TERM, 2022<br>:  No. 220400158<br>:<br>: |
| TRINA WALKER-SAVAGE and CLIFTON<br>ISAIAH SAVAGE, JR., et al.,<br>                    Plaintiff,<br>          v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>                    Defendants. | :<br>:  MARCH TERM, 2022<br>:  No. 220400156<br>:<br>:<br>: |
| ROBERT WHITFIELD, et al.,<br>                    Plaintiff,<br>          v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>                    Defendants. | :<br>:  APRIL TERM, 2022<br>:  No. 220400145<br>:<br>: |
| MELVENIA WILLIAMS, et al.,<br>                    Plaintiff,<br>          v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>                    Defendants. | :<br>:  APRIL TERM, 2022<br>:  No. 220400141<br>:<br>: |
| DELQUAN HINES, et al.,<br>                    Plaintiff,<br>          v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>                    Defendants. | :<br>:  APRIL TERM, 2022<br>:  No. 220400136<br>:<br>: |
| IVYANN WITHERSPOON, et al.,<br>                    Plaintiff,<br>          v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>                    Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400138<br>:<br>: |

**NOTICE OF VIDEO DEPOSITION OF CORPORATE DESIGNEE(S) OF THE
TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENN MEDICINE**

TO:     James A. Young, Esquire
        Richard S. Margulies, Esquire
        Susan R. Engle, Esquire
        BURNS WHITE LLC
        1880 John F. Kennedy Boulevard, 10th FL

2

Case ID: 220302594
Control No.: 23110834

Philadelphia, PA 19103

**KINDLY TAKE NOTICE** that Plaintiffs in the above-captioned matter will take the deposition(s) of one or more Corporate Designees of the Trustees of the University of Pennsylvania d/b/a Penn Medicine (collectively, "Defendants") on _____, 2023 at 10:00 a.m. at _____ .

The deposition will be taken before a person duly authorized to administer oaths and will be recorded by video and stenographic means.

Defendants are requested to designate one or more officers, directors, managing agents, or other persons who shall be authorized to testify to matters known or reasonably available to the organization and who is the individual most knowledgeable about the Neonatal Intensive Care Unit at The Pennsylvania Hospital of the University of Pennsylvania Health System from 2002 to the present, and specifically including the following subjects:

1. All policies and procedures relating to premature babies and/or babies in the Neonatal Intensive Care Unit;
2. All policies and procedures relating to the feeding of premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
3. All policies and procedures relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
4. Knowledge of what year donor breast milk became available to mothers of premature babies and/or babies in the Neonatal Intensive Care Unit;
5. All policies and procedures as to when donor breast milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
6. Knowledge of what commercial formula/bovine formula(s) were given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
7. Knowledge of all of Defendants' policies and procedures relating to lactation consultants from 2002 to the present;
8. Knowledge of all policies and procedures pertaining to additional monitoring for premature babies and/or babies in the Neonatal Intensive Care Unit who receive commercial milk/bovine milk from 2002 to the present;
9. Knowledge of any policies and procedures pertaining to consent forms relating to giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;

3

Case ID: 220302594
Control No.: 23110834

10. Knowledge of any policies and procedures pertaining to consent forms relating to giving donor breast milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;

11. Knowledge of any policies and procedures pertaining to preventing necrotizing enterocolitis from 2002 to the present;

12. Knowledge of when it was known to Defendants that commercial milk/bovine milk can increase the risk of necrotizing enterocolitis from 2002 to the present;

13. Knowledge of any communications received by Defendants from Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present.

14. Knowledge of any communications from Defendants to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present;

15. Knowledge of any marketing, training, and/or promotional materials relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present.

16. Knowledge of the costs to and/or profits generated from Defendants provision of commercial milk/ bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and/or

17. Knowledge of any scholarly, educational, training and/or other materials relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present

Please consider this a request to produce any and all records, and/or documents that refer, relate, and/or pertain to the to the above-listed categories.

The deponent is also instructed to bring with him/her the following: (1) any and all communications and/or other documents involving Defendants and relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (2) any and all documents relating to communications between Defendants Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present; (3) any and all documents relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present; (4) any and all documents relating to any marketing, training, and/or promotional materials

4

Case ID: 220302594
Control No.: 23110834

relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present. (5) any and all documents related to the costs to and/or profits generated from Defendants provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (6) any and all documents regarding any complaints and/or warnings related to the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present whether or not initiated or settled through lawsuits, (7) all reports of injuries allegedly arising from the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and (9) any and all other documents relative to or responsive to this Notice of Deposition.

The deponent must also bring with him/her complete copies of all prior deposition transcripts where he/she has offered sworn testimony in cases involving similar or comparable products and/or allegations. The deponent shall also bring a copy of his or her CV or resume. The deposition will continue from day to day until completed.

**KLINE & SPECTER, P.C.**

/s/Tobias L. Millrood

TOBIAS L. MILLROOD, ESQUIRE

*Attorney for Plaintiff*

5

Case ID: 220302594
Control No.: 23110834

## CERTIFICATE OF SERVICE

I, Tobias L. Millrood, hereby certify that on the date below, I served a true and correct

copy of the foregoing Notice of Deposition on the following counsel of records:

| | |
|---|---|
| Catherine M. Recker (PA Bar No. 56813)<br>Amy B. Carver (PA Bar No. 84819)<br>Richard D. Walk, III (PA Bar No. 329420)<br>WELSH & RECKER, P.C.<br>306 Walnut Street<br>Philadelphia, PA 19106<br>Tel: (215) 972-6430<br>cmrecker@welshrecker.com<br>abcarver@welshrecker.com<br>rwalk@welshrecker.com<br><br>Kenneth A. Murphy, Esquire<br>Heather R. Olson, Esquire<br>TUCKER LAW GROUP, LLC<br>Ten Penn Center<br>1801 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>kmurphy@tlgattorneys.com<br>holson@tlgattorneys.com<br><br><br>*Attorneys for Defendant Mead Johnson &<br>Company LLC and* Mead Johnson Nutrition<br>Company | James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587-1625/1628/1669<br>jayoung@burnswhite.com<br>rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant University of<br>Pennsylvania Hospital of the University of<br>Pennsylvania Health System d/b/a<br>Pennsylvania Hospital and University of<br>Pennsylvania Hospital of the University of<br>Pennsylvania Health System d/b/a Penn<br>Medicine* |
| Sean P. Fahey, Esquire<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>Tel: (215) 981-4296<br>Sean.Fahey@troutman.com<br><br>Ronn E. Fuchs, Esquire | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br>bscicchitano@eckertseamans.com |

6

Case ID: 220302594<br>Control No.: 23110834

| | |
|---|---|
| TROUTMAN PEPPER HAMILTON SANDERS LLP<br>301 Carnegie Center, Suite 400<br>Princeton, NJ 08540<br>Tel: (609) 951-4184<br>Ronni.Fuchs@troutman.com<br><br>Joseph E. O'Neill<br>Meaghann C. Porth<br>Ryan J. O'Neill<br>CAMPBELL CONROY & O'NEILL, P.C.<br>1205 Westlake Drive, Suite 330<br>Berwyn, PA 19312<br>Tel: (610) 964-1900<br><br><br>John R. Timmer (PA ID No. 89814)<br>SCHNADER HARRISON SEGAL<br>& LEWIS LLIP<br>1600 Market Street, Suite 3600<br>Philadelphia, PA 19103-7286<br>Tel: (215) 751-2309/2451<br>Fax: (215) 751-22-05<br>jtimmer@schnader.com<br><br>Kimberly A. Brown (PA ID No. 56200)<br>JONES DAY<br>500 Grant Street, Suite 4500<br>Pittsburgh, PA 15219<br>Tel: (412) 394-7995<br>Fax: (412) 394-7959<br>kabrown@jonesday.com<br><br><br>*Attorneys for Defendant Abbott Laboratories* | Jennifer V. Weachter<br>JWeachter@eckertseamans.com<br><br>*Attorneys for Defendants Albert Einstein Medical Center a/k/a Einstein Medical Center and Albert Einstein Healthcare Network d/b/a Einstein Healthcare Network* |
| James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLOC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587=1625/1628/1669<br>jayoung@burnswhite.com | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br>bscicchitano@eckertseamans.com |

7

Case ID: 220302594<br>Control No.: 23110834

| rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant, Temple University Health System, Inc., d/b/a Temple University Hospital* | Jennifer V. Weachter<br>JWeachter@eckertseamans.com<br><br>*Attorney for Defendants, Thomas Jefferson University Hospitals, Inc., d/b/a Thomas Jefferson University Hospital, and Thomas Jefferson University d/b/a Jefferson Health System* |
|---|---|

**KLINE & SPECTER, P.C.**

By: */s/ Tobias L. Millrood*
     Tobias L. Millrood
     1525 Locust Street
     Philadelphia, PA 19102
     Phone: 215-772-1000
     Fax: 215-772-1359
     tobi.millrood@klinespecter.com

Dated: August 17, 2023          *Plaintiff's' Counsel*

Case ID: 220302594
Control No.: 23110834

FILED

03 NOV 2023 01:07 pm

Civil Administration

J. BOYD

# EXHIBIT B

Case ID: 220302594
Control No.: 23110834

| From: | Elizabeth Crawford |
|---|---|
| To: | Carol Lippmann; jayoung; rsmargulies; srengle@burnswhite.com |
| Cc: | Tobi Millrood; Melissa Merk; Timothy Burke; Jack O"Neill; Patrick Sidebotham; Ben Whiting; Mark Weinstein; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; Sean.Fahey; Donald J. Brooks Jr.; Brooke Scicchitano; Jennifer V. Weachter |
| Subject: | Re: NEC Infant Formula Litigation | The Pennsylvania Health System d/b/a Pennsylvania |
| Date: | Wednesday, September 27, 2023 11:57:25 AM |

Counsel: Following up on dates for our notice of deposition of the corporate designee(s) of the Pennsylvania Health System. Please provide dates at your earliest opportunity. Thank you.

**Elizabeth A. Crawford, Esquire**
*Partner*
KLINE & SPECTER
1525 LOCUST STREET
PHILADELPHIA, PA 19102
P: 215-792-5619
E: ELIZABETH.CRAWFORD@KLINESPECTER.COM
W: WWW.KLINESPECTER.COM/ELIZABETHCRAWFORD

---

**From:** Carol Lippmann <Carol.Lippmann@klinespecter.com>
**Sent:** Thursday, August 17, 2023 8:09 PM
**To:** jayoung <jayoung@burnswhite.com>; rsmargulies <rsmargulies@burnswhite.com>; srengle@burnswhite.com <srengle@burnswhite.com>
**Cc:** Tobi Millrood <Tobi.Millrood@klinespecter.com>; Melissa Merk <Melissa.Merk@klinespecter.com>; Timothy Burke <Timothy.Burke@klinespecter.com>; Elizabeth Crawford <Elizabeth.Crawford@KlineSpecter.com>; Jack O'Neill <Jack.ONeill@klinespecter.com>; Patrick Sidebotham <Patrick.Sidebotham@klinespecter.com>; Ben Whiting <ben.whiting@kellerpostman.com>; Mark Weinstein <mark.weinstein@kellerpostman.com>; cmrecker@welshrecker.com <cmrecker@welshrecker.com>; abcarver@welshrecker.com <abcarver@welshrecker.com>; rwalk@welshrecker.com <rwalk@welshrecker.com>; kmurphy@tlgattorneys.com <kmurphy@tlgattorneys.com>; holson@tlgattorneys.com <holson@tlgattorneys.com>; Sean.Fahey <Sean.Fahey@Troutman.com>; Donald J. Brooks Jr. <dbrooks@eckertseamans.com>; Brooke Scicchitano <bscicchitano@eckertseamans.com>; Jennifer V. Weachter <JWeachter@eckertseamans.com>
**Subject:** NEC Infant Formula Litigation | The Pennsylvania Health System d/b/a Pennsylvania Hospital

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate Designee(s) of The The Pennsylvania Health System d/b/a Pennsylvania Hospital.

Thank you,

**Carol Lippmann**

Case ID: 220302594
Control No.: 23110834

Litigation Paralegal to Tobi Millrood, Esq.
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
D. (215) 772-1392
F. (215) 792-5502
Carol.lippmann@klinespecter.com
www.klinespecter.com

Case ID: 220302594
Control No.: 23110834

| | |
|---|---|
| **From:** | Elizabeth Crawford |
| **To:** | Carol Lippmann; jayoung; rsmargulies; srengle@burnswhite.com |
| **Cc:** | Tobi Millrood; Melissa Merk; Jack O'Neill; Helen Lawless; Ben Whiting; Mark Weinstein; Patrick Sidebotham; Timothy Burke; Donald J. Brooks Jr.; Brooke Scicchitano; Jennifer V. Weachter; Sean.Fahey; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com |
| **Subject:** | Re: NEC Infant Formula Litigation | The Trustees of the University of Pennsylvania d/b/a Penn Medicine |
| **Date:** | Wednesday, September 27, 2023 11:58:03 AM |

Counsel: Following up on dates for our notice of deposition of the corporate designee(s) of Penn Medicine. Please provide dates at your earliest opportunity. Thank you.

**Elizabeth A. Crawford, Esquire**

*Partner*

KLINE & SPECTER
1525 LOCUST STREET
PHILADELPHIA, PA 19102
P: 215-792-5619
E: ELIZABETH.CRAWFORD@KLINESPECTER.COM
W: WWW.KLINESPECTER.COM/ELIZABETHCRAWFORD

---

**From:** Carol Lippmann <Carol.Lippmann@klinespecter.com>
**Sent:** Thursday, August 17, 2023 8:07 PM
**To:** jayoung <jayoung@burnswhite.com>; rsmargulies <rsmargulies@burnswhite.com>; srengle@burnswhite.com <srengle@burnswhite.com>
**Cc:** Tobi Millrood <Tobi.Millrood@klinespecter.com>; Melissa Merk <Melissa.Merk@klinespecter.com>; Jack O'Neill <Jack.ONeill@klinespecter.com>; Elizabeth Crawford <Elizabeth.Crawford@KlineSpecter.com>; Helen Lawless <Helen.Lawless@klinespecter.com>; Ben Whiting <ben.whiting@kellerpostman.com>; Mark Weinstein <mark.weinstein@kellerpostman.com>; Patrick Sidebotham <Patrick.Sidebotham@klinespecter.com>; Timothy Burke <Timothy.Burke@klinespecter.com>; jayoung <jayoung@burnswhite.com>; rsmargulies <rsmargulies@burnswhite.com>; srengle@burnswhite.com <srengle@burnswhite.com>; Donald J. Brooks Jr. <dbrooks@eckertseamans.com>; Brooke Scicchitano <bscicchitano@eckertseamans.com>; Jennifer V. Weachter <JWeachter@eckertseamans.com>; Sean.Fahey <Sean.Fahey@Troutman.com>; kmurphy@tlgattorneys.com <kmurphy@tlgattorneys.com>; holson@tlgattorneys.com <holson@tlgattorneys.com>; cmrecker@welshrecker.com <cmrecker@welshrecker.com>; abcarver@welshrecker.com <abcarver@welshrecker.com>; rwalk@welshrecker.com <rwalk@welshrecker.com>
**Subject:** NEC Infant Formula Litigation | The Trustees of the University of Pennsylvania d/b/a Penn Medicine

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate Designee(s) of The Trustees of the University of Pennsylvania d/b/a Penn Medicine.

Case ID: 220302594
Control No.: 23110834

Thank you,

**Carol Lippmann**
Litigation Paralegal to Tobi Millrood, Esq.
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
D. (215) 772-1392
F. (215) 792-5502
Carol.lippmann@klinespecter.com
www.klinespecter.com

FILED
03 NOV 2023 01:07 pm
Civil Administration
J. BOYD

# EXHIBIT C

Case ID: 220302594
Control No.: 23110834

| | |
|---|---|
| **From:** | Amanda Bee |
| **To:** | jayoung; rsmargulies; srengle@burnswhite.com |
| **Cc:** | Tobi Millrood; Timothy Burke; Elizabeth Crawford; Melissa Merk; Philip Pasquarello; Helen Lawless; Jack O"Neill; Patrick Sidebotham; ben.whiting@kellerpostman.com; mark.weinstein@kellerpostman.com; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; Sean.Fahey; Donald J. Brooks Jr.; bscicchitano@eckertseamans.com; Jennifer V. Weachter; Carol Lippmann |
| **Subject:** | NEC Infant Formula Litigation | The Pennsylvania Health System d/b/a Pennsylvania Hospital |
| **Date:** | Wednesday, October 11, 2023 3:33:41 PM |
| **Attachments:** | NEC Corp Designee NoD - UPH dba Penn Hospital 10.11.23.pdf |
| | 2023-10-11 Letter to Penn Hospital re NoD.pdf |

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate Designee(s) of The Pennsylvania Health System d/b/a Pennsylvania Hospital.

Thank you,

**Amanda L. Bee**
Legal Assistant to Jack O'Neill, Esquire and Richard Gorman, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
215.772.1000
215.772.0563 direct dial
www.klinespecter.com

# KLINE & SPECTER PC

**ATTORNEYS AT LAW**
**1525 LOCUST STREET**
**PHILADELPHIA, PENNSYLVANIA 19102**
**WWW.KLINESPECTER.COM**

TOBIAS L. MILLROOD                                                TOBI.Millrood@Klinespecter.com

_____

**215-772-1358**

**800-597-9585**

FAX: **215-792-5502**

October 11, 2023

**Via Email Only**
James A. Young, Esquire
Richard S. Margulies, Esquire
Susan R. Engle, Esquire
BURNS WHITE LLC
1880 John F. Kennedy Boulevard, 10th FL
Philadelphia, PA 19103

Re:    Abdullah, et al.. v. Mead Johnson & Company, et al., Case No. 2203025832
       Carter, et al., v. Mead Johnson & Company, et al., Case No. 220302588
       Drayton et al., v. Mead Johnson & Company, et al., Case No.220302594
       Stills, et al., v. Mead Johnson & Company, et al., Case No. 220302617
       Taylor, et al., v. Mead Johnson & Company, et al., Case No. 220302606
       Wieger, et al., v. Mead Johnson & Company, et al., Case No.220302614
       Wieger, et al., v. Mead Johnson & Company, et al., Case No. 220302601
       Henderson, et al., v. Mead Johnson & Company, et al., Case No. 220400127

Dear Counsel:

Attached is a Notice of Video Deposition of the Corporate Designee(s) of Defendant The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital. This notice applies to the following the following cases pending against The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital in the infant formula litigation.

- Abdullah, et al.. v. Mead Johnson & Company, et al., Case No. 2203025832
- Carter, et al., v. Mead Johnson & Company, et al., Case No. 220302588
- Drayton et al., v. Mead Johnson & Company, et al., Case No.220302594
- Stills, et al., v. Mead Johnson & Company, et al., Case No. 220302617
- Taylor, et al., v. Mead Johnson & Company, et al., Case No. 220302606
- Wieger, et al., v. Mead Johnson & Company, et al., Case No.220302614
- Wieger, et al., v. Mead Johnson & Company, et al., Case No. 220302601
- Henderson, et al., v. Mead Johnson & Company, et al., Case No. 220400127

Page 2

Very truly yours,

Tobias L. Millrood

Enclosure
cc:     All Counsel of Record (via email only)

Case ID: 220302594
Control No.: 23110834

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| TERRAINE ABDULLAH, et al., : | |
| Plaintiff, : | MARCH TERM, 2022 |
| v. : | No. 220302583 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| HOLLI CARTER, et al., : | |
| Plaintiff, : | MARCH TERM, 2022 |
| v. : | No. 220302588 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| SHONDERA DRAYTON, et al., : | |
| Plaintiff, : | MARCH TERM, 2022 |
| v. : | No. 220302594 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| ALICE STILLS, et al., : | |
| Plaintiff, : | MARCH TERM, 2022 |
| v. : | No. 220302617 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| CHRISTINA TAYLOR, et al., : | |
| Plaintiff, : | MARCH TERM, 2022 |
| v. : | No. 220302606 |

1

Case ID: 220302594
Control No.: 23110834

| | |
|---|---|
| MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : |
| GINA WIEGER, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : <br> : <br> : <br> : |

MARCH TERM, 2022
No. 220302614

| | |
|---|---|
| GINA WIEGER, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : <br> : <br> : <br> : |

MARCH TERM, 2022
No. 220302601

| | |
|---|---|
| JANEE HENDERSON, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : <br> : <br> : <br> : |

APRIL TERM, 2022
No. 220400127

## NOTICE OF VIDEO DEPOSITION OF CORPORATE DESIGNEE(S) OF THE PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM d/b/a PENNSYLVANIA HOSPITAL

TO:  James A. Young, Esquire
      Burns White LLC
      1880 John F. Kennedy Blvd., 10th Floor
      Philadelphia, PA 19103

**KINDLY TAKE NOTICE** that Plaintiffs in the above-captioned matter will take the deposition(s) of one or more Corporate Designees of The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital (collectively, "Defendants") on November 1, 2023 at 10:00 a.m. at the office of Kline & Specter, P.C. at 1525 Locust Street, Philadelphia, PA 19102.

The deposition will be taken before a person duly authorized to administer oaths and will be recorded by video and stenographic means.

Defendants are requested to designate one or more officers, directors, managing agents, or

2

Case ID: 220302594
Control No.: 23110834

other persons who shall be authorized to testify to matters known or reasonably available to the organization and who is the individual most knowledgeable about the Neonatal Intensive Care Unit at The Pennsylvania Hospital of the University of Pennsylvania Health System from 2002 to the present, and specifically including the following subjects:

1. All policies and procedures relating to premature babies and/or babies in the Neonatal Intensive Care Unit;
2. All policies and procedures relating to the feeding of premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
3. All policies and procedures relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
4. Knowledge of what year donor breast milk became available to mothers of premature babies and/or babies in the Neonatal Intensive Care Unit;
5. All policies and procedures as to when donor breast milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
6. Knowledge of what commercial formula/bovine formula(s) were given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
7. Knowledge of all of Defendants' policies and procedures relating to lactation consultants from 2002 to the present;
8. Knowledge of all policies and procedures pertaining to additional monitoring for premature babies and/or babies in the Neonatal Intensive Care Unit who receive commercial milk/bovine milk from 2002 to the present;
9. Knowledge of any policies and procedures pertaining to consent forms relating to giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
10. Knowledge of any policies and procedures pertaining to consent forms relating to giving donor breast milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
11. Knowledge of any policies and procedures pertaining to preventing necrotizing enterocolitis from 2002 to the present;
12. Knowledge of when it was known to Defendants that commercial milk/bovine milk can increase the risk of necrotizing enterocolitis from 2002 to the present;
13. Knowledge of any communications received by Defendants from Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present.
14. Knowledge of any communications from Defendants to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present;
15. Knowledge of any marketing, training, and/or promotional materials relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present.

3

Case ID: 220302594
Control No.: 23110834

16. Knowledge of the costs to and/or profits generated from Defendants provision of commercial milk/ bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and/or

17. Knowledge of any scholarly, educational, training and/or other materials relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present

Please consider this a request to produce any and all records, and/or documents that refer, relate, and/or pertain to the to the above-listed categories.

The deponent is also instructed to bring with him/her the following: (1) any and all communications and/or other documents involving Defendants and relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (2) any and all documents relating to communications between Defendants Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present; (3) any and all documents relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present; (4) any and all documents relating to any marketing, training, and/or promotional materials relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present. (5) any and all documents related to the costs to and/or profits generated from Defendants provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (6) any and all documents regarding any complaints and/or warnings related to the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present whether or not initiated or settled through

4

lawsuits, (7) all reports of injuries allegedly arising from the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and (9) any and all other documents relative to or responsive to this Notice of Deposition.

The deponent must also bring with him/her complete copies of all prior deposition transcripts where he/she has offered sworn testimony in cases involving similar or comparable products and/or allegations. The deponent shall also bring a copy of his or her CV or resume. The deposition will continue from day to day until completed.

**KLINE & SPECTER, P.C.**

TOBIAS L. MILLROOD, ESQUIRE

***Attorney for Plaintiff***

5

Case ID: 220302594
Control No.: 23110834

## CERTIFICATE OF SERVICE

I, Tobias L. Millrood, hereby certify that on the date below, I served a true and correct copy of the foregoing Notice of Deposition on the following counsel of records:

| | |
|---|---|
| Catherine M. Recker (PA Bar No. 56813)<br>Amy B. Carver (PA Bar No. 84819)<br>Richard D. Walk, III (PA Bar No. 329420)<br>WELSH & RECKER, P.C.<br>306 Walnut Street<br>Philadelphia, PA 19106<br>Tel: (215) 972-6430<br>cmrecker@welshrecker.com<br>abcarver@welshrecker.com<br>rwalk@welshrecker.com<br><br>Kenneth A. Murphy, Esquire<br>Heather R. Olson, Esquire<br>TUCKER LAW GROUP, LLC<br>Ten Penn Center<br>1801 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>kmurphy@tlgattorneys.com<br>holson@tlgattorneys.com<br><br><br>*Attorneys for Defendant Mead Johnson &<br>Company LLC and* Mead Johnson Nutrition<br>Company | James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587-1625/1628/1669<br>jayoung@burnswhite.com<br>rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant University of<br>Pennsylvania Hospital of the University of<br>Pennsylvania Health System d/b/a<br>Pennsylvania Hospital and University of<br>Pennsylvania Hospital of the University of<br>Pennsylvania Health System d/b/a Penn<br>Medicine*<br><br>Kathleen M. Kramer, Esquire<br>Gabor Ovari, Esquire<br>MARSHALL DENNEHEY, P.C.<br>2000 Market Street, Suite 2300<br>Philadelphia, PA 19103<br>Tel: (215) 575-2600<br>kmkramer@mdwcg.com<br>ggovari@mdwcg.com<br><br>*Attorneys for Defendant, The Trustees of the<br>University of Pennsylvania d/b/a The<br>Hospital of the University of Pennsylvania* |
| Sean P. Fahey, Esquire<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>3000 Two Logan Square | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place |

Case ID: 220302594<br>Control No.: 23110834

| | |
|---|---|
| Philadelphia, PA 19103-2799<br>Tel: (215) 981-4296<br>Sean.Fahey@troutman.com<br><br>Ronn E. Fuchs, Esquire<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>301 Carnegie Center, Suite 400<br>Princeton, NJ 08540<br>Tel: (609) 951-4184<br>Ronni.Fuchs@troutman.com<br>Noel.Ix@Troutman.com<br>Christopher.Brolley@troutman.com;<br>Brett.Broczkowski@troutman.com<br><br>Joseph E. O'Neill<br>Meaghann C. Porth<br>Ryan J. O'Neill<br>CAMPBELL CONROY & O'NEILL, P.C.<br>1205 Westlake Drive, Suite 330<br>Berwyn, PA 19312<br>Tel: (610) 964-1900<br>joneil@campbelltriallawyers.com<br>mporth@campbelltriallawyers.com<br>roneil@campbelltriallawyers.com<br><br>Margues Hillman Richeson, Esquire<br>JONES DAY<br>901 Lakeside Avenue<br>North Point<br>Cleveland, Ohio 44114<br>Tel: (216) 586-7195<br>mhricheson@jonesday.com<br><br>Jennifer B. Flannery, Esquire<br>Attorney ID No. 75546<br>JONES DAY<br>1221 Peachtree Street, N.E., Suite 400<br>Atlanta, GE 30361<br>Tel: (404) 581-8008<br>jbflannery@jonesday.com<br><br><br>*Attorneys for Defendant Abbott Laboratories* | 50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br> bscicchitano@eckertseamans.com<br>Jennifer V. Weachter<br>JWeachter@eckertseamans.com<br><br>*Attorneys for Defendants Albert Einstein<br>Medical Center a/k/a Einstein Medical Center<br>and Albert Einstein Healthcare Network d/b/a<br>Einstein Healthcare Network* |
| James A. Young, Esquire | Donald J. Brooks, Jr., Esquire |

Case ID: 220302594<br>Control No.: 23110834

| Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLOC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587=1625/1628/1669<br>jayoung@burnswhite.com<br>rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant, Temple University Health System, Inc., d/b/a Temple University Hospital* | Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br> bscicchitano@eckertseamans.com<br>Jennifer V. Weachter<br>JWeachter@eckertseamans.com<br><br>*Attorney for Defendants, Thomas Jefferson University Hospitals, Inc., d/b/a Thomas Jefferson University Hospital, and Thomas Jefferson University d/b/a Jefferson Health System* |

**KLINE & SPECTER, P.C.**

By: _____
Tobias L. Millrood
1525 Locust Street
Philadelphia, PA 19102
Phone: 215-772-1000
Fax: 215-772-1359
tobi.millrood@klinespecter.com

Dated: October 11, 2023            *Plaintiff's' Counsel*

8

Case ID: 220302594
Control No.: 23110834

| | |
|---|---|
| **From:** | Amanda Bee |
| **To:** | jayoung; rsmargulies; srengle@burnswhite.com |
| **Cc:** | Tobi Millrood; Timothy Burke; Elizabeth Crawford; Melissa Merk; Helen Lawless; Philip Pasquarello; Jack O"Neill; Patrick Sidebotham; Donald J. Brooks Jr.; ben.whiting@kellerpostman.com; mark.weinstein@kellerpostman.com; bsciccitano@eckertseamans.com; Jennifer V. Weachter; Sean.Fahey; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com; Carol Lippmann |
| **Subject:** | NEC Infant Formula Litigation \| The Trustees of the University of Pennsylvania d/b/a Penn Medicine |
| **Date:** | Wednesday, October 11, 2023 3:33:38 PM |
| **Attachments:** | 2023-10-11 Letter to Penn Medecine re NoD.pdf<br>NEC Corp Designee NoD - UPH dba Penn Medicine 10.11.23.pdf<br>2023-10-11 Letter to Penn Medecine re NoD.pdf<br>NEC Corp Designee NoD - UPH dba Penn Medicine 10.11.23.pdf |

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate Designee(s) of The Trustees of the University of Pennsylvania d/b/a Penn Medicine.

 Thank you,

**Amanda L. Bee**
Legal Assistant to Jack O'Neill, Esquire and Richard Gorman, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
215.772.1000
215.772.0563 direct dial
www.klinespecter.com

Case ID: 220302594
Control No.: 23110834

# KLINE & SPECTER PC

**ATTORNEYS AT LAW**
**1525 LOCUST STREET**
**PHILADELPHIA, PENNSYLVANIA 19102**
**WWW.KLINESPECTER.COM**

TOBIAS L. MILLROOD                                                                        TOBI.MILLROOD@KLINESPECTER.COM

_____

**215-772-1358**

**800-597-9585**

FAX: 215-792-5502

October 11, 2023

**Via Email Only**
James A. Young, Esquire
Richard S. Margulies, Esquire
Susan R. Engle, Esquire
BURNS WHITE LLC
1880 John F. Kennedy Boulevard, 10th FL
Philadelphia, PA 19103

Re:     Johnson, et al.. v. Mead Johnson & Company, et al., Case No. 220400162
          McMillian, et al., v. Mead Johnson & Company, et al., Case No. 220400140
          Moment, et al., v. Mead Johnson & Company, et al., Case No.220400142
          Sanders, et al., v. Mead Johnson & Company, et al., Case No. 220400153
          Short, et al., v. Mead Johnson & Company, et al., Case No. 220400159
          Thomas, et al., v. Mead Johnson & Company, et al., Case No.220400158
          Walker-Savage, et al., v. Mead Johnson & Company, et al., Case No. 220400156
          Whitfield, et al., v. Mead Johnson & Company, et al., Case No. 220400145
          Williams, et al., v. Mead Johnson & Company, et al., Case No. 220400141
          Hines, et al., v. Mead Johnson & Company, et al., Case No. 220400136
          Witherspoon, et al., v. Mead Johnson & Company, et al., Case No. 220400138

Dear Counsel:

Attached is a Notice of Video Deposition of the Corporate Designee(s) of Defendant the Trustees of the University of Pennsylvania d/b/a Penn Medicine. This notice applies to the following the following cases pending against the Trustees of the University of Pennsylvania d/b/a Penn Medicine in the infant formula litigation.

- Johnson, et al.. v. Mead Johnson & Company, et al., Case No. 220400162
- McMillian, et al., v. Mead Johnson & Company, et al., Case No. 220400140
- Moment, et al., v. Mead Johnson & Company, et al., Case No.220400142
- Sanders, et al., v. Mead Johnson & Company, et al., Case No. 220400153
- Short, et al., v. Mead Johnson & Company, et al., Case No. 220400159
- Thomas, et al., v. Mead Johnson & Company, et al., Case No.220400158
- Walker-Savage, et al., v. Mead Johnson & Company, et al., Case No. 220400156
- Whitfield, et al., v. Mead Johnson & Company, et al., Case No. 220400145

Page 2

- Williams, et al., v. Mead Johnson & Company, et al., Case No. 220400141
- Hines, et al., v. Mead Johnson & Company, et al., Case No. 220400136
- Witherspoon, et al., v. Mead Johnson & Company, et al., Case No. 220400138

Very truly yours,

Tobias L. Millrood

Enclosure
cc:    All Counsel of Record (via email only)

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| SHEMIKA JOHNSON, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | APRIL TERM, 2022 <br> No. 220400162 |
| CATHERINE McMILLIAN, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | APRIL TERM, 2022 <br> No. 220400140 |
| DAMEKA MOMENT, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | APRIL TERM, 2022 <br> No. 220400142 |
| LOREN SANDERS, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | APRIL TERM, 2022 <br> No. 220400153 |
| SAMAYA SHORT, et al., : <br> Plaintiff, : <br> v. : | APRIL TERM, 2022 <br> No. 220400159 |

1

Case ID: 220302594
Control No.: 23110834

| | |
|---|---|
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

| | |
|---|---|
| NATISHA THOMAS, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220400158 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

| | |
|---|---|
| TRINA WALKER-SAVAGE and CLIFTON | : |
| ISAIAH SAVAGE, JR., et al., | : MARCH TERM, 2022 |
| Plaintiff, | : No. 220400156 |
| v. | : |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

| | |
|---|---|
| ROBERT WHITFIELD, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400145 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

| | |
|---|---|
| MELVENIA WILLIAMS, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400141 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

| | |
|---|---|
| DELQUAN HINES, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400136 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

| | |
|---|---|
| IVYANN WITHERSPOON, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400138 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

**NOTICE OF VIDEO DEPOSITION OF CORPORATE DESIGNEE(S) OF THE
TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENN MEDICINE**

TO:    James A. Young, Esquire
    Richard S. Margulies, Esquire
    Susan R. Engle, Esquire
    BURNS WHITE LLC
    1880 John F. Kennedy Boulevard, 10th FL

2

Case ID: 220302594
Control No.: 23110834

Philadelphia, PA 19103

**KINDLY TAKE NOTICE** that Plaintiffs in the above-captioned matter will take the deposition(s) of one or more Corporate Designees of the Trustees of the University of Pennsylvania d/b/a Penn Medicine (collectively, "Defendants") on November 1, 2023 at 10:00 a.m. at the office of Kline & Specter, P.C. at 1525 Locust Street, Philadelphia, PA 19102.

The deposition will be taken before a person duly authorized to administer oaths and will be recorded by video and stenographic means.

Defendants are requested to designate one or more officers, directors, managing agents, or other persons who shall be authorized to testify to matters known or reasonably available to the organization and who is the individual most knowledgeable about the Neonatal Intensive Care Unit at The Pennsylvania Hospital of the University of Pennsylvania Health System from 2002 to the present, and specifically including the following subjects:

1. All policies and procedures relating to premature babies and/or babies in the Neonatal Intensive Care Unit;
2. All policies and procedures relating to the feeding of premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
3. All policies and procedures relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
4. Knowledge of what year donor breast milk became available to mothers of premature babies and/or babies in the Neonatal Intensive Care Unit;
5. All policies and procedures as to when donor breast milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
6. Knowledge of what commercial formula/bovine formula(s) were given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
7. Knowledge of all of Defendants' policies and procedures relating to lactation consultants from 2002 to the present;
8. Knowledge of all policies and procedures pertaining to additional monitoring for premature babies and/or babies in the Neonatal Intensive Care Unit who receive commercial milk/bovine milk from 2002 to the present;
9. Knowledge of any policies and procedures pertaining to consent forms relating to giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;

3

Case ID: 220302594
Control No.: 23110834

10. Knowledge of any policies and procedures pertaining to consent forms relating to giving donor breast milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;

11. Knowledge of any policies and procedures pertaining to preventing necrotizing enterocolitis from 2002 to the present;

12. Knowledge of when it was known to Defendants that commercial milk/bovine milk can increase the risk of necrotizing enterocolitis from 2002 to the present;

13. Knowledge of any communications received by Defendants from Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present.

14. Knowledge of any communications from Defendants to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present;

15. Knowledge of any marketing, training, and/or promotional materials relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present.

16. Knowledge of the costs to and/or profits generated from Defendants provision of commercial milk/ bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and/or

17. Knowledge of any scholarly, educational, training and/or other materials relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present

Please consider this a request to produce any and all records, and/or documents that refer, relate, and/or pertain to the to the above-listed categories.

The deponent is also instructed to bring with him/her the following: (1) any and all communications and/or other documents involving Defendants and relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (2) any and all documents relating to communications between Defendants Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present; (3) any and all documents relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present; (4) any and all documents relating to any marketing, training, and/or promotional materials

4

Case ID: 220302594
Control No.: 23110834

relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present. (5) any and all documents related to the costs to and/or profits generated from Defendants provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (6) any and all documents regarding any complaints and/or warnings related to the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present whether or not initiated or settled through lawsuits, (7) all reports of injuries allegedly arising from the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and (9) any and all other documents relative to or responsive to this Notice of Deposition.

The deponent must also bring with him/her complete copies of all prior deposition transcripts where he/she has offered sworn testimony in cases involving similar or comparable products and/or allegations. The deponent shall also bring a copy of his or her CV or resume. The deposition will continue from day to day until completed.

**KLINE & SPECTER, P.C.**

TOBIAS L. MILLROOD, ESQUIRE

***Attorney for Plaintiff***

5

Case ID: 220302594
Control No.: 23110834

<u>**CERTIFICATE OF SERVICE**</u>

I, Tobias L. Millrood, hereby certify that on the date below, I served a true and correct

copy of the foregoing Notice of Deposition on the following counsel of records:

| | |
|---|---|
| Catherine M. Recker (PA Bar No. 56813)<br>Amy B. Carver (PA Bar No. 84819)<br>Richard D. Walk, III (PA Bar No. 329420)<br>WELSH & RECKER, P.C.<br>306 Walnut Street<br>Philadelphia, PA 19106<br>Tel: (215) 972-6430<br>cmrecker@welshrecker.com<br>abcarver@welshrecker.com<br>rwalk@welshrecker.com<br><br>Kenneth A. Murphy, Esquire<br>Heather R. Olson, Esquire<br>TUCKER LAW GROUP, LLC<br>Ten Penn Center<br>1801 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>kmurphy@tlgattorneys.com<br>holson@tlgattorneys.com<br><br><br>*Attorneys for Defendant Mead Johnson &*<br>*Company LLC and* Mead Johnson Nutrition<br>Company | James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587-1625/1628/1669<br>jayoung@burnswhite.com<br>rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant University of*<br>*Pennsylvania Hospital of the University of*<br>*Pennsylvania Health System d/b/a*<br>*Pennsylvania Hospital and University of*<br>*Pennsylvania Hospital of the University of*<br>*Pennsylvania Health System d/b/a Penn*<br>*Medicine* |
| Sean P. Fahey, Esquire<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>Tel: (215) 981-4296<br>Sean.Fahey@troutman.com<br><br>Ronn E. Fuchs, Esquire | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br>bscicchitano@eckertseamans.com |

Case ID: 220302594<br>Control No.: 23110834

| | |
|---|---|
| TROUTMAN PEPPER HAMILTON SANDERS LLP<br>301 Carnegie Center, Suite 400<br>Princeton, NJ 08540<br>Tel: (609) 951-4184<br>Ronni.Fuchs@troutman.com<br><br>Joseph E. O'Neill<br>Meaghann C. Porth<br>Ryan J. O'Neill<br>CAMPBELL CONROY & O'NEILL, P.C.<br>1205 Westlake Drive, Suite 330<br>Berwyn, PA 19312<br>Tel: (610) 964-1900<br><br><br>John R. Timmer (PA ID No. 89814)<br>SCHNADER HARRISON SEGAL<br>& LEWIS LLIP<br>1600 Market Street, Suite 3600<br>Philadelphia, PA 19103-7286<br>Tel: (215) 751-2309/2451<br>Fax: (215) 751-22-05<br>jtimmer@schnader.com<br><br>Kimberly A. Brown (PA ID No. 56200)<br>JONES DAY<br>500 Grant Street, Suite 4500<br>Pittsburgh, PA 15219<br>Tel: (412) 394-7995<br>Fax: (412) 394-7959<br>kabrown@jonesday.com<br><br><br>*Attorneys for Defendant Abbott Laboratories* | Jennifer V. Weachter<br>JWeachter@eckertseamans.com<br><br>*Attorneys for Defendants Albert Einstein Medical Center a/k/a Einstein Medical Center and Albert Einstein Healthcare Network d/b/a Einstein Healthcare Network* |
| James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLOC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587=1625/1628/1669<br>jayoung@burnswhite.com | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br>bscicchitano@eckertseamans.com |

7

Case ID: 220302594<br>Control No.: 23110834

| rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant, Temple University Health System, Inc., d/b/a Temple University Hospital* | Jennifer V. Weachter<br>JWeachter@eckertseamans.com<br><br>*Attorney for Defendants, Thomas Jefferson University Hospitals, Inc., d/b/a Thomas Jefferson University Hospital, and Thomas Jefferson University d/b/a Jefferson Health System* |
|---|---|

**KLINE & SPECTER,**

**P.C.** By: _____

Tobias L. Millrood
1525 Locust Street
Philadelphia, PA 19102
Phone: 215-772-1000
Fax: 215-772-1359
tobi.millrood@klinespecter.com

Dated: October 11, 2023 *Plaintiff's' Counsel*

8

Case ID: 220302594
Control No.: 23110834

FILED

03 NOV 2023 01:07 pm

Civil Administration

J. BOYD

# EXHIBIT D

Case ID: 220302594
Control No.: 23110834

| From: | Engle, Susan R. |
|---|---|
| To: | Amanda Bee; jayoung; rsmargulies |
| Cc: | Tobi Millrood; Timothy Burke; Elizabeth Crawford; Melissa Merk; Helen Lawless; Philip Pasquarello; Jack O"Neill; Patrick Sidebotham; Donald J. Brooks Jr.; ben.whiting@kellerpostman.com; mark.weinstein@kellerpostman.com; bscicchitano@eckertseamans.com; Jennifer V. Weachter; Sean.Fahey; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com; Carol Lippmann |
| Subject: | RE: NEC Infant Formula Litigation | The Trustees of the University of Pennsylvania d/b/a Penn Medicine |
| Date: | Monday, October 30, 2023 1:17:02 PM |
| Attachments: | image569267.PNG image5c0afc.PNG |

Good afternoon all,

We are in receipt corporate designee notices to our clients unilaterally scheduling depositions for November 1, 2023. We write to advise that we will not be able to produce corporate designees on behalf of our clients on that date, but we are working diligently to obtain the information requested via discovery and the corporate designee notices and will be in contact regarding promptly rescheduling these depositions. Please feel to reach out with any questions or concerns.

Best,

Susan Engle

## Susan R. Engle, Esq.
**Member**



1880 John F. Kennedy Boulevard, 10th Floor · Philadelphia, PA 19103
215-587-1669 (O) · 215-587-1699 (F)
srengle@burnswhite.com · burnswhite.com



**From:** Amanda Bee <Amanda.Bee@klinespecter.com>
**Sent:** Wednesday, October 11, 2023 3:34 PM
**To:** Young, James A. <jayoung@burnswhite.com>; Margulies, Richard S. <rsmargulies@burnswhite.com>; Engle, Susan R. <srengle@burnswhite.com>
**Cc:** Tobi Millrood <Tobi.Millrood@klinespecter.com>; Timothy Burke <Timothy.Burke@klinespecter.com>; Elizabeth Crawford <Elizabeth.Crawford@KlineSpecter.com>; Melissa Merk <Melissa.Merk@klinespecter.com>; Helen Lawless <Helen.Lawless@klinespecter.com>; Philip Pasquarello <Philip.Pasquarello@KlineSpecter.com>; Jack O'Neill <Jack.ONeill@klinespecter.com>; Patrick Sidebotham

Case ID: 220302594
Control No.: 23110834

<Patrick.Sidebotham@klinespecter.com>; Donald J. Brooks Jr. <dbrooks@eckertseamans.com>;
ben.whiting@kellerpostman.com; mark.weinstein@kellerpostman.com;
bscicchitano@eckertseamans.com; Jennifer V. Weachter <JWeachter@eckertseamans.com>;
Sean.Fahey <Sean.Fahey@Troutman.com>; kmurphy@tlgattorneys.com; holson@tlgattorneys.com;
cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com; Carol Lippmann
<Carol.Lippmann@klinespecter.com>
**Subject:** NEC Infant Formula Litigation | The Trustees of the University of Pennsylvania d/b/a Penn
Medicine

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate
Designee(s) of The Trustees of the University of Pennsylvania d/b/a Penn Medicine.

  Thank you,

**Amanda L. Bee**
Legal Assistant to Jack O'Neill, Esquire and Richard Gorman, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
215.772.1000
215.772.0563 direct dial
www.klinespecter.com

We intend to send this transmission (including any attachments) only to the
appropriate recipients. If you received this message in error, please notify the sender
by replying to this message and then delete it from your system. This transmission
may contain confidential or privileged information and may constitute non-public
information. Use, disclosure, dissemination, distribution, or reproduction of this
message by unintended recipients is not authorized and may be unlawful. Unless
otherwise stated by the sender, this transmission (including any attachments) does
not create or confirm a contract, agreement, offer or acceptance between the sender
and any recipient.

Case ID: 220302594
Control No.: 23110834

# EXHIBIT A-44

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION - CIVIL**

Filed and Attested by the
Office of Judicial Records
10 NOV 2023 08:54 pm
P. DIVON

| | | |
|---|---|---|
| TERRAINE ABDULLAH, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302583 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| HOLLI CARTER, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302588 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| SHONDERA DRAYTON, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302594 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| JANEE HENDERSON, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400127 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| DELQUAN HINES, et al., | | |
| Plaintiff, | | APRIL TERM, 2022 |
| v. | | No. 220400136 |
| MEAD JOHNSON & COMPANY, LLC, et al., | | |
| Defendants. | | |

| | | |
|---|---|---|
| SHEMIKA JOHNSON, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400162 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| CATHERINE McMILLIAN, et al., | | |
| Plaintiff, | | APRIL TERM, 2022 |
| v. | | No. 220400140 |
| MEAD JOHNSON & COMPANY, LLC, et al., | | |
| Defendants. | | |

| | | |
|---|---|---|
| DAMEKA MOMENT, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400142 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |

|  |  |
|---|---|
| Defendants. | : |

| | |
|---|---|
| LOREN SANDERS, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: | APRIL TERM, 2022<br>No. 220400153 |

| | |
|---|---|
| SAMAYA SHORT, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: | APRIL TERM, 2022<br>No. 220400159 |

| | |
|---|---|
| ALICE STILLS, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220302617 |

| | |
|---|---|
| CHRISTINA TAYLOR, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220302606 |

| | |
|---|---|
| NATISHA THOMAS, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220400158 |

| | |
|---|---|
| TRINA WALKER-SAVAGE and CLIFTON<br>ISAIAH SAVAGE, JR., et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220400156 |

| | |
|---|---|
| ROBERT WHITFIELD, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: | APRIL TERM, 2022<br>No. 220400145 |

| | |
|---|---|
| GINA WIEGER, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220302614 |

| | |
|---|---|
| GINA WIEGER, et al., | : |

Case ID: 220302594<br>Control No.: 23110834

| | | |
|---|---|---|
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302601 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| MELVENIA WILLIAMS, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400141 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| IVYANN WITHERSPOON, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400138 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

**Attorney Certification of Good Faith**
**Pursuant to Phila.Civ.R. * 208.2(e)**

The undersigned counsel for movant hereby certifies and attests that:

√ a.    He or she has had the contacts described below with opposing counsel or unrepresented party regarding discovery matter contained in the foregoing discovery motion in an effort to resolve the specific discovery dispute(s) at issue and, further, that despite all counsel's good faith attempts to resolve the dispute(s), counsel have been unable to do so.

Description:

On August 17, 2023, Plaintiff's Counsel emailed Defense Counsel indicating the need to depose Defendant's Corporate Designee.

On September 27, 2023, Plaintiff's Counsel emailed Defense Counsel to follow up on the August 17, 2023, request to depose Defendant's Corporate Designee because Defendants never provided dates for said deposition.

On October 11, 2023, Plaintiff's Counsel emailed Defense Counsel a Notice of Deposition to depose Defendant's Corporate Designee on November 1, 2023, because Defendants never provided dates for said deposition.

On October 30, 2023, Defendants emailed Plaintiffs refusing to produce Defendant's Corporate Designee for deposition on November 1, 2023.

To date, Defense counsel has not provided any available dates for the deposition of Defendant's Corporate Designee.  On October 30., 2023 Counsel for Defendant advised Plaintiffs' Counsel that they are working diligently to obtain the information requested via

discovery and the corporate designee notices and will in contact regarding promptly rescheduling these depositions, but it has failed to do so to date.

    _ b.   He or she has made good faith but unsuccessful efforts described below to contact opposing counsel or unrepresented party in effort to resolve the discovery dispute.

Description:

    N/A. See above.


CERTIFIED TO THE COURT BY:

**KLINE & SPECTER, P.C.**


Date: November 10, 2023    By:    */s/ John P. O'Neill*
    JOHN P. O'NEILL, ESQUIRE
    TIMOTHY A. BURKE, ESQUIRE
    Attorney ID Nos. 205677 / 320927
    KLINE & SPECTER, P.C.
    1525 Locust Street
    Philadelphia, PA 19102
    Tel: (215) 772-1000
    Fax: (215) 772-1359

    *Attorneys for Plaintiffs*


***Note: The Signature of Respondent's Counsel is Not Required***

Case ID: 220302594
Control No.: 23110834

# EXHIBIT A-45

*Filed and Attested by the Office of Judicial Records 27 NOV 2023 04:35 pm M. TIERNEY*

| | |
|---|---|
| Holli Carter, on her own behalf and as Parent and Natural Guardian of J.C., a minor<br><br>            Plaintiff<br>      v.<br>MEAD JOHNSON & COMPANY, LLC, et al.<br>            Defendants. | MARCH TERM, 2022<br>NO. 220302588 |
| TERRAINE ABDULLAH, on her own behalf and as Parent and Natural Guardian of H.S., a Minor,<br>            Plaintiffs,<br>      v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>            Defendants. | MARCH TERM 2022<br>NO. 220302583 |
| Shondera Drayton, on her own behalf and as Parent and Natural Guardian of A.D., a minor,<br>            Plaintiffs<br>      v.<br>MEAD JOHNSON & COMPANY, LLC, et al.<br>            Defendants. | MARCH TERM, 2022<br>NO. 220302594 |
| Gina Wieger, on her own behalf and as Parent and Natural Guardian of M.P., a minor,<br>            Plaintiffs,<br>      v.<br>Mead Johnson & Company, LLC, et al.,<br>            Defendants. | MARCH TERM, 2022<br>NO. 220302614 |
| Gina Wieger, on her own behalf and as Parent and Natural Guardian of S.P., a minor,<br>            Plaintiffs,<br>      v.<br>MEAD JOHNSON & COMPANY, LLC, et al.<br>            Defendants. | MARCH TERM, 2022<br>NO. 220302601 |
| Alice Stills, on her own behalf and as Parent and Natural Guardian of M.E., a minor,<br>            Plaintiffs,<br>      v.<br>MEAD JOHNSON & COMPANY, LLC, et al..<br>            Defendants. | MARCH TERM, 2022<br>NO. 220302617 |
| Christina Taylor, on her own behalf and as Parent and Natural Guardian of I.H., a minor,<br>            Plaintiff,<br>      v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>            Defendants. | MARCH TERM, 2022<br>NO. 220302606 |

## <u>ORDER</u>

**AND NOW**, this _____ day of _____ 2023, upon consideration of Defendants The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine's Response to Plaintiffs' Motion to Compel the Deposition of Corporate Designee, it is hereby **ORDERED**, **ADJUDGED,** and **DECREED** that Plaintiffs' Motion to Compel the Deposition of Corporate Designee is **DENIED**.

_____

J.

**BURNS WHITE LLC**
**By:** **James A. Young, Esq.**
        **Richard S. Margulies, Esq.**
        **Susan R. Engle, Esq.**
        Attorney ID Nos. 00213/62306/81671
1880 John F. Kennedy Boulevard, 10th Floor
Philadelphia, PA 19103
215-587-1625/1628
jayoung@burnswhite.com
rsmargulies@burnswhite.com

*Attorneys For Defendants,*
*The Pennsylvania Hospital of the University of*
*Pennsylvania Health System d/b/a*
*Pennsylvania Hospital and The Trustees of the*
*University of Pennsylvania d/b/a Penn*
*Medicine*

| | |
|---|---|
| Holli Carter, on her own behalf and as Parent and Natural Guardian of J.C., a minor<br>           Plaintiff<br>       v.<br>MEAD JOHNSON & COMPANY, LLC, et al.<br>           Defendants. | MARCH TERM, 2022<br>NO. 220302588 |
| TERRAINE ABDULLAH, on her own behalf and as Parent and Natural Guardian of H.S., a Minor,<br>           Plaintiffs,<br>       v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>           Defendants. | MARCH TERM 2022<br>NO. 220302583 |
| Shondera Drayton, on her own behalf and as Parent and Natural Guardian of A.D., a minor,<br>           Plaintiffs<br>       v.<br>MEAD JOHNSON & COMPANY, LLC, et al.<br>           Defendants. | MARCH TERM, 2022<br>NO. 220302594 |
| Gina Wieger, on her own behalf and as Parent and Natural Guardian of M.P., a minor,<br>           Plaintiffs,<br>       v.<br>Mead Johnson & Company, LLC, et al.,<br>           Defendants. | MARCH TERM, 2022<br>NO. 220302614 |
| Gina Wieger, on her own behalf and as Parent and Natural Guardian of S.P., a minor,<br>           Plaintiffs,<br>       v.<br>MEAD JOHNSON & COMPANY, LLC, et al.<br>           Defendants. | MARCH TERM, 2022<br>NO. 220302601 |

| Alice Stills, on her own behalf and as Parent and Natural Guardian of M.E., a minor, | : |
| | : |
| Plaintiffs, | : |
| v. | : | MARCH TERM, 2022 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | NO. 220302617 |
| Defendants. | : |

| Christina Taylor, on her own behalf and as Parent and Natural Guardian of I.H., a minor, | : |
| | : |
| Plaintiff, | : |
| v. | : | MARCH TERM, 2022 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | NO. 220302606 |
| Defendants. | : |

### DEFENDANTS, THE PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM D/B/A PENNSYLVANIA HOSPITAL AND THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA D/B/A PENN MEDICINE, RESPONSE TO PLAINTIFFS' MOTION TO COMPEL THE DEPOSITION OF CORPORATE DESIGNEE

Defendants, The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine (hereinafter "Responding Defendants"), by and through their counsel, Burns White LLC, hereby file the instant Response to Plaintiffs' Motion to Compel the Deposition of Corporate Designee, and aver in support as follows:

1. It is admitted that this paragraph summarizes the allegations made in Plaintiffs' Complaints. The substance of the allegations is denied.

2. It is admitted that this paragraph summarizes the allegations made in Plaintiffs' Complaints. The substance of the allegations is denied.

3. Admitted.

4. Admitted that Exhibit "A" was sent to defense counsel.

5. Admitted that Exhibit "B" was sent to defense counsel.

6. Admitted that Exhibit "C" was sent to defense counsel.

7. Denied as stated. It is admitted that defense counsel send the email marked as Exhibit

"D." It is denied that Responding Defendant refused to produce a witness. The deposition was unilaterally noticed and Responding Defendant was not able to coordinate a witness on such short notice without regard for the schedules of all counsel and the witness.

8. Denied. Responding Defendant has provided dates for two of its three clients, and has advised Plaintiffs' counsel that it is actively working to schedule the last of the depositions. It is expected a date will be agreed upon by all parties imminently.

9. Admitted.

10. Denied.

WHEREFORE, Defendants request that this Honorable Court sustain Defendants' Objections to Plaintiff's Motion to Compel and enter the attached proposed Order.

Respectfully submitted,

**BURNS WHITE LLC**

BY:     <u>*/s/ Susan R. Engle*</u>
       JAMES A. YOUNG, ESQ.
       RICHARD S. MARGULIES, ESQ.
       SUSAN R. ENGLE, ESQ.

       *Attorneys for Defendants,*
       *The Pennsylvania Hospital of the University*
       *of Pennsylvania Health System d/b/a*
       *Pennsylvania Hospital and The Trustees of*
       *the University of Pennsylvania d/b/a Penn*
       *Medicine*

## CERTIFICATE OF SERVICE

I, Susan R. Engle, Esquire, do hereby certify that on this day I caused a true and correct copy of the foregoing Response of Defendants The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine to Plaintiffs' Motion to Compel the Deposition of Corporate Designee to be served via the electronic filing system to all counsel of record.

BY:     _/s/ Susan R. Engle_____

Dated:  November 27, 2023

# EXHIBIT A-46

# PHILADELPHIA COURT OF COMMON PLEAS
## PETITION/MOTION COVER SHEET

| CONTROL NUMBER: |
| --- |
| 23122882 |
| **(RESPONDING PARTIES MUST INCLUDE THIS NUMBER ON ALL FILINGS)** |

### FOR COURT USE ONLY

| ASSIGNED TO JUDGE: | ANSWER/RESPONSE DATE: |
| --- | --- |
|  | 01/02/2024 |

*Do not send Judge courtesy copy of Petition/Motion/Answer/Response. Status may be obtained online at http://courts.phila.gov*

March Term, 2022
*Month*                    *Year*

No. _____ 02594 _____

Name of Filing Party:
MEAD JOHNSON & COMPANY LLC-DFT
MEAD JOHNSON NUTRITION COMPANY-DFT

DRAYTON ETAL VS MEAD JOHNSON & COMPANY, LLC ETAL

**INDICATE NATURE OF DOCUMENT FILED:**

☐ Petition *(Attach Rule to Show Cause)*     ☒ Motion
☐ Answer to Petition          ☐ Response to Motion

Has another petition/motion been decided in this case?  ☒ Yes  ☐ No
Is another petition/motion pending?  ☒ Yes  ☐ No
*If the answer to either question is yes, you must identify the judge(s):*
HON. LINDA CARPENTER

| TYPE OF PETITION/MOTION (see list on reverse side) | PETITION/MOTION CODE (see list on reverse side) |
| --- | --- |
| MOT-FOR ADMISSION PRO HAC VICE | MTPHV |

ANSWER / RESPONSE FILED TO (Please insert the title of the corresponding petition/motion to which you are responding):

| I. CASE PROGRAM | II. PARTIES *(required for proof of service)* |
| --- | --- |
| DAY FORWARD/MAJOR JURY PROGRAM | (Name, address and **telephone number** of all counsel of record and unrepresented parties. Attach a stamped addressed envelope for each attorney of record and unrepresented party.) |
| Name of Judicial Team Leader: <u>JUDGE LINDA CARPENTER</u> | JAMES A YOUNG |
|  | BURNS WHITE LLC 1880 JOHN F. KENNEDY BOULEVARD 10TH FLOOR , PHILADELPHIA PA 19103 |
| Applicable Petition/Motion Deadline: <u>N/A</u> | RICHARD S MARGULIES |
| Has deadline been previously extended by the Court: <u>N/A</u> | BURNS WHITE LLC 1880 JFK BLVD., 10TH FLR , PHILADELPHIA PA 19103 |
|  | JOSEPH E ONEIL |
|  | CAMPBELL CONROY & ONEIL 1205 WESTLAKES DR SUITE 330 , BERWYN PA 19312 |
|  | SEAN P FAHEY |
|  | TROUTMAN PEPPER 3000 TWO LOGAN SQ 18TH AND ARCH STREETS , PHILADELPHIA PA 19103-2799 |
|  | KENNETH A MURPHY |
|  | TUCKER LAW GROUP, LLC 1801 MARKET |

**III. OTHER**

By filing this document and signing below, the moving party certifies that this motion, petition, answer or response along with all documents filed, will be served upon all counsel and unrepresented parties as required by rules of Court (see PA. R.C.P. 206.6, Note to 208.2(a), and 440). Furthermore, moving party verifies that the answers made herein are true and correct and understands that sanctions may be imposed for inaccurate or incomplete answers.

_____     December 12, 2023     KENNETH A. MURPHY     _____
*(Attorney Signature/Unrepresented Party)*          *(Date)*          *(Print Name)*          *(Attorney I.D. No.)*

**The Petition, Motion and Answer or Response, if any, will be forwarded to the Court after the Answer/Response Date.**
**No extension of the Answer/Response Date will be granted even if the parties so stipulate.**

30-1061B E-File# 2312024790
12-DEC-23 15:40:52

STREET SUITE 2500 , PHILADELPHIA PA
19103-6996

MARQUES HILLMAN RICHESON
JONES DAY 901 LAKESIDE AVENUE NORTH
POINT , CLEVELAND OH 44114

THOMAS R KLINE
KLINE & SPECTER 1525 LOCUST ST., 19TH
FL. , PHILADELPHIA PA 19102

BENJAMIN WHITIING
KELLER POSTMAN 150 N. RIVERSIDE PLAZA
SUITE 1400 , CHICAGO IL 60606

**FILED**
12 DEC 2023 02:31 pm
Civil Administration
A. CLARKE

| | | |
|---|---|---|
| **SHONDERA DRAYTON, on her own behalf and as Parent and Natural Guardian of A.D., a Minor** | : | **COURT OF COMMON PLEAS** |
| | : | **PHILADELPHIA COUNTY** |
| | : | |
| | : | |
| | : | **MARCH TERM, 2022** |
| Plaintiffs, | : | **No. 2594** |
| v. | : | |
| | : | |
| **MEAD JOHNSON & COMPANY, LLC, et al.**, | : | |
| | : | |
| | : | |
| Defendants. | : | |

## ORDER

**AND NOW**, this _____ day of _____, 2023, upon consideration of the Motion for Admission Pro Hac Vice of Evan Glassman, Esquire, to Represent Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company, it is hereby **ORDERED** that the Motion is **GRANTED**. This Court hereby admits Evan Glassman, Esquire, pro hac vice in this case on behalf of Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company.

**BY THE COURT**:

_____
J.

**TUCKER LAW GROUP, LLC**
Kenneth A. Murphy, Esquire
Heather R. Olson, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609
kmurphy@tlgattorneys.com
holson@tlgattorneys.com

**ATTORNEYS FOR DEFENDANTS MEAD JOHNSON & COMPANY, LLC AND MEAD JOHNSON NUTRITION COMPANY**

| | |
|---|---|
| **SHONDERA DRAYTON, on her own behalf and as Parent and Natural Guardian of A.D., a Minor** | : **COURT OF COMMON PLEAS** |
| | : **PHILADELPHIA COUNTY** |
| | : |
| | : **MARCH TERM, 2022** |
| Plaintiffs, | : **No. 2594** |
| v. | : |
| | : |
| **MEAD JOHNSON & COMPANY, LLC, et al.,** | : |
| | : |
| | : |
| Defendants. | : |

**MOTION FOR ADMISSION _PRO HAC VICE_ OF EVAN GLASSMAN, ESQUIRE, TO REPRESENT MEAD JOHNSON DEFENDANTS**

Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (collectively, the "Mead Johnson Defendants"), by and through their counsel, Tucker Law Group, LLC, hereby move this Court for an order pursuant to Pa. R. C. P. 1012.1(b) and (e), Rule 301 of the Pennsylvania Bar Admission Rules, and the Pennsylvania Interest on Lawyer Trust Account Regulations for pro hac vice Admission (204 Pa. Code § 81.501 et seq.) admitting Evan Glassman, Esquire, to the bar of this Court, p_ro hac vice_, for the purpose of representing the Mead Johnson Defendants, and aver the following in support thereof:

1. Mr. Glassman is a member of the law firm of with Steptoe & Johnson, LLP ("Steptoe") and a resident in its New York office, located at 1114 Avenue of the Americas, New York, NY 10036. Mr. Glassman has an attorney-client relationship

with Mead Johnson & Company, LLC and Mead Johnson Nutrition Company, and has special skills, knowledge and experience relating to this case. The efficient administration, prosecution and resolution of this case will be materially advanced by the admission *pro hac vice* of Mr. Glassman. A Verification Statement from Mr. Glassman, is attached hereto as Exhibit A.

2. Mr. Glassman is a member in good standing in the state of New York and has been admitted to practice since 1994. See Exhibit A.

3. Mr. Glassman's law firm serves as national counsel for the Mead Johnson Defendants. He is familiar with the complex, technical issues presented in this matter, and his participation in this case will help clarify the issues before the Court. See Exhibit A.

4. The Mead Johnson Defendants have specifically requested that Mr. Glassman be permitted to participate in this matter and represent its interests in this matter. See Exhibit A.

5. Mr. Glassman is not presently suspended or disbarred in any Court, nor is he currently subject to any disciplinary proceedings by any organization to discipline attorneys at law. Further, Mr. Glassman has never received any public discipline, including, but not limited to, suspension or disbarment by any organization with the authority to discipline attorneys at law. Exhibit A.

6. Mr. Glassman is familiar with Pennsylvania Bar Admission Rule 301 and has agreed to abide by the Rules of Professional Conduct applicable to Pennsylvania lawyers. Mr. Glassman will abide by the Rules of Court, including all disciplinary rules and, if this motion is granted, he will serve as associate counsel with Kenneth

3

Murphy, Esquire, counsel of record for the Mead Johnson Defendants in this matter.

7. Mr. Glassman has applied to the Pennsylvania Interest on Lawyers' Trust Account Board (Pennsylvania IOLTA Board) and paid the appropriate fee required under 204 Pa. Code § 81.503. to be admitted pro hac vice. Our office received a copy of the fee payment certification letter from the IOLTA Board, a copy of which is attached as Exhibit B.

8. Mr. Glassman will be associated with Kenneth Murphy, Esquire of Tucker Law Group, LLC at all stages of this action. Mr. Murphy, after reasonable investigation, believes that Mr. Glassman is a reputable and competent attorney and recommends that he be considered for admission *pro hac vice*. A true Verification Statement from Mr. Murphy pursuant to Pa. R. C. P. 1012.1(d)(2) is attached hereto as Exhibit C.

9. Kenneth Murphy, Esquire, of Tucker Law Group, LLC is a member in good standing of the Bar of the Commonwealth of Pennsylvania. Tucker Law Group and Mr. Murphy will be counsel of record for the Mead Johnson Defendants and will continue to participate fully in this litigation and will sign, serve, and accept service of all papers on the Mead Johnson Defendants' behalf.

10. All the requirements to satisfy the applicable rules of Court are met.

11. There is no good cause for denial of this motion.

4

**WHEREFORE**, it is respectfully requested that this Court enter the attached Order granting Evan Glassman, Esquire leave to appear as counsel *pro hac vice* for Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Date: December 12, 2023

/s/ Kenneth A. Murphy
Kenneth A. Murphy, Esquire
Heather R. Olson, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609
(215) 559-6209 – fax
kmurphy@tlgattorneys.com
holson@tlgattorneys.com

Case ID: 220302594
Control No.: 23122882

## **CERTIFICATE OF SERVICE**

I, Kenneth A. Murphy, Esquire certify that on this date, I caused a copy of the foregoing Motion for *Pro Hac Vice* of Evan Glassman to be electronically filed through the Court's ECF System and that such filing generates a notice of that constitutes service on all counsel of record.

**TUCKER LAW GROUP, LLC**

Date: December 12, 2023

/s/ Kenneth A. Murphy
Kenneth A. Murphy, Esquire

6

Case ID: 220302594
Control No.: 23122882

# EXHIBIT A

Case ID: 220302594
Control No.: 23122882

## <u>VERIFICATION OF EVAN GLASSMAN, ESQUIRE</u>

I, Evan Glassman, Esquire, hereby submit this Verification Statement in support of the attached Motion for Admission *pro hac vice* to represent Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (collectively, the "Mead Johnson Defendants"), in this action in the Court of Common Pleas of Philadelphia County, Pennsylvania. In support of this Motion made pursuant to pursuant to Pa. R. C. P. 1012.1(b) and (e), Rule 301 of the Pennsylvania Bar Admission Rules, and the Pennsylvania Interest on Lawyer Trust Account Regulations for pro hac vice Admission (204 Pa. Code § 81.501 et seq.), I swear and affirm that the following is true and correct based upon my personal knowledge:

1. I am a member of the law firm Steptoe and Johnson and resident in its New York office, located at 1114 Avenue of the Americas, New York, NY 10036. Telephone: (212) 506-3909; email address: eglassman@steptoe.com.

2. I have been licensed to practice law in the following jurisdictions with the corresponding bar license number: State of New York (#2616142). Additionally, I have been admitted to practice in the following courts: U.S. District Court Eastern District of New York, U.S. District Court Southern District of New York, U.S. District Court Northern District of New York, U.S. District Court Northern District of Illinois, U.S. Court of Appeals First Circuit, and U.S. Court of Appeals Second Circuit.

3. I am a member in good standing of all Bar(s) to which I am admitted.

4.  With respect to each jurisdiction identified in Paragraph 2 above, I have never been suspended, disbarred, or otherwise disciplined by any court, nor am I the subject of any disciplinary proceedings.

5.  I am involved in the following pending actions in the Philadelphia County Court of Common Pleas in which I am applying for admission *pro hac vice:*

| Case Name | Case Number |
|---|---|
| Wiggins, et al. v. Mead Johnson & Company, LLC, et al. | 220302586 |
| Carter, at al. v. Mead Johnson & Company, LLC, et al. | 220302588 |
| Abdullah, et al. v. Mead Johnson & Company, LLC, et al. | 220302583 |
| Henderson, et al. v. Mead Johnson & Company, LLC, et al. | 220400127 |
| Kajuffa, et al. v. Mead Johnson & Company, LLC, et al. | 220302978 |
| Mays, et al. v. Mead Johnson & Company, LLC, et al. | 220302963 |
| Parker, et al. v. Mead Johnson & Company, LLC, et al. | 220302983 |
| Sanders, et al. v. Mead Johnson & Company, LLC, et al. | 220400153 |
| Stills, et al. v. Mead Johnson & Company, LLC, et al. | 220302617 |
| Taylor, et al. v. Mead Johnson & Company, LLC, et al. | 220302606 |
| Wieger, et al. v. Mead Johnson & Company, LLC, et al. | 220302601 |
| Wieger, et al. v. Mead Johnson & Company, LLC, et al. | 220302614 |
| Ross, et al. v. Mead Johnson & Company, LLC, et al. | 220302981 |

6.  If admitted, I agree to comply with and be bound by the applicable statues, case law, and procedural rules of the Commonwealth of Pennsylvania, including the Pennsylvania Rules of Professional Conduct.

7. I do not have any pending *pro hac vice* admissions that I have applied for in any other court jurisdictions.

8. If admitted, I agree to subject myself to the jurisdiction of the Pennsylvania courts and the Pennsylvania Disciplinary Board with respect to acts or omissions occurring during my appearance in this matter for which admission *pro hac vice* is sought.

9. I respectfully submit that there is a good cause for my admission *pro hac vice* based upon my personal knowledge.

10. Further, I have consented to the appointment of Kenneth A. Murphy, Esquire, of Tucker Law Group, LLC, as the agent upon whom services of process shall be made for all actions, including disciplinary actions, that may arise out of the practice of law in this matter for which admission *pro hac vice* is being sought.

I declare under the penalty of perjury the foregoing is true and correct. I hereby state that the facts above are true and correct to the best of my knowledge, information, and belief. I understand that statements herein are made subject to the penalties of 18 Pa. CS § 4904 (relating to unsworn falsification to authorities).

Date: December 12, 2023

/s/ Evan Glassman
Evan Glassman, Esquire

# EXHIBIT B

Case ID: 220302594
Control No.: 23122882



SUPREME COURT OF PENNSYLVANIA
## PENNSYLVANIA INTEREST ON
## LAWYERS TRUST ACCOUNT BOARD

December 12, 2023


EVAN GLASSMAN, Esq.
STEPTOE LLP
1114 AVENUE OF THE AMERICAS
NEW YORK, NY 10036


SENT TO EVAN GLASSMAN VIA Email: EGLASSMAN@STEPTOE.COM


Dear Attorney GLASSMAN:


This letter serves as the fee payment certification referenced in 204 Pa Code §81.503 and acknowledges receipt of the $375.00 fee paid by Online Payment on this date related to your pursuit for admission *pro hac vice* in the case identified as DRAYTON v. MEAD JOHNSON & COMPANY, LLC et al, no. 220302594, filed in Court of Common Pleas of Philadelphia County.

You should refer to Pa Rule of Civil Procedure 1012.1, local court rules, and other regulations of 204 Pa Code §81.501 et. seq. concerning additional requirements related to seeking *pro hac vice* admission.

Sincerely,


Stephanie S. Libhart
Executive Director

cc:  KENNETH ALONZO MURPHY, Esq.

    kmurphy@tlgattorneys.com


Pennsylvania Judicial Center
601 Commonwealth Ave., Ste. 2400
PO Box 62445, Harrisburg, PA 17106-2445
717/238-2001 · 888/PA-IOLTA (724-6582) · 717/238-2003 FAX
paiolta@pacourts.us · www.paiolta.org

Administering Pennsylvania's Interest On Lawyers Trust Account (IOLTA) Program

Case ID: 220302594
Control No.: 23122882

# EXHIBIT C

Case ID: 220302594
Control No.: 23122882

**TUCKER LAW GROUP, LLC**
Kenneth A. Murphy, Esquire
Heather R. Olson, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA  19103
(215) 875-0609
kmurphy@tlgattorneys.com
holson@tlgattorneys.com

**ATTORNEYS FOR DEFENDANTS**
**MEAD JOHNSON & COMPANY, LLC**
**AND MEAD JOHNSON NUTRITION**
**COMPANY**

| | |
|---|---|
| **SHONDERA DRAYTON, on her own behalf and as Parent and Natural Guardian of A.D., a Minor** | : **COURT OF COMMON PLEAS** : **PHILADELPHIA COUNTY** : : **MARCH TERM, 2022** |
| Plaintiffs, | : **No. 2594** |
| v. | : : |
| **MEAD JOHNSON & COMPANY, LLC, et al.**, | : : : |
| Defendants. | : : |

<u>**VERIFICATION OF KENNETH A. MURPHY, ESQUIRE**</u>

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) |
| | ) ss: |
| COUNTY OF PHILADELPHIA | ) |

I, Kenneth A. Murphy, hereby submit this Verification Statement in support of the attached Motion to Admit Evan Glassman, Esquire *pro hac vice* to represent Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (collectively, the Mead Johnson Defendants), in this matter.

1.    I am a Partner at Tucker Law Group, LLC, Ten Penn Center, 1801 Market Street, Suite 2500, Philadelphia, PA 19103.

2.    I have been licensed to practice law in the following jurisdictions with the corresponding bar license number: The Commonwealth of Pennsylvania

(#58162), the State of New Jersey (#047641992). Additionally, I have been admitted to practice in the following courts: U.S. District Court, Eastern District of Pennsylvania, U.S. Court of Appeals, D.C. Circuit, U.S. Court of Appeals, Third Circuit.

3.  I am a member in good standing of the Bar of the Commonwealth of Pennsylvania and the other courts to which I am admitted.

4.  I am licensed to practice law in all the jurisdictions that I have been admitted and am counsel of record representing the Mead Johnson Defendants in this matter.

5.  I hereby certify and affirm that after reasonable investigation and on personal knowledge, I believe that Evan Glassman, is a reputable and competent attorney, and I am in a position to recommend that this candidate be admitted *pro hac vice* for practice in the Commonwealth of Pennsylvania to represent the Mead Johnson Defendants in this matter.

6.  I am not currently acting as the sponsor of any other candidate for admission pro hac vice in Pennsylvania.

7.  If applicable, at the conclusion of this matter, I affirm that any proceeds from the settlement of this cause of action in which Mr. Glassman is granted admission *pro hac vice* shall be received, held, distributed, and accounted for in accordance with Rule 301 of the Pennsylvania Rules of Professional Conduct, including the IOLTA provisions thereof, if applicable.

I declare under the penalty of perjury the foregoing is true and correct. I hereby state that the facts above are true and correct to the best of my knowledge, information, and belief. I understand that statements herein are made subject to the penalties of 18 Pa. CS §4904 (relating to unsworn falsification to authorities).

**TUCKER LAW GROUP, LLC**

By:    /s/ Kenneth A. Murphy
            Kenneth A. Murphy, Esquire

Date: December 12, 2023

# EXHIBIT A-47

**FILED**
12 DEC 2023 02:31 pm
Civil Administration
A. CLARKE

| | |
|---|---|
| **SHONDERA DRAYTON, on her own behalf and as Parent and Natural Guardian of A.D., a Minor** | : **COURT OF COMMON PLEAS** |
| | : **PHILADELPHIA COUNTY** |
| | : |
| | : **MARCH TERM, 2022** |
| Plaintiffs, | : **No. 2594** |
| v. | : |
| | : |
| **MEAD JOHNSON & COMPANY, LLC, et al.,** | : |
| | : |
| Defendants. | : |

## ORDER

**AND NOW**, this 18th day of JANUARY, 2023, upon consideration of the Motion for Admission Pro Hac Vice of Evan Glassman, Esquire, to Represent Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company, it is hereby **ORDERED** that the Motion is **GRANTED**. This Court hereby admits Evan Glassman, Esquire, pro hac vice in this case on behalf of Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company.

BY THE COURT:

_____ J.

220302594-Drayton Etal Vs Mead Johnson


22030259400091

Case ID: 220302594
Control No.: 23122882

# EXHIBIT A-48

**COURT OF COMMON PLEAS OF PHILADELPHIA**
**TRIAL DIVISION – CIVIL**

*Filed and Attested by the Office of Judicial Records 22 JAN 2024 02:54 pm E. HAURIN*

| | |
|---|---|
| TERRAINE ABDULLAH, *on her own behalf and as Parent and Natural Guardian of H.S., a Minor*, | : |
| | : |
| | : Case No.: 220302583 |
| Plaintiffs, | : |
| | : **JURY TRIAL DEMANDED** |
| v. | : |
| | : |
| MEAD JOHNSON & COMPANY LLC; MEAD JOHNSON NUTRITION COMPANY; ABBOTT LABORATORIES; THE PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM, *d/b/a* PENNSYLVANIA HOSPITAL; and THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN MEDICINE, | : |
| | : |
| Defendants. | : |

| | |
|---|---|
| HOLLI CARTER, *on her own behalf and as Parent and Natural Guardian of J.C., a Minor*, | : |
| | : |
| | : Case No.: 220302588 |
| Plaintiffs, | : |
| | : **JURY TRIAL DEMANDED** |
| v. | : |
| | : |
| MEAD JOHNSON & COMPANY LLC; MEAD JOHNSON NUTRITION COMPANY; ABBOTT LABORATORIES; THE PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM, *d/b/a* PENNSYLVANIA HOSPITAL; and THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN MEDICINE, | : |
| | : |
| Defendants. | : |

| | |
|---|---|
| SHONDERA DRAYTON, *on her own behalf and as Parent and Natural Guardian of* A.D.*, a Minor*, | : |
| | : |
| | : Case No.: 220302594 |
| Plaintiffs, | : |
| | : **JURY TRIAL DEMANDED** |
| v. | : |
| | : |

Page 1

MEAD JOHNSON & COMPANY LLC; MEAD : \
JOHNSON NUTRITION COMPANY; ABBOTT : \
LABORATORIES; THE PENNSYLVANIA : \
HOSPITAL OF THE UNIVERSITY OF : \
PENNSYLVANIA HEALTH SYSTEM, *d/b/a* : \
PENNSYLVANIA HOSPITAL; and THE : \
TRUSTEES OF THE UNIVERSITY OF : \
PENNSYLVANIA, *d/b/a* PENN MEDICINE, : \
                               : \
         Defendants. : 

BRANDY GOODMOND, *on her own behalf and as* : \
*Parent and Natural Guardian of* RYA G., *a Minor,* : \
                               :   Case No.: 220400208 \
         Plaintiffs, : \
                               :   **JURY TRIAL DEMANDED** \
v. : \
                               : \
MEAD JOHNSON & COMPANY LLC; MEAD : \
JOHNSON NUTRITION COMPANY; ABBOTT : \
LABORATORIES; THOMAS JEFFERSON : \
UNIVERSITY HOSPITALS, INC., *d/b/a* THOMAS : \
JEFFERSON UNIVERSITY HOSPITAL, and : \
THOMAS JEFFERSON UNIVERSITY, *d/b/a*, : \
JEFFERSON HEALTH SYSTEM, : \
                               : \
         Defendants. : 

BRANDY GOODMOND, *on her own behalf and as* : \
*Parent and Natural Guardian of* RYH G., *a Minor,* : \
                               :   Case No.: 220400212 \
         Plaintiffs, : \
                               :   **JURY TRIAL DEMANDED** \
v. : \
                               : \
MEAD JOHNSON & COMPANY LLC; MEAD : \
JOHNSON NUTRITION COMPANY; ABBOTT : \
LABORATORIES; THOMAS JEFFERSON : \
UNIVERSITY HOSPITALS, INC., *d/b/a* THOMAS : \
JEFFERSON UNIVERSITY HOSPITAL, and : \
THOMAS JEFFERSON UNIVERSITY, *d/b/a*, : \
JEFFERSON HEALTH SYSTEM, : \
                               : \
         Defendants. : 

TONYA GRAY, *on her own behalf and as Parent and* :

Page 2

Case ID: 220302594 \
Control No.: 24014657

| | |
|---|---|
| *Natural Guardian of* J.M.*, a Minor,* | : |
| | : Case No.: 220400216 |
| Plaintiffs, | : |
| | : **JURY TRIAL DEMANDED** |
| v. | : |
| | : |
| MEAD JOHNSON & COMPANY LLC; MEAD | : |
| JOHNSON NUTRITION COMPANY; ABBOTT | : |
| LABORATORIES; THOMAS JEFFERSON | : |
| UNIVERSITY HOSPITALS, INC., *d/b/a* THOMAS | : |
| JEFFERSON UNIVERSITY HOSPITAL, and | : |
| THOMAS JEFFERSON UNIVERSITY, *d/b/a,* | : |
| JEFFERSON HEALTH SYSTEM, | : |
| | : |
| Defendants. | : |

| | |
|---|---|
| JANEE HENDERSON, *on her own behalf and as* | : |
| *Parent and Natural Guardian of* S.C.*, a Minor,* | : |
| | : Case No.: 220400127 |
| Plaintiffs, | : |
| | : **JURY TRIAL DEMANDED** |
| v. | : |
| | : |
| MEAD JOHNSON & COMPANY LLC; MEAD | : |
| JOHNSON NUTRITION COMPANY; ABBOTT | : |
| LABORATORIES; THE TRUSTEES OF THE | : |
| UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE | : |
| HOSPITAL OF THE UNIVERSITY OF | : |
| PENNSYLVANIA; and THE TRUSTEES OF THE | : |
| UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN | : |
| MEDICINE, | : |
| | : |
| Defendants. | : |

| | |
|---|---|
| SHEMIKA JOHNSON, *on her own behalf and as* | : |
| *Parent and Natural Guardian of* W.J.*, a Minor,* | : |
| | : Case No.: 220400162 |
| Plaintiffs, | : |
| | : **JURY TRIAL DEMANDED** |
| v. | : |
| | : |
| MEAD JOHNSON & COMPANY LLC; MEAD | : |
| JOHNSON NUTRITION COMPANY; ABBOTT | : |
| LABORATORIES; THE TRUSTEES OF THE | : |
| UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE | : |
| HOSPITAL OF THE UNIVERSITY OF | : |

Page 3

Case ID: 220302594
Control No.: 24014657

PENNSYLVANIA; and THE TRUSTEES OF THE : <br>
UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN : <br>
MEDICINE, :

        Defendants. :

KRISTEN KAJUFFA, *on her own behalf and as* : <br>
*Parent and Natural Guardian of* B.K*., a Minor,* : <br>
        :   Case No.: 220302978

        Plaintiffs, :

:   **JURY TRIAL DEMANDED**

v. :

 :

MEAD JOHNSON & COMPANY LLC; MEAD : <br>
JOHNSON NUTRITION COMPANY; ABBOTT : <br>
LABORATORIES; TEMPLE UNIVERSITY : <br>
HEALTH SYSTEM, *d/b/a* TEMPLE UNIVERSITY : <br>
HOSPITAL, :

 :

        Defendants. :

NAFEESAH MAYS, *on her own behalf and as Parent* : <br>
*and Natural Guardian of* A.R*., a Minor,* : <br>
        :   Case No.: 220302963

        Plaintiffs, :

:   **JURY TRIAL DEMANDED**

v. :

 :

MEAD JOHNSON & COMPANY LLC; MEAD : <br>
JOHNSON NUTRITION COMPANY; ABBOTT : <br>
LABORATORIES; ALBERT EINSTEIN MEDICAL : <br>
CENTER, *a/k/a* EINSTEIN MEDICAL CENTER, and : <br>
ALBERT EINSTEIN HEALTHCARE NETWORK, : <br>
*d/b/a*, EINSTEIN HEALTHCARE NETWORK, :

 :

        Defendants. :

CATHERINE MCMILLIAN, *on her own behalf and as* : <br>
*Parent and Natural Guardian of* T.M*., a Minor,* : <br>
        :   Case No.: 220400140

        Plaintiffs, :

:   **JURY TRIAL DEMANDED**

v. :

 :

MEAD JOHNSON & COMPANY LLC; MEAD :

Case ID: 220302594 <br> Control No.: 24014657

JOHNSON NUTRITION COMPANY; ABBOTT : 
LABORATORIES; THE TRUSTEES OF THE : 
UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE : 
HOSPITAL OF THE UNIVERSITY OF : 
PENNSYLVANIA; and THE TRUSTEES OF THE : 
UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN : 
MEDICINE, : 
             : 
             Defendants. : 

---

DAMEKA MOMENT, *on her own behalf and as* : 
*Parent and Natural Guardian of* A.M., *a Minor*, : 
             : Case No.: 220400142
             Plaintiffs, : 
             : **JURY TRIAL DEMANDED**
v. : 
             : 
MEAD JOHNSON & COMPANY LLC; MEAD : 
JOHNSON NUTRITION COMPANY; ABBOTT : 
LABORATORIES; THE TRUSTEES OF THE : 
UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE : 
HOSPITAL OF THE UNIVERSITY OF : 
PENNSYLVANIA; and THE TRUSTEES OF THE : 
UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN : 
MEDICINE, : 
             : 
             Defendants. : 

---

NYDIA PARKER, *on her own behalf and as Parent* : 
*and Natural Guardian of* M.H., *a Minor*, : 
             : Case No.: 220302983
             Plaintiffs, : 
             : **JURY TRIAL DEMANDED**
v. : 
             : 
MEAD JOHNSON & COMPANY LLC; MEAD : 
JOHNSON NUTRITION COMPANY; ABBOTT : 
LABORATORIES; TEMPLE UNIVERSITY : 
HEALTH SYSTEM, *d/b/a* TEMPLE UNIVERSITY : 
HOSPITAL, : 
             : 
             Defendants. : 

---

ALEXANDRIA ROSS, *on her own behalf and as* : 
*Parent and Natural Guardian of* B.M., *a Minor*, : 
             : Case No.: 220302981

Page 5

Case ID: 220302594
Control No.: 24014657

|  | : |  |
| --- | --- | --- |
| Plaintiffs, | : | **JURY TRIAL DEMANDED** |
|  | : |  |
| v. | : |  |
|  | : |  |
| MEAD JOHNSON & COMPANY LLC; MEAD | : |  |
| JOHNSON NUTRITION COMPANY; ABBOTT | : |  |
| LABORATORIES; TEMPLE UNIVERSITY | : |  |
| HEALTH SYSTEM, *d/b/a* TEMPLE UNIVERSITY | : |  |
| HOSPITAL, | : |  |
|  | : |  |
| Defendants. | : |  |

|  | : |  |
| --- | --- | --- |
| LOREN SANDERS, *on her own behalf and as Parent* | : |  |
| *and Natural Guardian of* Q.S*., a Minor,* | : |  |
|  | : | Case No.: 220400153 |
| Plaintiffs, | : |  |
|  | : | **JURY TRIAL DEMANDED** |
| v. | : |  |
|  | : |  |
| MEAD JOHNSON & COMPANY LLC; MEAD | : |  |
| JOHNSON NUTRITION COMPANY; ABBOTT | : |  |
| LABORATORIES; THE TRUSTEES OF THE | : |  |
| UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE | : |  |
| HOSPITAL OF THE UNIVERSITY OF | : |  |
| PENNSYLVANIA; and THE TRUSTEES OF THE | : |  |
| UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN | : |  |
| MEDICINE, | : |  |
|  | : |  |
| Defendants. | : |  |

|  | : |  |
| --- | --- | --- |
| SAMAYA SHORT, *on her own behalf and as Parent* | : |  |
| *and Natural Guardian of* S.M*., a Minor,* | : |  |
|  | : | Case No.: 220400159 |
| Plaintiffs, | : |  |
|  | : | **JURY TRIAL DEMANDED** |
| v. | : |  |
|  | : |  |
| MEAD JOHNSON & COMPANY LLC; MEAD | : |  |
| JOHNSON NUTRITION COMPANY; ABBOTT | : |  |
| LABORATORIES; THE TRUSTEES OF THE | : |  |
| UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE | : |  |
| HOSPITAL OF THE UNIVERSITY OF | : |  |
| PENNSYLVANIA; and THE TRUSTEES OF THE | : |  |
| UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN | : |  |
| MEDICINE, | : |  |
|  | : |  |

Case ID: 220302594
Control No.: 24014657

|  |  |  |
|---|---|---|
| Defendants. | : | |

ALICE STILLS, *on her own behalf and as Parent and Natural Guardian of* M.E*., a Minor,*

        Plaintiffs,

v.

MEAD JOHNSON & COMPANY LLC; MEAD JOHNSON NUTRITION COMPANY; ABBOTT LABORATORIES; THE PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM, *d/b/a* PENNSYLVANIA HOSPITAL; and THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN MEDICINE,

        Defendants.

:   Case No.: 220302617

:   **JURY TRIAL DEMANDED**

CHRISTINA TAYLOR, *on her own behalf and as Parent and Natural Guardian of* I.H*., a Minor,*

        Plaintiffs,

v.

MEAD JOHNSON & COMPANY LLC; MEAD JOHNSON NUTRITION COMPANY; ABBOTT LABORATORIES; THE PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM, *d/b/a* PENNSYLVANIA HOSPITAL; and THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN MEDICINE,

        Defendants.

:   Case No.: 220302606

:   **JURY TRIAL DEMANDED**

NATISHA THOMAS, *on her own behalf and as Parent and Natural Guardian of* R.T*., a Minor,*

        Plaintiffs,

v.

MEAD JOHNSON & COMPANY LLC; MEAD

:   Case No.: 220400158

:   **JURY TRIAL DEMANDED**

Case ID: 220302594
Control No.: 24014657

JOHNSON NUTRITION COMPANY; ABBOTT   :
LABORATORIES; THE TRUSTEES OF THE   :
UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE   :
HOSPITAL OF THE UNIVERSITY OF   :
PENNSYLVANIA; and THE TRUSTEES OF THE   :
UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN   :
MEDICINE,   :
   :
        Defendants.   :

TRINA WALKER-SAVAGE and CLIFTON ISAIAH  :
WALKER-SAVAGE, JR.,   :
   :  Case No.: 220400156
        Plaintiffs,   :
   :  **JURY TRIAL DEMANDED**
v.   :
   :
MEAD JOHNSON & COMPANY LLC; MEAD   :
JOHNSON NUTRITION COMPANY; ABBOTT   :
LABORATORIES; THE TRUSTEES OF THE   :
UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE   :
HOSPITAL OF THE UNIVERSITY OF   :
PENNSYLVANIA; and THE TRUSTEES OF THE   :
UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN   :
MEDICINE,   :
   :
        Defendants.   :

JEANNATE WATSON, *on her own behalf and as*  :
*Parent and Natural Guardian of* B.L.*, a Minor,*  :
   :  Case No.: 220302967
        Plaintiffs,   :
   :  **JURY TRIAL DEMANDED**
v.   :
   :
MEAD JOHNSON & COMPANY LLC; MEAD   :
JOHNSON NUTRITION COMPANY; ABBOTT   :
LABORATORIES; ALBERT EINSTEIN MEDICAL  :
CENTER, *a/k/a* EINSTEIN MEDICAL CENTER, and :
ALBERT EINSTEIN HEALTHCARE NETWORK,  :
*d/b/a*, EINSTEIN HEALTHCARE NETWORK,   :
   :
        Defendants.   :

GINA WIEGER, *on her own behalf and as Parent and* :
*Natural Guardian of* M.P.*, a Minor,*   :

Case ID: 220302594
Control No.: 24014657

|  | : | Case No.: 220302614 |
| Plaintiffs, | : | |
|  | : | **JURY TRIAL DEMANDED** |
| v. | : | |
|  | : | |
| MEAD JOHNSON & COMPANY LLC; MEAD | : | |
| JOHNSON NUTRITION COMPANY; ABBOTT | : | |
| LABORATORIES; THE PENNSYLVANIA | : | |
| HOSPITAL OF THE UNIVERSITY OF | : | |
| PENNSYLVANIA HEALTH SYSTEM, *d/b/a* | : | |
| PENNSYLVANIA HOSPITAL; and THE | : | |
| TRUSTEES OF THE UNIVERSITY OF | : | |
| PENNSYLVANIA, *d/b/a* PENN MEDICINE, | : | |
|  | : | |
| Defendants. | : | |

| GINA WIEGER, *on her own behalf and as Parent and* | : | |
| *Natural Guardian of* S.P.*, a Minor,* | : | |
|  | : | Case No.: 220302601 |
| Plaintiffs, | : | |
|  | : | **JURY TRIAL DEMANDED** |
| v. | : | |
|  | : | |
| MEAD JOHNSON & COMPANY LLC; MEAD | : | |
| JOHNSON NUTRITION COMPANY; ABBOTT | : | |
| LABORATORIES; THE PENNSYLVANIA | : | |
| HOSPITAL OF THE UNIVERSITY OF | : | |
| PENNSYLVANIA HEALTH SYSTEM, *d/b/a* | : | |
| PENNSYLVANIA HOSPITAL; and THE | : | |
| TRUSTEES OF THE UNIVERSITY OF | : | |
| PENNSYLVANIA, *d/b/a* PENN MEDICINE, | : | |
|  | : | |
| Defendants. | : | |

| SHANITA WIGGINS, *on her own behalf and as* | : | |
| *Parent and Natural Guardian of* T.B.*, a Minor,* | : | |
|  | : | Case No.: 220302986 |
| Plaintiffs, | : | |
|  | : | **JURY TRIAL DEMANDED** |
| v. | : | |
|  | : | |
| MEAD JOHNSON & COMPANY LLC; MEAD | : | |
| JOHNSON NUTRITION COMPANY; ABBOTT | : | |
| LABORATORIES; TEMPLE UNIVERSITY | : | |
| HEALTH SYSTEM, *d/b/a* TEMPLE UNIVERSITY | : | |
| HOSPITAL, | : | |

Page 9

Case ID: 220302594
Control No.: 24014657

|  |  |  |
|---|---|---|
| Defendants. | : |  |
| MELVENIA WILLIAMS, *on her own behalf and as Parent and Natural Guardian of* R.W.*, a Minor*, | : | Case No.: 220400141 |
| Plaintiffs, | : | **JURY TRIAL DEMANDED** |
| v. | : |  |
| MEAD JOHNSON & COMPANY LLC; MEAD JOHNSON NUTRITION COMPANY; ABBOTT LABORATORIES; THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA; and THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN MEDICINE, | : |  |
| Defendants. | : |  |
| IVYANN WITHERSPOON, *on her own behalf and as Parent and Natural Guardian of* A.H., *a Minor*, | : | Case No.: 220400138 |
| Plaintiffs, | : | **JURY TRIAL DEMANDED** |
| v. | : |  |
| MEAD JOHNSON & COMPANY LLC, MEAD JOHNSON NUTRITION COMPANY, ABBOTT LABORATORIES, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA and THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN MEDICINE, | : |  |
| Defendants. | : |  |

### [PROPOSED] STIPULATED PROTECTIVE ORDER

To expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality, adequately protect material entitled to be kept confidential, and ensure

Page 10

Case ID: 220302594
Control No.: 24014657

that protection is afforded only to material so entitled, plaintiffs in the above-captioned litigation ("Plaintiffs") and defendants Mead Johnson & Company, LLC, Mead Johnson Nutrition Company; Abbott Laboratories; Albert Einstein Medical Center, a/k/a Einstein Medical Center; Albert Einstein Healthcare Network, d/b/a, Einstein Healthcare Network; Mead Johnson & Company LLC; Mead Johnson Nutrition Company; Temple University Health System, d/b/a Temple University Hospital; The Pennsylvania Hospital of the University of Pennsylvania Health System, d/b/a Pennsylvania Hospital; The Trustees of the University Of Pennsylvania, d/b/a Penn Medicine; The Trustees of the University of Pennsylvania, d/b/a The Hospital of the University of Pennsylvania; Thomas Jefferson University Hospitals, Inc., d/b/a Thomas Jefferson University Hospital; Thomas Jefferson University, d/b/a, Jefferson Health System ("Defendants"), by and through their respective counsel, and pursuant to Pa. R.C.P. No. 4012, hereby stipulate and agree to the terms of this Stipulated Protective Order as follows:

IT IS HEREBY STIPULATED, subject to the approval of the Court that:

1.  **APPLICABILITY OF THE PROTECTIVE ORDER.** This Stipulated Order Governing the Designation and Handling of Confidential Materials (hereinafter "Order") shall govern for pre-trial purposes the handling of documents, depositions, deposition exhibits, interrogatory responses, responses to requests for admissions, responses to requests for production of documents, and all other discovery obtained pursuant to the Pennsylvania Rules of Civil Procedure and Rules of Evidence by or from a Party in connection with the Action (this information hereinafter referred to as "Discovery Material"). Except where federal law applies, Pennsylvania law and rules shall govern this order. All references to "Party," "Receiving Party," "Producing Party" or "Designating Party" throughout this Order are intended to include Non-parties.

Case ID: 220302594
Control No.: 24014657

The Parties acknowledge that this Order does not confer blanket protections on all disclosures, responses to discovery, or testimony and that the protection it affords extends only to the information or items that are entitled to protection under the terms of this Order and any other applicable law. Furthermore, the Parties acknowledge that neither this Order—nor the confidentiality designations thereunder—constitutes a ruling by this Court that any specific information is, in fact, confidential.

2.     **OTHER DEFINITIONS**

a.  **Action**: The above-captioned actions and any other Pennsylvania Court action coordinated with them for any purposes, including discovery purposes, and any other related actions in the Philadelphia Court of Common Pleas, provided additional or different Parties to those actions agree to be bound by the terms of this Order, and those other courts that enter this Order or a substantively identical order in reciprocal fashion.

b.  **Party**: any party to this Action.

c.  **Non-party**: any individual, corporation, association, or other natural person or entity that is not a Party to this Action.

d.  **Receiving Party**: a Party or Non-party that receives Discovery Material from a Producing Party.

e.  **Producing Party**: a Party or Non-party that produces Discovery Material in this Action.

f.  **Designating Party**: a Party or Non-party that designates information or items that it produces in disclosures or in responses to discovery or provides in the form of deposition testimony as Covered Information (as defined

Case ID: 220302594
Control No.: 24014657

below).  The Designating Party bears the burden of establishing good cause for the protection of all such information or items.

g. **Challenging Party**: a Party that elects to initiate a challenge to a Designating Party's confidentiality designation.

h. **TIFF**: A widely used and supported graphic file format for storing bit-mapped images, with many different compression formats and resolutions.

i. **Native Format**: An electronic document's associated file structure defined by the original creating application.  For example, the native format of an Excel workbook is a .xls or .xslx file.

3.     **DESIGNATION OF MATERIAL AS "CONFIDENTIAL" OR "HIGHLY CONFIDENTIAL"**.  Any Producing Party may designate Discovery Material as "Confidential" or "Highly Confidential" under the terms of this Order if the Producing Party in good faith reasonably believes that such Discovery Material contains non-public, confidential, personal, proprietary or commercially sensitive information that requires protections provided in this Order (hereinafter referred to as "Confidential Material" or "Highly Confidential Material" as set forth below).  Confidential Material and Highly Confidential Material are collectively defined as "Covered Information."

a. **"Confidential Material."**  "Confidential Material" means material or information that constitutes, reflects, discloses or contains (i) information protected from disclosure by any applicable State or federal statute or regulation; (ii) research, design, development, financial, technical, marketing, planning, manufacturing or commercial information that the Designating Party has maintained as confidential, as such terms are used in

Case ID: 220302594
Control No.: 24014657

Pa. R.C.P. 4012(a)(9), and any applicable case law interpreting these rules; and (iii) trade secrets as defined by the Restatement of Torts § 757 comment. Confidential Material shall also include any Protected Data (defined below). For avoidance of all doubt, all medical records produced in this case shall be designated Confidential and treated as personal health information ("PHI") in accordance with the Health Insurance Portability and Accountability Act ("HIPAA").

(i) **"Protected Data."** Protected Data shall refer to any information that a Party believes in good faith to be subject to federal, state, or foreign Data Protection Laws or other regulatory privacy obligations, including but not limited to Personal Health Information ("PHI") and Personally Identifiable Information ("PII"). Protected Data constitutes highly sensitive materials requiring special protection. Examples of such Data Protection Laws include, without limitation, The Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 et seq. (financial information); The Health Insurance Portability and Accountability Act and the regulations thereunder, 45 CFR Part 160 and Subparts A and E of Part 164 (medical information); and the *General Data Protection Regulation (GDPR):* Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing

Case ID: 220302594
Control No.: 24014657

of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation), OJ 2016 L 119/1. Certain Protected Data may compel alternative or additional protections beyond those afforded Confidential Material, in which event the Parties shall meet and confer in good faith, and, if unsuccessful, shall move the Court for appropriate relief.

b. **"Highly Confidential Material."** For purposes of this Order, Highly Confidential Material shall include, but is not limited to, Confidential Material as defined herein containing non-public product design, development, research, or testing information or extremely sensitive, highly confidential, non-public information, consisting either of trade secrets or proprietary or other highly confidential business, financial, regulatory, research, marketing, manufacturing, or other strategic information (including without limitation information regarding business plans, technical data, and non-public designs), the disclosure of which would create a substantial risk of competitive or business injury to the Producing Party. It is possible that Defendants may view certain Highly Confidential Information as requiring additional protections beyond those afforded Highly Confidential Material, in which event the Parties shall meet and confer in good faith about potential additional protections, and, if unsuccessful, Defendants shall move the Court for appropriate relief before producing the information.

(i). Certain Highly Confidential Information that contains trade secrets or

Page 15

Case ID: 220302594
Control No.: 24014657

proprietary or other highly confidential business, financial, regulatory, research, marketing, manufacturing or other strategic information that, if shared with Defendants' competitors (including each other) would result in competitive harm, will bear the additional designation "Highly Confidential – Outside Counsel Only."  Material designated by one Defendant as "Highly Confidential – Outside Counsel Only" shall be afforded the same protections afforded to documents designated as "Highly Confidential," and in addition, shall not be made available to the other Defendants' in-house counsel or other current employees, absent written agreement by the Producing Party or by order of the Court after *in camera* review.

4.     **MARKING OF DOCUMENTS.**  The designation of Discovery Material as Confidential Material or Highly Confidential Material for purposes of this Order shall be made in the following manner:

a.  **TIFF Documents.**  In the case of documents or other materials containing Covered Information produced in TIFF format (apart from depositions or other pre-trial testimony), designation shall be made by affixing the legend "Confidential" or "Highly Confidential" to all pages in each document containing any Confidential Material or Highly Confidential Material respectively.

b.  **Native Documents.**  With respect to documents or materials containing Covered Information produced in Native Format, the Designating Party shall include the highest level of confidentiality designation in the filename and/or on a slip sheet placeholder produced along with the native document.

c.  **Designating Depositions.**  With respect to any deposition, confidential

Page 16

Case ID: 220302594
Control No.: 24014657

treatment may be invoked on the record (before the deposition or proceeding is concluded) or within twenty-one (21) days following receipt of the transcript by identifying the specific portions of the testimony as to which protection is sought and the level of protection sought (Confidential or Highly Confidential). If that right is invoked, the deposition transcripts shall be treated as Confidential or Highly Confidential, as appropriate, for 21 days following receipt of the transcript. After the expiration of that period, the transcript shall be treated only as specific portions are actually designated.

d. **Non-Written Materials.** Any non-text Covered Information (e.g., videotape, audio tape, computer disk, etc.) may be designated as such by labeling the outside of such material as "Confidential" or "Highly Confidential." In the event a Receiving Party generates any "hard copy" transcription or printout from any such designated non-written materials, the person who generates such "hard copy" transcription or printout shall take reasonable steps to maintain the confidentiality of such materials and properly identify and stamp each page of such material as "Confidential" or "Highly Confidential" consistent with the original designation by the Producing Party.

5.        **ADVERSE EVENT PROTECTIONS**. To protect against unauthorized disclosure of Confidential Information, and to comply with all applicable state and federal laws and regulations, the producing party will redact from produced documents, materials and other things, the following items: the names, street addresses, Social Security numbers, tax identification numbers, and other personal identifying information of patients and individuals in clinical studies or adverse event reports (unless the above-referenced information relates to named plaintiffs in

Case ID: 220302594
Control No.: 24014657

these Actions, except that Social Security numbers and tax identification numbers of named plaintiffs will be redacted as to any documents produced in accordance with this provision). Moreover, no disclosure of Confidential Information will be required to the extent that it is prohibited by an executed research or clinical trial consent form or applicable state and federal law and regulations. Other general identifying information, however, such as patient or health provider numbers, health provider names, and adverse event reporter names, may not be redacted unless required by state or federal law. Nothing in this paragraph shall require any Party to produce personal identifying information or personal health information in a manner that does not comply with federal or state law. Further, nothing in this agreement prevents either party from moving this court to compel the production of redacted information. Pursuant to 21 C.F.R. §§ 314.430(e) & (f) and 20.63.(f), the names and other information which would identify any patients who were reported as experiencing adverse events that are not redacted shall be treated as Confidential, regardless of whether the document containing such names is designated as Confidential.

6. **DISCLOSURE OF COVERED INFORMATION.** The failure to designate Covered Information does not constitute a waiver of such claim and may be remedied by prompt supplemental written notice upon discovery of the disclosure, with the effect that such Covered Information will be subject to the protections of this Order. The Receiving Party shall exercise good faith efforts to ensure that copies made of Covered Information produced to it, and copies made by others who obtained such Covered Information directly or indirectly from the Receiving Party, include the appropriate confidentiality legend, to the same extent that the Covered Information has been marked with the appropriate confidentiality legend by the Producing Party.

7. **MATERIALS PREPARED BASED UPON COVERED INFORMATION.** Any notes, lists, memoranda, indices, compilations, or other materials prepared

Case ID: 220302594
Control No.: 24014657

or based on an examination of Covered Information, that quote from or paraphrase Covered Information with such specificity that the Covered Information can be identified shall be accorded the same status of confidentiality as the underlying Covered Information from which they are made, and to the extent those materials are disclosed to other Parties or Non-parties, or produced or filed in this matter, shall be designated with the appropriate confidentiality legend, and shall be subject to all of the terms of this Protective Order.

8.      **NOTICE TO NON-PARTIES.**  Any Party issuing a subpoena to a Non-party shall include a reference to this Protective Order with an offer to provide a copy to the Non-party upon request.

9.      **GOOD-FAITH BELIEF.**  For purposes of this Order, the Designating Party bears the burden of establishing the appropriate designation of all such Discovery Material. The designation of any Discovery Material as "Confidential" or "Highly Confidential" pursuant to this Order shall constitute the verification by the Designating Party and its counsel that the material constitutes "Confidential" or "Highly Confidential" as defined above.

If at any time prior to the trial of these Actions, a Designating Party realizes that previously produced Discovery Material should be designated as "Confidential" or "Highly Confidential" the Designating Party may so designate by advising all other Parties in writing and by producing replacement documents or material with the appropriate "Confidential" or "Highly Confidential" designation as described above.  The designated documents or material will thereafter be treated as "Confidential" or "Highly Confidential" pursuant to this Order. Upon receipt of such designation in writing and re-production of the material with the "Confidential" or "Highly Confidential" legend, the Parties and other persons subject to this Order shall take reasonable and appropriate steps to notify any and all recipients of the

Case ID: 220302594
Control No.: 24014657

Discovery Material about the protected status of the newly designated "Confidential" or "Highly Confidential" Discovery Material and to retrieve the newly designated "Confidential" or "Highly Confidential" Discovery Material from any person who is not permitted by this Order to have Confidential Information.

10. **PERSONS AUTHORIZED TO RECEIVE CONFIDENTIAL MATERIAL.** Confidential Material may be disclosed only to the following "Qualified Persons":

    a. the Court, including attorneys, employees, judges, magistrates, secretaries, special masters, stenographic reporters, staff, transcribers and all other personnel necessary to assist the Court in its function, and the jury (and any appellate court or other court (and their personnel) before which the Parties appear in this Action);

    b. mediators or other individuals engaged or consulted in settlement of all or part of this Action;

    c. Court reporters, stenographers, and videographers retained to record testimony taken in this Action and those persons, if any, specifically engaged for the limited purpose of making photocopies of documents or otherwise assisting in e-discovery;

    d. counsel for the Parties other than in-house counsel, and such counsel's employees who have responsibility for the preparation and trial of the Action;

    e. in-house counsel for the Parties, and such in-house counsel's employees who have responsibility for the preparation and trial of the Action;

    f. Parties and employees or former employees of a Party to this Order but only to the extent that the specifically named individual Party's or employee's or

Case ID: 220302594
Control No.: 24014657

former employee's assistance or testimony is necessary to this Action;

g.  litigation support services, including outside copying services, court reporters, stenographers or companies engaged in the business of supporting computerized or electronic litigation discovery or trial preparation, retained by a Party or its counsel, provided that they execute Exhibit A as described in Paragraph 12 of this Order;

h.  any individual expert, consultant, investigator, or expert consulting firm retained by counsel of record in connection with this Action to the extent necessary for the individual expert, consultant, investigator, or expert consulting firm to prepare a written opinion, to prepare to testify, or to assist counsel of record in the prosecution or defense of this Action, provided, however, that: (i) the disclosure shall be made only to an individual expert, or to members, partners, employees or agents of an expert consulting firm as the expert consulting firm shall designate as the persons who will undertake the engagement on behalf of the expert consulting firm (the "Designated Expert Personnel"); (ii) the individual expert or Designated Expert Personnel use the information solely in connection with this Action; (iii) the individual and/or a representative of each expert consulting firm sign the Attestation attached on Exhibit A on behalf of any Designated Expert Personnel associated with that firm; (iv) absent notice and consent of the Designating Party or on application to and order of the Court, excluding any retention for this Action, the individual expert and each of the Designated Expert Personnel is neither a current nor former (within the past three years from the date of this Order) employee of

Case ID: 220302594
Control No.: 24014657

any Party or any entity which directly competes with any of the Defendants as to infant formula; and (v) the terms of Paragraph 17 of this Order are satisfied;

i. Any person (i) who created, authored, received or reviewed such Covered Information; (ii) is or was a custodian of the Covered Information; (iii) is identified on such Covered Information; or (iv) is or was an employee of the Producing Party and is reasonably believed to have knowledge of the matters in the Covered Information (provided that any former employee agrees to be bound by the provisions of the Order by signing a copy of Exhibit A prior to being shown any Covered Information);

j. Any employees of Defendants who are involved with the receipt, review, evaluation, and/or reporting of adverse event reports and other patient-related information to governmental and regulatory agencies to whom Defendants are legally obligated to report such information, and the governmental and regulatory agencies to whom Defendants report such information.

k. witnesses at depositions or who are noticed for depositions to whom disclosure is in good faith reasonably necessary to conduct the Action, with the limitations that (i) witnesses shall not retain a copy of documents containing Confidential or Highly Confidential Information, except witnesses may retain a copy of all exhibits marked at their depositions in connection with review of the transcripts; (ii) pages of transcribed deposition testimony or exhibits to depositions that are designated as Confidential or Highly Confidential Information pursuant to the process set out in this Order must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order; (iii)

Case ID: 220302594
Control No.: 24014657

witnesses noticed for depositions who are shown Confidential or Highly Confidential Information in advance of their deposition must agree to be bound by the provisions of the Order by signing a copy of Exhibit A prior to being shown Confidential or Highly Confidential Information; and (iv) witnesses at depositions must either sign a copy of Exhibit A or, if they refuse, receive an admonition that he or she will be subject to sanctions, including contempt, for violating the terms of the Protective Order.

l.   mock jurors who have agreed to be bound by the provisions of the Order by signing a copy of Exhibit A;

m.  auditors and insurers of the Parties; and

n.   any other person as may be designated by written agreement by the Producing Party or by order of the Court.

11.      **PERSONS AUTHORIZED TO RECEIVE HIGHLY CONFIDENTIAL MATERIAL.** Except as specifically provided for in this or subsequent Court orders, Highly Confidential Material, or their contents may be disclosed, summarized, described, or otherwise communicated or made available in whole or in part only to "Qualified Persons" (defined in Paragraph 10). Highly Confidential Material produced by one Defendant may not be shown to employees of any other infant formula manufacturer (other than those encompassed by Paragraph 10(e)), absent written agreement by the Producing Party or by order of the Court after *in camera* review. Highly Confidential Material that are contracts between a Defendant and one organizational customer (e.g., hospitals, but not to include retailer or consumer purchasers of Defendants' products) may not be shown to a different organizational customer of Defendants, unless the deponent is reasonably believed to have knowledge of the matter in that particular

Case ID: 220302594
Control No.: 24014657

Highly Confidential document, absent written agreement by the Producing Party or by order of the Court after *in camera* review. Further, the Producing Party may seek emergency relief at a deposition if a Highly Confidential Document is presented to a witness and the Producing Party believes in good faith that immediate protection is appropriate.

12. **EXECUTING THE NON-DISCLOSURE AGREEMENT.** Each person as identified in Paragraphs 11(b), (c), (g), (h), (k) and 12(a) to whom Covered Information is disclosed shall execute a non-disclosure agreement in the form annexed hereto as Exhibit A before receiving Covered Information. Copies of the executed Exhibit A shall be retained by counsel disclosing Covered Information to such person. Consistent with Paragraph 17, a non-disclosure agreement executed by a consultant shall not be available to any other Party except on a court order following a showing of exceptional circumstances.

13. **CHALLENGING CONFIDENTIALITY DESIGNATIONS.** A Party objecting in good faith to the designation of any material as Confidential or Highly Confidential shall give written notice including a brief statement of the basis for the objection to the Designating Party after receiving such material. Upon receipt of the written objection, counsel for the Designating Party shall, within ten (10) business days, provide a written response to the objecting Party explaining the basis and supporting authority for the designation. The Parties shall meet and confer in good faith to attempt to resolve the dispute without resort to Court intervention. If the objecting Party and the Designating Party cannot resolve their dispute through such meet and confer discussions, within 15 business days after the Parties have reached an impasse after meet and confer efforts, the Challenging Party shall move the Court for an order modifying or removing such designation. The Designating Party shall have 14 business days to file a response. The challenging party shall have 7 days to file a reply. The Designating Party has the burden of

Case ID: 220302594
Control No.: 24014657

establishing that the document is entitled to protection. Any material so designated shall remain Confidential or Highly Confidential, and shall be subject to all restrictions on its disclosure and use set forth in this Order until one of the following occurs: (1) the Designating Party withdraws such designation in writing; or (2) the Court rules that the challenged material should be re-designated. In either event, the Designating Party shall reproduce copies of the re-designated material with the appropriate confidentiality designations at the Designating Party's expense within ten business days.

14. **SUBPOENA FOR COVERED INFORMATION.** If any Party has obtained Covered Information under the terms of this Order and receives a request to produce such Covered Information by subpoena or other compulsory process commanding the production of such Covered Information, such Party shall promptly notify the Designating Party, including in such notice the date set for the production of such subpoenaed information. Prior to the response date, the Designating Party shall provide written notice of any intent to seek a protective order. Upon receipt of such notice, the Party or person receiving the subpoena shall inform the person seeking the protected discovery material that such information is subject to the foregoing Order. No production or other disclosure of such information pursuant to the subpoena or other process shall occur until the deadline for the Designating Party to respond to written notice of the subpoena.

If the Designating Party informs the Party served with the subpoena that it has filed a motion seeking a protective order from the court where the subpoena or order issued, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" before a determination by that court, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material—and nothing

Case ID: 220302594
Control No.: 24014657

in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

15.   **USE OF DISCOVERY MATERIAL.**  Covered Information shall be used solely for purposes of prosecuting, defending or attempting to resolve this Action, including any appeal (subject to any coordination order that is entered).

16.   **REDACTIONS ALLOWED.**

a.   Any Producing Party may redact from documents (i) matter that the Producing Party claims is privileged information; or (ii) any Protected Data. The Producing Party shall mark each redaction with a legend stating "REDACTED," and specify the basis for the redaction as appropriate, consistent with the privilege logging provisions of the stipulated order regarding the disclosure of privileged information. Where a document consists of more than one page, at least each page on which information has been redacted shall be so marked. If counsel for the Producing Party agrees or if the Court orders that documents initially redacted shall not be subject to redaction or shall receive alternative treatment, and the documents are subsequently produced in unredacted form, then those unredacted documents shall continue to receive the protections and treatment afforded to documents bearing the confidentiality designation assigned to it by the Producing Party.

b.   In addition to the foregoing, the following shall apply to redactions of Protected Data:

i.   Any Party may redact Protected Data that it claims, in good faith, requires protections under the terms of this Order. Protected Data,

Case ID: 220302594
Control No.: 24014657

however, shall not be redacted from documents to the extent it directly relates to or identifies an individual named as a Party in connection with the subject matter of this Action. Protected Data of an individual named as a Party shall otherwise receive the same protections and treatment afforded to other Protected Data under this Protective Order.

    ii.  Protected Data shall be redacted from any public filing not filed under seal.

c.  The right to challenge and process for challenging the designation of redactions shall be the same as the right to challenge and process for challenging the designation of Covered Information as set forth in Paragraph 13.

d.  Nothing herein precludes any Party from seeking the other Parties' consent or an order allowing the Party to redact nonresponsive matter from otherwise responsive documents on a case-by-case basis.

17.    **PRIVILEGED MATERIALS.** With respect to documents designated as privileged and included in a privilege log in another jurisdiction, those documents need not be added to a separate or additional privilege log in this Action. For those documents that have not previously been logged as privileged, any party intending to assert a privilege over such documents shall generate a privilege log compliant with the Pennsylvania Rules of Civil Procedure.

18.    **EXPERT MATERIALS.** As to Plaintiffs and Defendants, a testifying expert's work product and communications between a Party's attorney and testifying expert, including

Case ID: 220302594
Control No.: 24014657

drafts of any reports or disclosures, are protected from discovery except to the extent that the communication (i) relates to compensation for the expert's study or testimony; (ii) identifies facts or data that the Party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identifies assumptions that the Party's attorney provided and that the expert relied on in forming the opinions to be expressed. This paragraph, however, shall not be construed to relieve either Party of the obligation to respond to Pennsylvania Rule of Civil Procedure 4005 interrogatories. It will also not be construed to relieve the expert from producing any data analyses, formulas, or other information relied upon, considered, or generated by the testifying expert in forming his or her opinions. The identity, opinions, and work product of a consultant are discoverable only to the extent specified in under Pennsylvania law.

19. **EXCLUSION OF INDIVIDUALS FROM DEPOSITIONS.** Counsel shall have the right to exclude any person who is not authorized by this Order to receive documents or information designated as Covered Information from any deposition where testimony regarding Covered Information or the use of Covered Information is likely to arise.

20. **SECURITY OF COVERED INFORMATION.** Any person in possession of another Party's Covered Information shall exercise the same care with regard to the storage, custody, or use of Covered Information as they would apply to their own material of the same or comparable sensitivity. Receiving Parties must take reasonable precautions to protect Covered Information from loss, misuse and unauthorized access, disclosure, alteration and destruction, including but not limited to:

  a. Covered Information in electronic format shall be maintained in a secure litigation support site(s) that applies standard industry practices regarding data

Case ID: 220302594
Control No.: 24014657

security, including but not limited to application of access control rights to those persons entitled to access Covered Information under this Order;

b.  To whatever extent the software tracks user access, an audit trail of use and access to litigation support site(s), to the extent the litigation support software tracks user access, shall be maintained while this Action, including any appeals, is pending;

c.  Any Covered Information downloaded from the litigation support site(s) in electronic format shall be stored only on device(s) (e.g. laptop, tablet, smartphone, thumb drive, portable hard drive) that are password protected and/or encrypted with access limited to persons entitled to access Covered Information under this Order. If the user is unable to password protect and/or encrypt the device, then the Covered Information shall be password protected and/or encrypted at the file level.

d.  Covered Information in paper format is to be maintained in a secure location with access limited to persons entitled to access Covered Information under this Order; and

e.  Summaries of Covered Information, including any lists, memorandum, indices or compilations prepared or based on an examination of Covered Information, that quote from or paraphrase Covered Information in a manner that enables it to be identified shall be accorded the same status of confidentiality as the underlying Covered Information.

f.  If the recipient of Covered Information is shipping data in electronic format, the recipient shall encrypt the data prior to shipping and provide the encryption

Case ID: 220302594
Control No.: 24014657

key in separate correspondence. If hard copy documents are shipped, the Receiving Party will ship the documents using secure packaging tape via Federal Express or UPS and retain a tracking number for the materials. If the Receiving Party learns at any time that the Covered Information has been retrieved or viewed by unauthorized parties during shipment, it will immediately notify the Producing Party and take all reasonable measures to retrieve the improperly disclosed materials.

g.   If the Receiving Party discovers a breach of security[1] relating to the Covered Information of a Producing Party, the Receiving Party shall: (1) provide written notice to the Producing Party of the breach within 48 hours of the Receiving Party's discovery of the breach; (2) investigate the effects of the breach, undertake reasonable, industry-standard actions to remediate the effects of the breach, and provide the Producing Party with assurance reasonably satisfactory to the Receiving Party that the breach shall not recur; and (3) provide sufficient information about the breach that the Producing Party can ascertain the size and scope of the breach. The Receiving Party agrees to cooperate with the Producing Party or law enforcement in investigating any such security incident.

21.      **USE IN FILINGS AND COURT PROCEEDINGS.** Any Party seeking to file or attach to a filing or introduce at a court proceeding any documents designated as "Confidential" or "Highly Confidential" shall comply with the Court's procedures for filing under seal.

---

[1] Breach is defined to include, but is not limited to, the confirmed or suspected: (i) disclosure or use of Covered Information by or to an unauthorized person; and/or (ii) the loss, theft or hacking of a device containing Covered Information.

Case ID: 220302594
Control No.: 24014657

22.      **IMPROPER DISCLOSURE OF COVERED INFORMATION.**  Disclosure of Covered Information other than in accordance with the terms of this Order may subject a Party to such sanctions and remedies as the Court may deem appropriate.

23.      **FINAL TERMINATION.**  Upon termination of the Action, including, for example, a voluntary dismissal or an exhaustion of any and all appeals, counsel for each Party shall, upon request of the Producing Party, return all Covered Information, including any copies, excerpts and summaries thereof, or shall destroy the same at the option of the Receiving Party and provide written confirmation of destruction, and shall purge all such information from all machine-readable media on which the Covered Information resides.  Notwithstanding the foregoing, counsel for each Party and the in-house counsel of each Defendant designated under Paragraph 10(e) may retain all pleadings, briefs, memoranda, exhibits to any pleading, discovery responses, deposition transcripts, deposition exhibits, expert reports, motions, trial exhibits, and other documents filed with the Court that refer to or incorporate Covered Information, and will continue to be bound by this Order with respect to all such retained information.  Further, attorney work- product materials that contain Covered Information need not be destroyed, but, if they are not destroyed, the person in possession of the attorney work-product will continue to be bound by this Order with respect to all such retained information.

24.      **PROTECTIVE ORDER REMAINS IN FORCE.**  This Protective Order shall remain in force and effect until modified, superseded, or terminated by consent of the Parties or by order of the Court made upon reasonable written notice.  Unless otherwise ordered or agreed upon by the Parties, this Protective Order shall survive the termination of this Action.  The Court retains jurisdiction even after termination of this Action to enforce this Protective Order and to make such amendments, modifications, deletions and additions to this Protective Order as the

Case ID: 220302594
Control No.: 24014657

Court may from time to time deem appropriate.

25. **MODIFYING THIS ORDER.** Nothing in this Protective Order shall be construed to prohibit the Parties from agreeing to modify any provision of this Order or seeking relief from the Court. Nor shall anything in this Order or any Party's compliance herewith be construed as a waiver of any Party's rights under applicable law.

**APPROVED BY:**

**PLAINTIFFS:**

By: */s/ Timothy A. Burke*
**KLINE & SPECTER**
Thomas Kline
Tobi Millrood
Elizabeth Crawford
Timothy Burke

**KELLER POSTMAN**
Ben Whiting *(Pro Hac Vice)*
Mark Weinstein

**DEFENDANTS:**

**Abbott Laboratories**

By: */s/ Sean P. Fahey*
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Sean P. Fahey
Ronni E. Fuchs

**CAMPBELL CONROY & O'NEIL, P.C.**
Joseph E. O'Neil
Ryan O'Neil

**JONES DAY**
Marques Hillman Richeson *(Pro Hac Vice)*
Jennifer B. Flannery

Case ID: 220302594
Control No.: 24014657

**Mead Johnson & Company, LLC and Mead Johnson Nutrition Company**

     By: */s/ Kenneth A. Murphy*
     **TUCKER LAW GROUP, LLC**
     Kenneth A. Murphy
     Heather R. Olson

     **WELSH & RECKER, P.C.**
     Catherine M. Recker
     Amy B. Carver
     Richard D. Walk, III

**The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine**

     By: */s/ Richard S. Margulies*
     **BURNS WHITE LLC**
     Richard S. Margulies
     James A. Young
     Susan R. Engle

     By: */s/ Gabor Ovari*
     **MARSHALL DENNEHEY WARNER COLEMAN GOGGIN**
     Gabor Ovari
     Kathleen Karmer

**Temple University Health System, Inc. d/b/a/ Temple University Hospital**

     By: */s/ Richard S. Margulies*
     **BURNS WHITE LLC**
     Richard S. Margulies
     James A. Young
     Susan R. Engle

**Albert Einstein Medical Center a/k/a Einstein Medical Center and Albert Einstein Healthcare Network d/b/a Einstein Healthcare Network**

Case ID: 220302594
Control No.: 24014657

By: <u>*/s/ Brooke Scicchitano*</u>
**ECKERT SEAMANS CHERIN &**
**MELLOT**
Donald J. Brooks, Jr.
Brooke Scicchitano

**Thomas Jefferson University Hospitals, Inc.,**
**d/b/a Thomas Jefferson University Hospital**
**and Thomas Jefferson University d/b/a**
**Jefferson Health System**

By: <u>*/s/ Brooke Scicchitano*</u>
**ECKERT SEAMANS CHERIN &**
**MELLOT**
Donald J. Brooks, Jr.
Brooke Scicchitano

**IT IS SO ORDERED:**

**DATED:** _____

J.

Case ID: 220302594
Control No.: 24014657

# EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [ *print or type full name*], of

_____ [*print or type full address*],

have read and understand the Stipulated Protective Order that was issued by the Philadelphia Court

of Common Pleas on _____ [*insert date*] in the Action, as

defined in Paragraph 2(a) of the Protective Order.

I agree to comply with and to be bound by all the terms of this Stipulated Protective Order.

In compliance with this Order, I will not disclose in any manner any information or item that is

subject to this Stipulated Protective Order to any person or entity except in strict compliance with

the provisions of this Order.

I further agree to submit to the jurisdiction of the Philadelphia Court of Common Pleas for the

purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement

proceedings occur after termination of this action.

I declare under penalty of perjury under the laws of the Commonwealth of Pennsylvania

that the foregoing is true and correct. Signed this _____ day of _____

20_____, at _____ [*insert city and

state where sworn and signed*].


Signature:_____

# EXHIBIT A-49

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CIVIL TRIAL DIVISION**

Drayton

v.

Mead Johnson

:
:
:
:
:
:

CASE NO. 220302594

CONTROL NO. 24014657

### ORDER

AND NOW, this 24th day of January, 2024 upon consideration of the

Stipulation filed to the above-captioned Control No., it is hereby **ORDERED** that said

Stipulation is an agreement between the parties as to matters of confidentiality which shall

govern the parties' conduct in this matter. Jurisdiction will be relinquished upon final

disposition of the trial court.

**BY THE COURT:**

CARPENTER, J.

220302594-Drayton Etal Vs Mead Johnson

22030259400095

# EXHIBIT A-50

**TUCKER LAW GROUP, LLC**
Kenneth A. Murphy, Esquire
Heather R. Olson, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA  19103
(215) 875-0609
kmurphy@tlgattorneys.com

**ATTORNEYS FOR MEAD JOHNSON & COMPANY, LLC AND MEAD JOHNSON NUTRITION COMPANY**

*Filed and Attested by the Office of Judicial Records 02 MAR 2022 10:29 am S. GILLIAM*

| | |
|---|---|
| **SHONDERA DRAYTON, on her own behalf and as Parent and Natural Guardian of A.D., a Minor** | : **COURT OF COMMON PLEAS** |
| | : **PHILADELPHIA COUNTY** |
| | : |
| Plaintiffs, | : **MARCH TERM, 2022** |
| v. | : **No. 2594** |
| | : |
| **MEAD JOHNSON & COMPANY, LLC, et al.**, | : |
| | : |
| Defendants. | : |

## WITHDRAWAL OF APPEARANCE

**TO THE PROTHONOTARY:**

Kindly withdraw the appearance of Heather R. Olson, Esquire as counsel for

Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company in

the above-referenced matter.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Dated: February 13, 2024

/s/ Heather R. Olson
Heather R. Olson, Esquire
*Counsel for Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company*

Case ID: 220302594

## <u>CERTIFICATE OF COMPLIANCE</u>

      I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania, Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Dated:  February 13, 2024               /s/ Heather R. Olson_____
                                       Heather R. Olson, Esquire

## <u>CERTIFICATE OF SERVICE</u>

I, Heather R. Olson, Esquire, hereby certify that I caused to be served a true and correct copy of the foregoing document to all counsel of record via the Court's electronic filing system.

/s/ Heather R. Olson
Heather R. Olson, Esquire

Dated: February 13, 2024

# EXHIBIT A-51

|  |  |
|---|---|
| Shondera Drayton, on her own behalf and as Parent and Natural Guardian of A.D., a minor | COURT OF COMMON PLEAS PHILADELPHIA |
| Plaintiffs | CIVIL DIVISION |
| v. | MARCH TERM, 2022 NO. 2594 |
| MEAD JOHNSON & COMPANY, LLC, et al. | |
| Defendants. | |

Filed and Attested by the
Office of Judicial Records
14 MAR 2023 01:30 pm
G. IMPERATO

## ORDER

**AND NOW**, this 20th day of March 2023, upon consideration of the

Preliminary Objections of Defendants The Pennsylvania Hospital of the University of

Pennsylvania Health System d/b/a Pennsylvania Hospital and The Trustees of the University of

Pennsylvania d/b/a Penn Medicine to Plaintiffs' Complaint, and any Response thereto, it is hereby

**ORDERED** that the Preliminary Objections are **SUSTAINED**. It is further **ORDERED** that all

*Plaintiff shall file an Amended Complaint*

claims against Defendants the Pennsylvania Hospital of the University of Pennsylvania Health

System d/b/a Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn

Medicine ~~are hereby~~ ~~DISMISSED~~ ~~with prejudice.~~ *Setting forth the*
*claims and damages of their professional*
*negligence claim with specificity.*

**BY THE COURT:**

_____ J.



22030259400099

Case ID: 220302594
Control No.: 23062108

# EXHIBIT A-52

BURNS WHITE LLC
By:    James A. Young, Esquire
        Richard S. Margulies, Esquire
        Kyle J. Generelli, Esquire
Attorney ID Nos. 00213 / 62306 / 333291
1880 John F. Kennedy Boulevard, 10th Floor
Philadelphia, PA  19103
(215) 587-1600
jayoung@burnswhite.com
rsmargulies@burnswhite.com
kjgenerelli@burnswhite.com

*Attorneys for Defendants*
The Pennsylvania Hospital of the University
of Pennsylvania Health System d/b/a
Pennsylvania Hospital and The Trustees of the
University of Pennsylvania d/b/a Penn
Medicine

Filed and Attested by the
Office of Judicial Records
02 APR 2024 02:11 pm
S. RUTANA

---

| | | |
|---|---|---|
| SHONDERA DRAYTON on her own behalf and as Parent and Natural Guardian of A.D., a Minor Plaintiff, | : : : | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| v. | : : | CIVIL ACTION |
| MEAD JOHNSON & COMPANY, LLC, et al. Defendants. | : : | MARCH TERM 2022 NO. 2594 |

---

## WITHDRAWAL OF APPEARANCE

TO THE PROTHONOTARY:

    Kindly withdraw **only** the appearance of Susan Engle, Esquire as counsel on behalf of Defendants, The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine, in the above-referenced matter.

                                      **BURNS WHITE LLC**
BY:    */s/ Susan R. Engle*
                          Susan R. Engle, Esquire

## ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

    Kindly enter the appearance of Kyle J. Generelli, Esquire as co-counsel on behalf of Defendants, The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine, in the above-captioned matter.

Date: April 2, 2024                   **BURNS WHITE LLC**
                                BY:    */s/ Kyle J. Generelli*
                                        Kyle J. Generelli, Esquire

## **CERTIFICATE OF SERVICE**

I, Kyle J. Generelli, Esquire, hereby certify that a true and correct copy of the foregoing

*Withdrawal of Appearance/Entry of Appearance* was served via the Court's electronic filing on all

counsel of record.


/s/ Kyle J. Generelli
Kyle J. Generelli, Esquire

Date: April 2, 2024

# EXHIBIT A-53

BURNS WHITE LLC
By:   James A. Young, Esquire
       Richard S. Margulies, Esquire
       Douglas A. Brockman, Esquire
       Kyle J. Generelli, Esquire
Attorney ID Nos. 00213/62306/67185/333291
1880 John F. Kennedy Boulevard, 10th Floor
Philadelphia, PA  19103
(215) 587-1600
jayoung@burnswhite.com; rsmargulies@burnswhite.com
dabrockman@burnswhite.com; kjgenerelli@burnswhite.com

*Attorneys for defendant
The Pennsylvania Hospital of
the University of Pennsylvania
Health System d/b/a
Pennsylvania Hospital and The
Trustees of the University of
Pennsylvania d/b/a Penn
Medicine*

| | | |
|---|---|---|
| SHONDERA DRAYTON on her own behalf and as Parent and Natural Guardian of A.D., a Minor<br>Plaintiff, | : | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | MARCH TERM 2022 |
| MEAD JOHNSON & COMPANY, LLC, et al.<br>Defendants. | : | NO. 2594 |
| | : | |

## WITHDRAWAL OF APPEARANCE

TO THE PROTHONOTARY:

     Kindly withdraw **only** the appearance of Kyle J. Generelli, Esquire as counsel on behalf of

Defendants, The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a

Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine,

in the above-referenced matter.

                             **BURNS WHITE LLC**
             BY:   */s/ Kyle J. Generelli*
                  Kyle J. Generelli, Esquire

## ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

     Kindly enter the appearance of Douglas A. Brockman, Esquire as co-counsel on behalf of

Defendants, The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a

Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine,

in the above-captioned matter.

                                        **BURNS WHITE LLC**
Date: <u>April 25, 2024</u>              BY: <u>*/s/ Douglas A. Brockman*</u>
                                        Douglas A. Brockman, Esquire

## **CERTIFICATE OF SERVICE**

I, Kyle J. Generelli, Esquire, hereby certify that a true and correct copy of the foregoing *Withdrawal of Appearance/Entry of Appearance* was served via the Court's electronic filing on all counsel of record.

*/s/ Kyle J. Generelli*
Kyle J. Generelli, Esquire

Date: April 25, 2024

# EXHIBIT A-54

**KLINE & SPECTER, P.C.**
By:

    Thomas R. Klein, Esq.
    Tobias L. Millrood, Esq.
    Elizabeth A. Crawford, Esq.
    Timothy A. Burke, Esq.
    John P. O'Neill, Esq.
Attorney I.D. Nos.: 28895 / 77764 / 313702 /
320927 / 205677
125 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Thomas.kline@klinespecter.com
Tobi.millrood@klinespecter.com
Elizabeth.crawford@klinespecter.com
Timothy.burke@klinespecter.com
Jack.oneill@klinespecter.com



Filed and Attested by the
Office of Judicial Records
18 AUG 2024 10:31 am
S. GILLIAM

| | |
|---|---|
| SHONDERA DRAYTON, on her own behalf and as Parent and Natural Guardian of A.D., a Minor, | **IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY** |
| *Plaintiff,* | **CIVIL TRIAL DIVISION** |
| v. | **MARCH TERM 2022 NO. 02594** |
| MEAD JOHNSON & COMPANY, LLC, MEAD JOHNSON NUTRITION COMPANY, ABBOTT LABORATORIES, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENN MEDICINE, and THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENNSYLVANIA HOSPITAL, | |
| *Defendants.* | |

**NOTICE TO DEFEND**

| NOTICE | ADVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE. | LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL. |
| Lackawanna Bar Association 233 Penn Avenue Scranton, PA 18503 (570) 961-2714 | Colegio de Abogados del Lackawanna 233 Penn Avenue, Scranton, PA 18503 (570) 961-2714 |

**KLINE & SPECTER, P.C.**
By:
    Tobias L. Millrood, Esq.
    Elizabeth A. Crawford, Esq.
    Timothy A. Burke, Esq.
    John P. O'Neill, Esq.
Attorney I.D. Nos.: 77764 / 313702 / 320927 /
205677
125 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Tobi.millrood@klinespecter.com
Elizabeth.crawford@klinespecter.com
Jack.oneill@klinespecter.com

|  |  |
|---|---|
| SHONDERA DRAYTON, on her own behalf and as Parent and Natural Guardian of A.D., a Minor,<br><br>                  *Plaintiff,*<br><br>    v.<br><br>MEAD JOHNSON & COMPANY, LLC, MEAD JOHNSON NUTRITION COMPANY, ABBOTT LABORATORIES, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENN MEDICINE, and PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM d/b/a PENNSYLVANIA HOSPITAL,<br><br>                  *Defendants.* | **IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY**<br><br>**CIVIL TRIAL DIVISION**<br><br>**MARCH TERM 2022**<br>**NO. 02594** |

## FIRST AMENDED COMPLAINT

    Plaintiff brings this Amended Complaint and Demand for Jury Trial (the "Amended Complaint") against Mead Johnson & Company, LLC, Mead Johnson Nutrition Company, and Abbott Laboratories (collectively "the Defendant Manufacturers"), and The Trustees of the University of Pennsylvania d/b/a Penn Medicine and Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital (collectively "Penn Medicine" or

1

"Pennsylvania Hospital"), together "Defendants."    Plaintiff alleges the following upon personal knowledge as to Plaintiff's own acts and experiences and upon information and belief, including investigation conducted by Plaintiff's attorneys, as to all other matters.

## I.    INTRODUCTION

1.    This action arises out of the injuries suffered by a premature infant (the "Injured Infant") who was given the Defendant Manufacturers' cow's milk-based infant feeding products at Pennsylvania Hospital. Pennsylvania Hospital, managed by Penn Medicine, acquired and supplied the Defendant Manufacturers' products to the Injured Infant and negligently failed to warn of their unreasonably dangerous properties in a reasonable manner.    This caused the Injured Infant to develop necrotizing enterocolitis ("NEC"), a life-altering and potentially deadly disease that largely affects premature babies who are given cow's milk-based feeding products.    As a result, the Injured Infant was seriously injured, resulting in long term health effects and accompanying harm to their parent ("the Plaintiff Parent").

2.    Plaintiff brings these causes of action against Defendants to recover for injuries that are the direct and proximate result of the Injured Infant's consumption of the Defendant Manufacturers' unreasonably dangerous cow's milk-based infant feeding products, which were acquired and supplied without adequate warning to the Injured Infant at Pennsylvania Hospital, owned and operated by Penn Medicine.

## II.    PARTIES

3.    Plaintiff Shondera Drayton is a natural adult person and a resident of Pennsylvania. Ms. Drayton is the parent and natural guardian of A.D., a minor.  Ms. Drayton's address is 3636 N. 18th Street, Philadelphia, PA 19140.

4.    Defendant Mead Johnson Nutrition Company is a corporation, incorporated under the laws

of the State of Delaware. Its principal place of business is Illinois. Defendant Mead Johnson & Company, LLC, is a limited liability company, organized under the laws of the State of Delaware. Its citizenship is that of its sole member, Mead Johnson Nutrition Company. Defendants Mead Johnson Nutrition Company and Mead Johnson & Company, LLC, (together, "Mead") are manufacturers of cow's milk-based infant feeding products and market many of these products under the "Enfamil" brand name.

5.     Defendant Abbott Laboratories ("Abbott") is a corporation, incorporated under the laws of the State of Illinois. Its principal place of business is in Illinois. Abbott is a manufacturer of cow's milk-based infant feeding products and markets many of its products under the "Similac" brand name.

6.     Defendant The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital is a non-profit corporation incorporated and registered to do business under the laws of the Commonwealth of Pennsylvania. Its principal place of business is Philadelphia, Pennsylvania. Pennsylvania Hospital is a registered name of The Pennsylvania Hospital of the University of Pennsylvania Health System. The sole member of The Pennsylvania Hospital of the University of Pennsylvania Health System is The Trustees of the University of Pennsylvania.

7.     Defendant The Trustees of the University of Pennsylvania d/b/a Penn Medicine is a non-profit corporation registered to do business in the Commonwealth of Pennsylvania. Its principal place of business is Philadelphia, Pennsylvania. Penn Medicine is a registered name of The Trustees of the University of Pennsylvania.

### III.     JURISDICTION AND VENUE

8.     This Court has jurisdiction in this matter pursuant to 42 Pa. C.S.A. § 931. Defendants

3

Case ID: 220302594

conduct authorized business in the Commonwealth of Pennsylvania. They have sufficient minimum contacts with and purposefully avail themselves of the markets of this Commonwealth. This suit arises out of Defendants' forum-related activities, such that the Court of Common Pleas of Philadelphia County's exercise of jurisdiction would be consistent with traditional notions of fair play and substantial justice.

9. Venue is proper in the Court of Common Pleas of Philadelphia County pursuant to Rules 1006(b), 1006(c)(1), and 2179(a) of the Pennsylvania Rules of Civil Procedure because Defendants are corporations or similar entities that regularly conduct business in Philadelphia County, which is also the county where Plaintiff's causes of action arose, and the county where the occurrences took place out of which Plaintiff's causes of action arose.

10. This action is not subject to the Compulsory Arbitration Program of the Court of Common Pleas of Philadelphia County because the amount in controversy, excluding interest and costs, is in excess of $50,000.

### IV. FACTUAL ALLEGATIONS

#### *A.D.'s NEC Diagnosis*

11. A.D. was born premature at Pennsylvania Hospital in Philadelphia, Pennsylvania on March 25, 2021.

12. At birth, A.D.'s gestational age was approximately 32 weeks and he weighed approximately 1690 grams.

13. Starting on March 29, 2021 through April 12, 2021 A.D. was fed Breast Milk, from both mother and donors, that upon information and belief was fortified with Similac bovine-based human milk fortifier (hereafter "HMF").

14. These feeds occurred despite the fact that Pennsylvania Hospital knew or should have

4

known that cow's milk- based products, including fortifier products, increase the risk of NEC and that exclusive human milk feeds can decrease the risk of NEC.

15.     On or about April 13, 2021 A.D. was discharged from Pennsylvania Hospital, and Plaintiff parent was given the remaining bottles of human breast milk fortified with Similac HMF, sample Similac HMF packets from Defendant Manufacturer Abbott, and instruction from Hospital staff to continue feeding A.D. these products going forward.

16.     Once A.D. arrived at home, he grew increasingly fussy, experienced feeding difficulties, and developed a severely distended abdomen.

17.     Plaintiff then took A.D. to his primary care physician at Kerabots Pediatric Care Center at the Children's Hospital of Philadelphia where. Once at CHOP, Plaintiff was immediately escorted to the Emergency Department due to A.D.'s abdominal distention and increasing irritability.

18.     A.D. was admitted to Children's Hospital of Philadelphia NICU on April 14, 2021 with a diagnosis of Stage I Necrotizing Enterocolitis (NEC). A.D. was treated medically with antibiotics until his discharge from the NICU on April 27, 2021.

19.     Upon information and belief, A.D. developed NEC after ingesting Defendant Manufacturers' products at Defendant Hospital's NICU and after discharge while at home.

20.     As a result of his development of NEC, A.D. suffered injuries, including but not limited to, a diagnosis of NEC, medical treatment of NEC, and developmental delays including neurological developmental delays.

### *Cow's Milk-Based Feeding Products Are Known to Cause NEC*

21.     NEC is a devastating disease that is the most frequent and lethal gastrointestinal disorder affecting preterm infants.   NEC develops when harmful bacteria breach the walls of the intestine, causing portions of the intestine to become inflamed and often to die.   Once NEC develops, the

Case ID: 220302594

condition can progress rapidly from mild feeding intolerance to systemic and fatal sepsis. Up to 30 percent of NEC-diagnosed infants die from the disease.

22.     Preterm and low-birth-weight infants are especially susceptible to NEC because of their underdeveloped digestive systems. Extensive scientific research, including numerous randomized controlled trials, has confirmed that cow's milk-based feeding products cause NEC in preterm and low-birth-weight infants, which in turn may lead to other medical complications, surgeries, long-term health problems, and death.

### *Safer, Nutritionally Superior Alternatives to Cow's Milk-Based Products Exist*

23.     A range of options are available that allow preterm and low-birth-weight infants to be fed exclusively human milk-based nutrition. For example, in addition to the mother's own milk, an established network delivers pasteurized donor breast milk to hospitals nationwide. Moreover, hospitals have access to shelf-stable formula and fortifiers derived from pasteurized breast milk.

24.     A diet based exclusively on breast milk and breast milk fortifiers provides all the nutrition necessary to support premature and low-birth-weight infants without the elevated risk of NEC associated with cow's milk-based products.

25.     The Defendant Manufacturers' products not only pose a threat to infants' health, but also displace the human milk they could otherwise receive. This displacement only increases infants' vulnerability to NEC.

26.     Human milk-based nutrition nourishes infants while creating a significantly lower risk of NEC.

27.     At the time the Injured Infant was fed the Defendant Manufacturers' products, the science clearly demonstrated to Defendants that these products cause NEC and greatly increase the likelihood that a baby will develop NEC, leading to severe injury and often death.

6

Case ID: 220302594

28.     Despite the scientific evidence that the Defendant Manufacturers' cow's milk-based products present a dire threat to the health and development of preterm infants, the Defendant Manufacturers have made no changes to their products or the products' packaging, guidelines, instructions, or warnings.   Instead, they have continued to sell their unreasonably dangerous products.     In addition, they incentivize hospitals that know the risks to use their products by providing them to the hospital for free or at a significant discount, in order that vulnerable infants and their families will become accustomed to using their products before discharge.  And, in fact, the Defendant Manufacturers offer contracts to hospitals—which the hospitals accept—that actually *prevent* the health care providers from offering alternative products—even safer ones— on pain of risking the hospital's advantageous formula pricing strategy.

29.     Despite the scientific evidence that the Defendant Manufacturers' cow's milk-based products present a dire threat to the health and development of preterm infants and Pennsylvania Hospital knew or should have known of that threat, staff of Pennsylvania Hospital fed  Similac and/or Enfamil cow's milk-based products after her birth instead of mother's human milk and/or donor human milk.

30.     Despite the scientific evidence that the Defendant Manufacturers' cow's milk-based products present a dire threat to the health and development of preterm infants and Pennsylvania Hospital knew or should have known of that threat, staff of Pennsylvania Hospital did not properly warn Ms. Wiger of those risks and alternatives to have avoided the cow's milk-based products.

### Ms. Drayton Discovers Her Claim

31.     Because of the Defendants' concealment and misrepresentations, described more fully herein, Ms. Drayton did not know, and had no reason to know or suspect, that A.D.'s NEC could have been caused by the Defendant Manufacturers' products.

7

Case ID: 220302594

*Despite Exercising Diligence, a Reasonable Investigation Did Not Reveal and*
*Would Not Have Revealed a Factual Basis Earlier*
*Because Defendants Hid the Cause of NEC from Ms. Drayton*

32.     Despite exercising reasonable diligence, Ms. Drayton was unable to have made the discovery earlier via a reasonable investigation because the Defendants in this litigation concealed the wrongful cause of A.D.'s injuries.

33.     Amidst the physical and emotional trauma of preterm childbirth, and having her child in the neonatal intensive care unit, shortly after learning of A.D.'s NEC diagnosis, Ms. Drayton undertook an investigation into the cause of the NEC by asking the doctors the cause of her NEC.

34.     The health care providers at Penn Medicine responded only that A.D. had gotten NEC because she was born premature.  Penn Medicine's response did not indicate that her NEC was caused by the Defendant Manufacturers' products.

35.     Not one person at Penn Medicine mentioned that the Defendant Manufacturers' formula products could have caused A.D.'s injuries.  Penn Medicine's response at the time did not give Ms. Drayton any reason to suspect any wrongdoing on the part of the Defendants.

36.     Ms. Drayton is a layperson with no medical background or training that would have given her any reason to doubt the response she received from her Penn Medicine health care providers at the time.

37.     Given that Penn Medicine's health care providers were in charge of the care of her newborn infant, Ms. Drayton had no reason to doubt their word.

38.     Additionally, the risk of necrotizing enterocolitis was not disclosed on the labeling or packaging of *any* of the Defendant Manufacturers' products.

39.     What is more, necrotizing enterocolitis is a disease that can occur in children who are *not* fed the Defendant Manufacturers' products, and the Defendant Manufacturers have worked to

Case ID: 220302594

mislead parents into a false sense of security about the use of those products. Publicly disseminated materials from each Defendant Manufacturer disguise the role their products play in causing the disease—and affirmatively say, even today, that their products are safe and do not cause NEC. In fact, some publicly disseminated materials from the formula manufacturers even suggest that formula may help *reduce* the risk of this terrible and potentially fatal disease.

40.     For example, Abbott's website stays that "[t]he specific cause of NEC is unknown, but it's most often seen in very low birth weight premature babies," and that "about 10% of babies who are born prematurely develop NEC." The website suggests that "new preliminary studies" suggest for the first time that "NEC prevention may . . . be possible" with the use of human milk oligosaccharides to "dramatically curb intestinal inflammation" and reduce the risk of NEC. Abbott states that these human milk oligosaccharides are found in "certain Similac formulas" although they are "not currently available in Similac's premature infant formulas."[1] Likewise, the website for Mead Johnson's products states that necrotizing enterocolitis is "one of the most common and serious intestinal disease[s] among premature babies." And it deflects responsibility from Mead Johnson's products: "Necrotizing enterocolitis happens when tissue in the small or large intestine is injured or inflamed."[2]

41.     Because of the misleading information distributed by the Defendant Manufacturers, as further detailed *infra*, any research conducted by Ms. Drayton immediately after A.D.'s diagnosis, or at any time prior to seeing an advertisement, would not have led a reasonable person to suspect that the Defendant Manufacturers' products could have caused A.D.'s injuries.

---

[1] The Role of HMOs in Reducing NEC, https://www.nutritionnews.abbott/pregnancy-childhood/prenatal-breastfeeding/the-promising-role-of-hmos-in-reducing-risk-of-nec/ (last visited July 28, 2023).

[2] Special Feeding Concerns for Preemies, https://www.enfamil.com/articles/special-feeding-concerns-for-preemies/ (last visited July 29, 2023).

Case ID: 220302594

42.    Ms. Drayton also did not know, and had no reason to know or suspect, that Penn Medicine

breached its duty of care by distributing the Defendant Manufacturers' products to her.  Not only

was Ms. Drayton unaware that the Defendant Manufacturers' products caused A.D.'s injuries, but

the Defendant Manufacturers' distribution agreements with Penn Medicine—which allowed Penn

Medicine to secure sweetheart deals for otherwise expensive premature infant formula in exchange

for product placement and access to the hospital staff—were also not public or knowable to Ms.

Drayton, nor could any reasonable investigation outside of litigation have uncovered the terms of

those agreements.

### *Despite Exercising Reasonable Diligence, the Defendants' Fraudulently Concealed the Risks of NEC from Defendant Manufacturers' Products to Divert, Prevent, and Mislead Plaintiff Regarding the Cause of Her Child's NEC Diagnosis*

43.    In addition to the averments above, the Defendants have acted in concert to fraudulently

convey false and misleading information concerning the risk of NEC, and potentially death, caused

by Defendant Manufacturers' preterm infant formula products.

44.    The Defendants' actions as set forth herein constitute knowing misrepresentation,

omission, suppression, and concealment of material facts, made with the intent that Plaintiff would

rely upon such concealment, suppression, or omission, in connection with the use of Defendants'

preterm infant products.

45.    Plaintiff did not know, and could not learn, the truth concerning the uses, risks and benefits

of Defendant Manufacturers' preterm infant products due to Defendants' deliberate

misrepresentations and concealment, suppression and omission of material facts and important

information regarding the risks of NEC, and potentially death, from the products.

46.    Moreover, Defendant Hospital further participated in the intentional concealment—on

information and belief, it allowed the Defendant Manufacturers' sales representatives into its

Case ID: 220302594

hospital to provide samples and free products that did not warn of their serious dangers, and to provide "education" to its NICU staff that was incomplete as to the true risks of feeding their patients the Defendant Manufacturers' products.

47. Based upon information and belief, during the relevant time period, Pennsylvania Hospital, Penn Medicine, and the Hospital of the University of Pennsylvania stocked formula products from both Abbott and Mead.

48. Additionally, Defendant Hospital failed to inform Ms. Drayton that the Defendant Manufacturers' products caused Plaintiff's NEC, even when she directly asked the cause. As noted above, after learning of Plaintiff's NEC diagnosis, Ms. Drayton was understandably concerned about the degrading health of her newborn infant. As any concerned parent would do, Ms. Drayton asked Plaintiff's health care providers at Defendant Hospital why a premature infant like A.D. was suddenly diagnosed with a terrible disease like necrotizing enterocolitis; that is, she asked Defendant Hospital what caused Plaintiff's injury. But even though Defendant Hospital knew of the increased risk of NEC from formula, it did not disclose that the formula provided to A.D. could increase the risk of NEC to preterm infants, responding only that A.D. had gotten NEC solely because she was born premature. Not one person at the NICU mentioned that the Defendant Manufacturers' formula products could have been the cause of Plaintiff's injuries.

49. Defendant Hospital was aware that the Defendant Manufacturers' products caused NEC in premature infants. Defendant Hospital was also aware that the Defendant Manufacturers did not provide warnings on their products. However, Defendant Hospital did not warn Ms. Drayton of the risks of the products. Instead, and notwithstanding the sweetheart deal Defendant Hospital agreed to in exchange for preterm infant formula at little to no cost, Defendant Hospital repeatedly informed Ms. Drayton that it would do everything it could possibly do to keep her infant safe.

Case ID: 220302594

Though this was clearly not true given the known risks of preterm formula for babies like A.D., it was enough for Ms. Drayton to trust that Defendant Hospital was providing preterm formula in the best interest of her child.

50.    Defendants' affirmative acts of fraud and concealment, as averred herein, diverted, prevented, and/or mislead Plaintiff from discovering the medical cause of her child's NEC diagnosis.

### The Defendant Manufacturers' False and Misleading Marketing Regarding Cow's Milk-Based Infant Products

51.    Abbott and Mead have aggressively marketed their cow's milk-based products as medically endorsed and nutritionally equivalent alternatives to breast milk, including prior to the Injured Infant's birth.

52.    Abbott's and Mead's marketing approach includes targeting the parents of preterm infants while they are still in the hospital with messages that the Defendant Manufacturers' cow's milk formulas and fortifiers are necessary for the growth and development of their vulnerable children. Often these tactics implicitly discourage mothers from breastfeeding, which reduces the mother's supply of breast milk. None of the Defendant Manufacturers' marketing materials, including their promotional websites, reference the science showing how significantly their products increase the risk of NEC.

53.    For example, upon information and belief, Mead creates information booklets for parents of premature infants to help answer some of their questions and concerns about having a premature infant in the NICU that it provides to hospitals for dissemination to parents. While Mead's booklets explain feeding options for premature infants, including formula, they do not mention that Mead's premature formula and fortifier products increase the risk of premature infants developing necrotizing enterocolitis. Instead, the booklets advise parents that sometimes a

12

combination of breast milk and formula may be best and that premature infants will be happy and healthy or nourished and healthy regardless of whether they are receiving breast milk or formula.

54.     Similarly, upon information and belief, Abbott publishes a pediatric nutrition product guide that is available online for anyone, including parents, to access wherein Abbott advises that "human milk alone does not meet all the nutritional needs of preterm infants" and that the formulations of its products, which are based on decades of research and scientific publications, are "specially designed to meet the nutritional requirements of preterm infants and can be fed with confidence to most of the preterm infants in the NICU." Nowhere in its product guide does Abbott reference that its products increase the risk of necrotizing enterocolitis.

55.     Abbott also has a consumer-facing website accessible to anyone online, including parents, that specifically discusses nutrition for premature infants, wherein Abbott tells parents of premature infants that "your baby's nutrient needs are greater than what breast milk alone can provide" and that a "human milk fortifier" may be added to breastmilk to "add[] proteins, vitamins, and minerals to help support a preemie's high nutrition needs for growth and development." Nowhere in its discussion of preterm infant fortifiers or formulas does Abbott state that its products increase the risk of necrotizing enterocolitis or that they pose more of a risk that just providing preterm infants with breast milk only. Nor does Abbott disclose that the "human milk fortifier" is actually a cow's milk based product and not a human milk-based product, which misleads consumers.

56.     Upon information and belief, both Mead and Abbott also provide materials and programs to the hospitals and the physicians and medical staff who are treating premature infants about the manufacturers' preterm products. Upon information and belief, these materials represent that the manufacturers' preterm products are safe and necessary for preterm infants. Mead and Abbott rely

13

Case ID: 220302594

on the physicians and medical staff to not only use their products in the NICU, but to convey these messages to the parents of premature infants in their care.

57.    Undoubtedly aware of the impact of their advertising, the Defendant Manufacturers, along with other formula manufacturers, are willing to spend massive sums to disseminate their message.

58.    Recognizing the abuse and dangers of infant formula marketing, in 1981, the World Health Assembly—the decision-making body of the World Health Organization—developed the International Code of Marketing of Breast-milk Substitutes ("the Code"), which required companies to acknowledge the superiority of breast milk, the negative effect on breastfeeding of introducing partial bottle-feeding, and the difficulty of reversing the decision not to breastfeed. The Code also forbade advertising or other forms of promotion of formula to the general public, as well as providing sample products to mothers or members of their families.

59.    While Abbott and Mead acknowledge the Code on their websites and claim to support the effort to encourage mothers to breastfeed for as long as possible, this is little more than lip service. Instead, the Defendant Manufacturers' aggressive marketing exploits new parents' darkest fears— that the nutrition they are supplying to their child will not provide the best chance of survival— while wholly failing to warn that their products come with a significantly increased risk of NEC.

60.    For example, Abbott's website, on a paged titled "Infant Formula Marketing," states: "We agree with the World Health Organization that breastfeeding provides the best nutrition for babies, and we support its goal to increase breastfeeding. We also recognize that for infants who aren't breastfed—for medical reasons or otherwise—infant formula is the only appropriate, safe alternative to meet babies' nutritional needs." This statement ignores the existence of donor milk, as well as human milk-based formula.

Case ID: 220302594

61.     Abbott markets and sells multiple products specifically targeting preterm and low-birthweight infants, including Liquid Protein Fortifier, Similac NeoSure, Similac Human Milk Fortifiers, Similac Special Care 20, Similac Special Care 24, Similac Special Care 24 High Protein, and Similac Special Care 30. In advertising these products, Abbott emphasizes the products' purported ability to assist underdeveloped babies in reaching their growth targets. For example, on the since-edited webpage regarding Similac NeoSure, Abbott noted: "Your premature baby didn't get her full 9 months in the womb, so her body is working hard to catch up. During her first full year, feed her Similac NeoSure, a nutrient-enriched formula for babies who were born prematurely, and help support her development." Yet, no mention was made of the accompanying significantly increased risk of NEC. At some point, the website was edited to remove this statement. However, upon information and belief, the statement remained on the website until at least December 2020.

62.     Abbott's website also contains product information and a downloadable guide for each of its products specifically targeting preterm and low-birth-weight infants, including Liquid Protein Fortifier, Similac NeoSure, Similac Human Milk Fortifiers, Similac Special Care 20, Similac Special Care 24, Similac Special Care 24 High Protein, and Similac Special Care 30.  None of these pages or guides contain any mention of NEC or that the products specifically increase the risk of NEC.  Indeed, a search of Abbott's website for "necrotizing enterocolitis" returns no hits. Instead, Abbott states that "enteral feeding" – which includes breast milk and donor milk – have been "associated with" things like "[s]pitting up, abdominal distension" or "other signs of intestinal dysfunction."  This statement is entirely misleading, as it improperly indicates that the risk of things like "spitting up" are the same for premature infants using Abbott's products and premature infants receiving breast milk or donor milk, equates formula to non-cow's milk-based

15

Case ID: 220302594

feeding options like breast milk and donor milk, fails to mention NEC, and minimizes the risk of its products.

63.     Mead markets and sells multiple products specifically targeting premature infants, including Enfamil NeuroPro EnfaCare Infant Formula, Enfamil Premature Infant Formula 24 Cal High Protein, Enfamil Premature Infant Formula 30 Cal with Iron, Enfamil Premature Infant Formula 24 Cal with Iron, Enfamil Premature Infant Formula 20 Cal with Iron, Enfamil 24 Cal Infant Formula, and Enfamil Human Milk Fortifier (acidified liquid and powder). In advertising these products, Mead emphasizes the purported similarities between its formula and breast milk, while failing to include any information about the nutritional deficits and dangers that accompany formula use. For example, the since-edited webpage for Enfamil Enfacare stated: "Premature babies fed Enfamil® formulas during the first year have achieved catch-up growth similar to that of full term, breastfed infants" and noted that Enfamil formulas include "expert-recommended levels of DHA and ARA (important fatty acids found naturally in breast milk) to support brain and eye development."

64.     One Enfamil advertisement, introducing a new product line called Enfamil NeuroPro, is entirely focused on favorably comparing Enfamil's formula to breast milk, without any mention of the product's extreme risks. Indeed, the terms "human milk" and "breast milk" are used 13 times in the advertisement, including in such statements as "for decades human milk has inspired the advancements in Enfamil formulas and now through extensive global research, we are taking an even closer look at human milk" and "only Enfamil NeuroPro has a fat blend of MFGM and DHA previously found only in breast milk." The webpage for the product has made similar manipulative claims, stating "Enfamil is backed by decades of breast milk research and multiple clinical studies"

16

Case ID: 220302594

and it claims that "to create our best formulas, we collaborated on some of the most extensive breast milk studies to date[.]"

65.     Mead's website also contains product information for each of its products specifically targeting preterm and low-birth-weight infants, including Enfamil NeuroPro EnfaCare Infant Formula, Enfamil Premature Infant Formula 24 Cal High Protein, Enfamil Premature Infant Formula 30 Cal with Iron, Enfamil Premature Infant Formula 24 Cal with Iron, Enfamil Premature Infant Formula 20 Cal with Iron, Enfamil 24 Cal Infant Formula, and Enfamil Human Milk Fortifier (acidified liquid and powder). None of these pages contain any mention of NEC or that the products specifically increase the risk of NEC.  Indeed, a search of Mead's website for "necrotizing enterocolitis" returns no hits. Instead, Mead advertises on its website that it "has led the way in developing safe, high-quality, innovative products" – including preterm products – "to help meet the nutritional needs of infants."

66.     Formula manufacturers have long used their relationships with hospitals and the discharge process to encourage parents to substitute formula for breast milk.  They offer free or reduced-cost formula to hospitals for use with infants before discharge.  And they offer free formula, coupons, and even entire gift baskets to parents before their infants' discharge from the NICU or hospital.

67.     Here, S.P was discharged from CHOP with the recommendation to continue use of Abbott's Similac Special Care 24 formula.

68.     Through this early targeting, the Defendant Manufacturers create brand loyalty under the guise of a "medical blessing," in hopes that new parents continue to use formula after they leave the hospital, resulting in increased expense for parents, significantly increased risk for babies, and increased profit for the Defendant Manufacturers. The Defendant Manufacturers' giveaways and gift baskets send confusing signals to mothers who are simultaneously being encouraged to

Case ID: 220302594

breastfeed by their healthcare professionals, and they have been shown to negatively impact breastfeeding rates.

69.     Further, when the Defendant Manufacturers recognized a shift in the medical community towards an exclusive breast milk-based diet for premature infants, Abbott developed a product called "Similac Human Milk Fortifier," and Mead developed "Enfamil Human Milk Fortifier." These names are misleading in that they suggest that the products are derived from breast milk, when, in fact, they are cow's milk-based products. The packaging appears as:



70.     The Defendant Manufacturers have designed powerful misleading marketing campaigns to deceive parents into believing that: (1) cow's milk-based products are safe, including for preterm infants; (2) cow's milk-based products are equal, or even superior, substitutes to breast milk; (3) cow's milk-based products are necessary for proper growth and development of preterm infants; and (4) physicians consider the Defendant Manufacturers' cow's milk-based products to be a first choice. This marketing scheme is employed despite all Defendants knowing of and failing to warn of the extreme risk of NEC and death that cow's milk-based products pose to preterm infants like the Injured Infant.

18

Case ID: 220302594

71.     The Defendant Manufacturers have also designed powerful marketing campaigns to both the general public and health care providers at hospitals like Pennsylvania Hospital. The Defendant Manufacturers know that sales made to hospitals are key drivers of brand loyalty, and thus are a key opportunity to drive better downstream business—*i.e.*, retail purchases by parents after they have left the hospital. On information and belief, the Defendant Manufacturers know that the formula products used in a hospital's NICU are related to getting and keeping the overall hospital contracts. And the Defendant Manufacturers know that, just like any celebrity endorsement, when mothers of newborn infants see medical professionals using a certain brand, the mothers are more likely to continue to purchase that same brand after discharge. The Defendant Manufacturers are thus heavily motivated to ensure that NICU departments are using their products.

72.     Abbott and Mead Johnson focus their sales teams and training heavily on hospital NICU departments. They train their sales representatives how to increase the number of babies on their formula, and they emphasize the need to be the dominant formula manufacturer in the NICU so they can own that profitable ground and secure a great return on their substantial investment in NICU formula and other products.

73.     To leverage hospitals' NICUs and secure babies in the hospital and at retail, the Manufacturer Defendants pull out all the stops to convince hospitals, including Defendant Hospital, to purchase their products. For example: Abbott and Mead Johnson provide samples of their products to hospitals for free.

74.     On information and belief, to get the hospitals on board with supplying their formula for premature infants, Abbott and Mead Johnson work with hospitals to secure contracts that have special pricing discounts if a certain level of the formula-fed babies in the hospital receive just that

Case ID: 220302594

one manufacturer's products; similar to a restaurant being a Coke or Pepsi restaurant. And notwithstanding the increased risk of the Defendant Manufacturers' products for the hospitals' most fragile patients—the preterm infants—the decision makers at these hospitals seek out these types of contracts to better the hospitals' own bottom lines.

75. On information and belief, Abbott and Mead Johnson also seek promises and/or assurances that the full range of health care providers at the hospitals, including the nurse practitioners and other staff who would pull the infant formula off the shelf, are grabbing the respective company's own formula products to give to the preterm infants. The goal of this tactic was to ensure that the Defendant Manufacturers and key people at the hospital would be sending a shared message that the preterm infant formula products were safe and without risk, even though that is not what the science said.

76. On information and belief, Abbott and Mead Johnson also seek promises and/or assurances that the full range of health care providers at the hospitals, including the nurse practitioners and other staff who would pull the infant formula off the shelf, are grabbing the respective companies' own formula products to give to the preterm infants. The goal of this tactic was to ensure that the Defendant Manufacturers and key people at the hospital would be sending a shared message that the preterm infant formula products were safe and without risk, even though that is not what the science said.

77. On information and belief, prior to A.D.'s birth, Abbott sent sales representatives to Defendant Hospital. Those sales representatives provided information about Abbott's products to Defendant Hospital's staff via conversations, presentations, and written pamphlets. This information indicated that Abbott's products were safe to give to preterm infants like A.D. Abbott maintains call logs that detail which sales representatives visited the hospitals, which days they

Case ID: 220302594

visited, and which products they discussed. These sales representatives did not disclose that Abbott's products could cause NEC in preterm infants.

78.    On information and belief, prior to A.D.'s birth, Mead Johnson sent sales representatives to Defendant Hospital. Those sales representatives provided information about Mead Johnson's products to Defendant Hospital's staff via conversations, presentations, and written pamphlets. This information indicated that Mead Johnson's products were safe to give to preterm infants like A.D. Mead Johnson maintains call logs that detail which sales representatives visited the hospitals, which days they visited, and which products they discussed. These sales representatives did not disclose that Mead Johnson's products could cause NEC in preterm infants.

79.    Mead Johnson and Abbott believed and intended that the misrepresentations that its sale representatives shared with Defendant Hospital would be used to make feeding decisions for preterm infants like A.D.

### The Defendant Manufacturers' Inadequate Warnings

80.    Although Mead promotes an aggressive marketing campaign designed to convince parents that its cow's milk-based products are safe and necessary for the growth of a premature infant, the product is in fact extremely dangerous for premature infants. Enfamil products significantly increase the chances of a premature infant developing potentially fatal NEC.

81.    The Enfamil products Mead markets specifically for premature infants are commercially available at retail locations and online. No prescription is necessary.

82.    Despite knowing of the risk of NEC, the packaging of Mead's products does not warn of the significantly increased risk of NEC (and resulting medical conditions, and/or death) associated with Mead's products, or of the magnitude of this increased risk. Mead likewise did not provide instructions or guidance for how to avoid NEC.

83.    Mead cites no medical literature or research to guide the use of its products.

Case ID: 220302594

84.     Despite knowing of the risk of NEC, Mead did not warn of the significantly increased risk of NEC (and resulting medical conditions, and/or death) associated with its products, or of the magnitude of this increased risk.  Mead likewise did not provide instructions or guidance for how to avoid NEC.

85.     Mead deceived the public, parents, physicians, other medical professionals, and medical staff into believing that Enfamil products were a safe and necessary alternative, supplement and/or substitute to breast milk.

86.     Mead Johnson failed to provide, and continues to fail to provide, a full accounting of the risk of NEC as documented, by underrepresenting and misrepresenting the risk to the public and the medical community.

87.     Despite knowing that its products were being fed to premature infants, often without the parents' informed consent, Mead failed to require or recommend that medical professionals inform parents of the significant risk of NEC or to require that parental consent be obtained prior to the products being fed to their babies.  Like Mead, Abbott promotes an aggressive marketing campaign designed to make parents believe that its products are safe and necessary for the growth of premature infants, despite the products in fact being extremely dangerous for premature infants. Abbott's products significantly increase the chances of a premature infant getting potentially fatal NEC.

88.     The products Abbott markets specifically for premature infants are available at retail locations and online. No prescription is necessary.

89.     Despite knowing of the risk of NEC, Abbott did not warn of the significantly increased risk of NEC (and resulting medical conditions, and/or death) associated with its products, or of the

Case ID: 220302594

magnitude of this increased risk. Abbott likewise did not provide instructions or guidance for how to avoid NEC.

90.     Abbott deceived the public, parents, physicians, other medical professionals, and medical staff into believing that its products were a safe and necessary alternative, supplement and/or substitute to breast milk.

91.     Despite knowing of studies documenting an increased risk of NEC from its products, Abbott did not act to make parents or the medical community aware of those risks, and instead took steps to conceal or prevent those risks from becoming public.  Despite knowing that its products were being fed to premature infants, often without the parents' informed consent, Abbott failed to require or recommend that medical professionals inform parents of the significant risk of NEC or to require that parental consent be obtained prior to the products being fed to their babies.

### Penn Medicine's Failure to Warn

92.     On information and belief, Penn Medicine, which operates Pennsylvania Hospital, was aware of the significantly increased risk of NEC and death associated with providing Abbott's and Mead's cow's milk-based products to its premature infant patients.  It knew or should have known that feeding these cow's milk-based products can cause NEC in premature infants who otherwise would not have developed this devastating condition. It also knew or should have known that human milk decreases the risk of NEC for premature infants.  However, instead of warning of the dangers, or supplying human milk-based feeding products to preterm infants like the Injured Infant, Penn Medicine has continued to source, distribute, and supply the Defendant Manufacturers' products in its hospitals without any adequate warning. Further, the Defendant Hospital created a study putting infants, such as A.D. at great risk by providing them with bovine based formula instead of exclusive human milk-based products.

Case ID: 220302594

93.     To that end, Penn Medicine has participated in studies designed to increase the use of donor milk while, at the same time, reducing formula feeding in neonates. The University of Pennsylvania School of Nursing, an affiliate of Penn Medicine, has conducted extensive research into the risks associated with feeding formula to premature infants.   It recently partnered with the National Institute of Nursing Research to publish clinical determinations based on its experience "changing hospital systems and influencing policy," and its findings were unequivocal:

> This is what we know about the science of human milk: it reduces the risk of necrotizing enterocolitis, reduces the risk of infection, [and] creates greater enteral feed tolerance and more rapid weaning from intravenous nutrition. . . .

94.     Other Penn Medicine research has similarly concluded that "[h]uman milk decreases the incidence and severity of . . . necrotizing enterocolitis (NEC)."

95.     Given it was known that human milk decreases the incidence and severity of NEC, it was also known or should have been known that cows milk-based formula increases the incidence and severity of NEC.

96.     Penn Medicine also purports to adhere to the tenets of the "Baby Friendly Hospital Initiative," which seeks to increase rates of breastfeeding initiation, exclusivity, and diet duration. The "Baby Friendly Hospital Initiative" specifically targets a reduction in the rates of NEC in preterm infants by encouraging implementation of exclusive breast milk diets among new mothers. Although Pennsylvania Hospital has maintained its "Baby Friendly" designation for years, it has not eliminated or restricted the use of formula or fortifier for preterm infants in its hospitals.

97.     Given it was known since at least the early 2000s, and as far back as the 1990s, that human milk decreases the incidence and severity of NEC, it was also known or should have been known that cows milk-based formula increases the incidence and severity of NEC.

98.     Penn Medicine also purports to adhere to the tenets of the "Baby Friendly Hospital Initiative," which seeks to increase rates of breastfeeding initiation, exclusivity, and diet duration.

24

Case ID: 220302594

The "Baby Friendly Hospital Initiative" specifically targets a reduction in the rates of NEC in preterm infants by encouraging implementation of exclusive breast milk diets among new mothers. Although Pennsylvania Hospital has maintained its "Baby Friendly" designation for years, it has not eliminated or restricted the use of formula or fortifier for preterm infants in its hospitals.

99.     Finally, medical providers and staff at Penn Medicine have acknowledged the risks associated with providing the Defendant Manufacturers' cow's milk-based products to premature infant patients instead of breast milk-based nutrition.   In an internal newsletter from 2012 touting donor milk programs, Penn Medicine acknowledged the benefits of a human milk-based diet, quoting a staff lactation consultant:

> Donor milk is not inexpensive. It costs about $4.25 per ounce, but the return on investment is huge. "Preemies given mother's milk get discharged three to four days sooner and also have a six to 10 times lower risk of getting a gastrointestinal complication called necrotizing enterocolitis," Carpenter said, adding that the infection can cost up to $250,000 to treat. The average cost to provide a preemie with donor milk: $125.

100.   These statements demonstrate that Penn Medicine knew or should have known of the high increased risk of NEC for premature infants posed by the Defendant Manufacturers' products.

101.   Although Penn Medicine knew or should have known of the serious danger of the Defendant Manufacturers' products, it has continued to purchase, supply, and distribute these products to preterm infants without providing full and adequate warnings of the attendant risks to parents, healthcare professionals, and other medical staff at its relevant facilities.   As a result, the Injured Infant was fed the Defendant Manufacturers' cow's milk-based products at Pennsylvania Hospital, causing their injuries.   This occurred even though hospitals across the country, including Pennsylvania Hospital, warn and obtain consent from parents before providing other safer forms of nutrition, such as donor breast milk.

Case ID: 220302594

102. Penn Medicine's failure to warn of the risks posed by the Defendant Manufacturers' products is entrenched (and compounded) by the financial benefits it accrues from its relationships with the Defendant Manufacturers. On information and belief, it has received the Defendant Manufacturers' cow's milk-based products for free and/or at a significant discount, and has granted their sales representatives access to its healthcare professionals and medical staff. These sales representatives have provided deceptive information that Penn Medicine reasonably knew or should have known would ultimately reach parents through those staff. This arrangement dovetails with the Defendant Manufacturers' own marketing strategies" and use of salespersons.

### *Safer Alternative Designs*

103. The Defendant Manufacturers' cow's milk-based products made specifically for premature infants are unreasonably unsafe for those infants. The Defendant Manufacturers could have used pasteurized breast milk instead of cow's milk in their products, which would have produced a safer product.

104. Prolacta Bioscience manufactures and sells breast milk-based feeding products, specifically designed for preterm infants, which contain no cow's milk. This alternative design provides all the necessary nutrition for growth and development that cow's milk-based products provide, without the same unreasonably dangerous and deadly effects.

105. On information and belief, Abbott and Mead were aware of the significantly increased risk of NEC and death associated with their cow's milk-based products, and instead of warning of the dangers, or removing them altogether, Abbott and Mead have continued to use cow's milk as the foundation of their products.

Case ID: 220302594

**CAUSES OF ACTION**
**COUNT I:  STRICT LIABILITY FOR DESIGN DEFECT**
**(Against Abbott and Mead)**

106.  Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

107.  Abbott and Mead, as the manufacturers and/or sellers of the products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to manufacture, sell, and distribute their products in a manner that was not unreasonably dangerous.

108.  Abbott and Mead also owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to manufacture, sell, and distribute their products in a manner that was merchantable and reasonably suited for their intended use.

109.  Abbott and Mead knew that their products would be used to feed premature infants like the Injured Infant and knew (or reasonably should have known) that use of their cow's milk-based products significantly increased the risk of NEC, serious injury, and death, and that such use was therefore unreasonably dangerous to premature infants, not reasonably suited for the use intended, not merchantable, and had risks that exceeded a reasonable buyer's expectations.   Nonetheless, they continued to sell and market their defective products as appropriate for premature infants.

110.  The Injured Infant ingested Abbott and/or Mead's unreasonably dangerous cow's milk-based products.  The risks of feeding those products to the Injured Infant outweighed the benefits. An ordinary consumer would not expect those products to carry a significant risk of serious injury and death from NEC.

111.  Abbott and Mead knew (or reasonably should have known) that breast milk-based nutrition did not carry the same risks of NEC, serious injury, and death that their products do.

112.  Abbott's and Mead's products contained cow's milk at the time they left the manufacturing

27

Case ID: 220302594

facility.

113.   Abbott and Mead did not develop a human-milk based product that was safer for premature infants and did not reformulate their products to reduce the risk of NEC, serious injury, and death, even though doing so was economically and technologically feasible and even though pasteurized breast milk was an available alternative.

114.   Abbott's and/or Mead's products were fed to the Injured Infant, which caused and/or increased the risk of their NEC and injuries.

115.   As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms.  Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers, individually, jointly and severally, as follows:

   a.   For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

   b.   For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

   c.   For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

   d.   For punitive damages in excess of $50,000 and this Court's arbitrational

Case ID: 220302594

limit resulting from the Defendant Manufacturers' oppressive, fraudulent, and/or malicious conduct, as permitted by law;

e.    For interest as permitted by law;

f.    For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g.    For such other and further relief as the Court deems proper.

## COUNT II: STRICT LIABILITY FOR FAILURE TO WARN
### (Against Abbott and Mead)

116. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

117. Abbott and Mead, as the manufacturers and/or sellers of the infant products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to provide adequate warnings or instructions about the dangers and risks associated with the use of their products with preterm infants, specifically including but not limited to the risk of NEC, serious injury, and death.

118. Abbott's and Mead's duty to warn is part of their general duty to design, manufacture, and sell their infant products in a manner that is reasonably safe for their foreseeable uses. By designing their products with cow's milk-based ingredients, Abbott and Mead undertook a duty to warn of the unreasonable risk of harm posed by those ingredients, specifically including the significantly increased risk of NEC, severe injury, and death. The failure to warn makes the products at issue in this litigation unreasonably dangerous.

119. Specifically, Abbott and Mead breached their duty to warn of the foreseeable risks of the infant products at issue in this litigation because they knew or should have known that their cow's milk-based premature infant products would be fed to premature infants like the Injured

Case ID: 220302594

Infant, and that their products might cause the Injured Infant to develop NEC, severe injury, or death, yet they failed to provide adequate warnings of those risks. Among other risks, the Defendant Manufacturers:

    a. Failed to warn that cow's milk-based products significantly increase the risk of NEC, severe injury, and death for the Injured Infant; and/or

    b. Failed to warn that cow's milk-based products are unsafe and/or contraindicated for premature infants like the Injured Infant; and/or

    c. Inserted warnings and instructions on their products that are severely inadequate, vague, confusing, and provide a false sense of security in that they warn and instruct specifically on certain conditions, but do not warn of the significantly increased risk of NEC and death; and/or

    d. "Black box"-type warning that their cow's milk-based products are known to significantly increase the risk of NEC and death when compared to breast milk in premature infant; and/or

    e. Failed to disclose well-researched and well-established studies that linked cow's milk-based products to NEC and death in premature infants; and/or

    f. Failed to insert a warning or instruction to healthcare professionals and other medical staff in the hospital that parents should be provided information necessary to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risks; and/or

    g. Failed to provide a warning in a method reasonably calculated or expected to reach the parents of newborns, like the Plaintiff Parent; and/or

    h. Failed to provide statistical evidence showing the magnitude of increased risk of

Case ID: 220302594

NEC in premature infants associated with cow's milk-based products.

120. Abbott's and Mead's products contained cow's milk at the time they left the manufacturing facility.

121. As a direct and proximate result of the inadequacy of the warnings and the pervasive marketing campaigns suggesting the safety and necessity of the Defendant Manufacturers' products, the Injured Infant were fed cow's milk-based products, which caused and/or increased risk of their developing NEC.

122. The unwarned-of risks are not of a kind that an ordinary consumer would expect. Had physicians and medical staff known of the extreme risk associated with feeding premature infants cow's milk-based formula, they would not have fed the Injured Infant those products. Had the Plaintiff Parent known of the significant risks of feeding the Injured Infant cow's milk-based formula, they would not have allowed such products to be fed to the Injured Infant.

123. As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms. Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers, individually, jointly and severally, as follows:

        a. For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

        b. For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

        c. For past, present, and future out-of-pocket costs, lost income and/or lost revenue,

Case ID: 220302594

and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

d. For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from the Defendants Manufacturers' oppressive, fraudulent, and/or malicious conduct, as permitted by law;

e. For interest as permitted by law;

f. For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g. For such other and further relief as the Court deems proper.

## COUNT III: NEGLIGENCE
### (Against Abbott and Mead)

124. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

125. Abbott and Mead, as the manufacturers and/or sellers of the products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to exercise reasonable care to design, test, manufacture, inspect, and distribute a product free of unreasonable risk of harm to users, when such products are used in their intended manner and for their intended purpose.

126. At all times relevant to this action, the Injured Infant's healthcare professionals and medical staff used the products at issue in their intended manner and for their intended purpose.

127. Abbott and Mead, directly or indirectly, negligently, and/or defectively made, created, manufactured, designed, assembled, tested, marketed, sold, and/or distributed the cow's milk-based infant products at issue in this litigation and thereby breached their duty to the general public and the Plaintiff Parent.

32

Case ID: 220302594

128.   Specifically, although Abbott and Mead knew or reasonably should have known at the time of production that their cow's milk-based infant products significantly increased the risk of NEC, serious injury, and death, they failed to act in a reasonably prudent manner and breached their duty by:

      a.   Failing to warn that cow's milk-based products significantly increase the risk of NEC, severe injury, and death for the Injured Infant; and/or

      b.   Failing to warn that cow's milk-based products are unsafe and/or contraindicated for premature infants like the Injured Infant; and/or

      c.   Inserting warnings and instructions that are severely inadequate, vague, confusing, and provide a false sense of security in that they warn and instruct specifically on certain conditions, but do not warn of the significantly increased risk of NEC and death; and/or

      d.   Failing to insert a large and prominent "black box"-type warning that their cow's milk-based products are known to significantly increase the risk of NEC and death when compared to breast milk in premature infants; and/or

      e.   Failing to provide well-researched and well-established studies that linked cow's milk-based products to NEC and death in premature infants; and/or

      f.   Failing to insert a warning or instruction to healthcare professionals and other medical staff in the hospital that parents should be provided information necessary to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risks; and/or

      g.   Failing to provide a warning in a method reasonably calculated/expected to reach the parents of newborns, like the Plaintiff Parent; and/or

Case ID: 220302594

h. Failing to provide statistical evidence showing the magnitude of increased risk of NEC in premature infants associated with cow's milk-based products.

129. In addition, although Abbott and Mead knew or reasonably should have known at the time of production that their cow's milk-based products significantly increased the risk of NEC, serious injury, and death, they failed to act in a reasonably prudent manner and breached their duty by failing to perform the necessary process of data collection, detection, assessment, monitoring, prevention, and reporting or disclosure of adverse outcomes in infants who ingest their products.

130. As a direct and proximate result of the Defendant Manufacturers' failure to act in a reasonably prudent manner and their breach of duty, the Injured Infant was fed cow's milk-based products, which caused and/or increased the risk of their developing NEC.

131. Had Abbott and Mead satisfied their duties to the consuming public in general, the Injured Infant would not have been exposed to their unreasonably dangerous cow's milk-based products.

132. As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms. Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers, individually, jointly and severally, as follows:

a. For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

b. For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

c. For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs

34

Case ID: 220302594

related to medical or mental health treatment which have or may be recommended;

d. For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from the Defendants Manufacturers' oppressive, fraudulent, and/or malicious conduct, as permitted by law;

e. For interest as permitted by law;

f. For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g. For such other and further relief as the Court deems proper.

## COUNT IV: INTENTIONAL MISREPRESENTATION
### (Against Abbott and Mead)

133. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

134. At all times relevant to this action, the Injured Infant consumed the Defendant Manufacturers' products in their intended manner and for their intended purpose.

135. Abbott and Mead, as the manufacturers and/or sellers of the infant products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to provide truthful, accurate, fulsome information about the risks and benefits of using their products when used in the intended manner and for the intended purpose.

136. Abbott and Mead breached their duty through misrepresentations made to consumers in their advertising and promotional materials, as described in previous paragraphs and incorporated herein, each of whom were foreseeable and intended recipients of this information.

137. Specifically, upon information and belief, Abbott and Mead made the following false statements of material fact on an ongoing and repeated basis to the public, including patient consumers and parents like Plaintiff Parent and prior to the time the Injured Infant was fed their

Case ID: 220302594

products:

    a.  That their cow's milk-based products were safe and beneficial for premature infants when they knew or should have known that their products were unreasonably dangerous and cause NEC, serious injury, and death in premature infants; and/or

    b.  That their cow's milk-based products were necessary to the growth and nutrition of premature infants, when they knew or should have known that their products were not necessary to achieve adequate growth; and/or

    c.  That their products have no serious side effects, when they knew or should have known the contrary to be true; and/or

    d.  That cow's milk-based products were safe for premature infants; and/or

    e.  That cow's milk-based products were necessary for optimum growth; and/or

    f.  That cow's milk-based products were similar or equivalent to breast milk; and/or

    g.  That their products were safe and more like breast milk than other infant products and that they had removed the harmful ingredients of cow's milk when, in fact, the cow's milk in their products was still capable of causing NEC, serious injury, and death; and/or

    h.  That their products were safe for and provided better nutrition and growth to premature infants than donor milk, a non-cow's milk-based alternative to breast milk; and/or

    i.  That their products can fed with confidence to most of the preterm infants in the NICU and/or that premature infants would be happy and health or nourished and health on their products; and/or

    j.  That their products were based on up-to-date science, which made them safe for

Case ID: 220302594

premature infants; and/or

k.  Omitting the material fact that their products significantly increased the risk of NEC in premature infants, including omitting this material fact from their publicly available product information, marketing materials, and websites.

138. Abbott and Mead had actual knowledge, or, at a minimum, a reckless indifference, to whether the aforementioned misrepresentations were false.

139. In addition to the above, Abbott and Mead, upon information and belief, also made the following false statements of material fact to Plaintiff Parent:

a.  Omitting from coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent that their products significantly increased the risk of NEC in premature infants; and/or

b.  Omitting from the packaging and labeling of their products provided to Injured Infant that their products significantly increased the risk of NEC in premature infants; and/or

c.  Representing that their cow's milk-based products were safe and beneficial for premature infants on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent when they knew or should have known that their products were unreasonably dangerous and cause NEC, serious injury, and death in premature infants; and/or

d.  Representing that their cow's milk-based products were safe and beneficial for premature infants on the packaging and labeling of their products provided to Injured Infant when they knew or should have known that their products were

Case ID: 220302594

unreasonably dangerous and cause NEC, serious injury, and death in premature infants; and/or

e.  Representing that their cow's milk-based products were necessary to the growth and nutrition of premature infants on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent when they knew or should have known that their products were not necessary to achieve adequate growth; and/or

f.  Representing that their cow's milk-based products were necessary to the growth and nutrition of premature infants on the packaging and labeling of their products provided to Injured Infant when they knew or should have known that their products were not necessary to achieve adequate growth; and/or

g.  Representing that their cow's milk-based products were similar or equivalent to breast milk on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

h.  Representing that their cow's milk-based products were similar or equivalent to breast milk on the packaging and labeling of their products provided to Injured Infant; and/or

i.  Representing that their cow's milk-based products could be fed with confidence to premature infants and/or that premature infants would be healthy regardless of whether they were fed their cow's milk-based products or breast milk on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

Case ID: 220302594

j.  Representing that their cow's milk-based products could be fed with confidence to premature infants and/or that premature infants would be healthy regardless of whether they were fed their cow's milk-based products or breast milk on the packaging and labeling of their products provided to Injured Infant; and/or

k.  Representing that their cow's milk-based products have no serious side effects on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent when they knew or should have known the contrary to be true; and/or

l.  Representing that their cow's milk-based products have no serious side effects on the packaging and labeling of their products provided to Injured Infant when they knew or should have known the contrary to be true; and/or

m.  Representing that their cow's milk-based products were similar or equivalent to breast milk on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent when they knew or should have known the contrary to be true; and/or

n.  Representing that their cow's milk-based products were similar or equivalent to breast milk on the packaging and labeling of their products provided to Injured Infant when they knew or should have known the contrary to be true; and/or

o.  Representing that their cow's milk-based products were safe for premature infants on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

p.  Representing that their cow's milk-based products were safe for premature infants on the packaging and labeling of their products provided to Injured Infant; and/or

Case ID: 220302594

q. Representing that their cow's milk-based products were necessary for optimum growth on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

r. Representing that their cow's milk-based products were necessary for optimum growth on the packaging and labeling of their products provided to Injured Infant; and/or

s. Representing that their products were based on up-to-date science, which made them safe for premature infants on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

t. Representing that their products were based on up-to-date science, which made them safe for premature infants on the packaging and labeling of their products provided to Injured Infant.

140. The Plaintiff Parent was not aware that these misrepresentations were false and justifiably relied on them. The Defendant Manufacturers' misrepresentations induced the Plaintiff Parent to allow their children to be fed Abbott's and Mead's infant products, in reliance on all the messaging they received about formula feeding, including, directly or indirectly, the Defendant Manufacturers' messaging. Had Abbott and Mead not committed these intentional misrepresentations, the Injured Infant would not have been exposed to the Defendant Manufacturers' unreasonably dangerous cow's milk-based products.

141. As a direct and proximate result, Abbott's and Mead's products were fed to the Injured Infant, which caused and/or increased risk of their developing NEC and subsequent injuries.

142. As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss

Case ID: 220302594

of income, and/or other harms.   Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers, individually, jointly and severally, as follows:

    a.  For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

    b.  For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

    c.  For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

    d.  For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from the Defendant Manufacturers' oppressive, fraudulent, and/or malicious conduct, as permitted by law;

    e.  For interest as permitted by law;

    f.  For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

    g.  For such other and further relief as the Court deems proper.

### COUNT V:  NEGLIGENT MISREPRESENTATIONS
### (Against Abbott and Mead)

143.  Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

144.  At all times relevant to this action, the Injured Infant consumed the products at issue in

41

their intended manner and for their intended purpose.

145.  Abbott and Mead, as the manufacturers and/or sellers of the products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to provide truthful, accurate, and complete information about the risks and benefits of using their products when used in the intended manner and for the intended purpose.

146.  In the course of their business, Abbott and Mead breached their duty through misrepresentations made to consumers, in their advertising and promotional materials, as described in previous paragraphs and incorporated herein, each of whom were foreseeable recipients of this information.

147.  Specifically, upon information and belief, Abbott and Mead made the following false statements of material fact on an ongoing and repeated basis to the public, including consumers, and parents like Plaintiff Parent and prior to the time the Injured Infant was fed their products:

> a.  That their cow's milk-based products were safe and beneficial for premature infants when they knew or should have known that their products were unreasonably dangerous and cause NEC, serious injury, and death in premature infants; and/or
>
> b.  That their cow's milk-based products were necessary to the growth and nutrition of premature infants, when they knew or should have known that their products were not necessary to achieve adequate growth; and/or
>
> c.  That their products have no serious side effects, when they knew or should have known the contrary to be true; and/or
>
> d.  That cow's milk-based products were safe for premature infants; and/or
>
> e.  That cow's milk-based products were necessary for optimum growth; and/or
>
> f.  That cow's milk-based products were similar or equivalent to breast milk; and/or

Case ID: 220302594

g. That their products were safe and more like breast milk than other infant products and that they had removed the harmful ingredients of cow's milk when, in fact, the cow's milk in their products was still capable of causing NEC, serious injury, and death; and/or

h. That their products were safe for and provided better nutrition and growth to premature infants that donor milk, a non-cow's milk-based alternative to breast milk; and/or

i. Thet their products can be fed with confidence to most of the preterm infants in the NICU and/or that premature infants would be happy and healthy or nourished and health on their products; and/or

j. That their products were based on up-to-date science, which made them safe for premature infants; and/or

k. Omitting the material fact that their products significantly increased the risk of NEC in premature infants, including omitting this material fact from their publicly available product information, marketing materials, and websites.

148. In addition to the above, Abbott and Mead, upon information and belief, also made the following false statements of material fact to Plaintiff Parent.

a. Omitting from coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent that their products significantly increased the risk of NEC in premature infants; and/or

b. Omitting from the packaging and labeling of their products provided to Injured Infant that their products significantly increased the risk of NEC in premature infants; and/or

Case ID: 220302594

c.  Representing that their cow's milk-based products were safe and beneficial for premature infants on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent when they knew or should have known that their products were unreasonably dangerous and cause NEC, serious injury, and death in premature infants; and/or

d.  Representing that their cow's milk-based products were safe and beneficial for premature infants on the packaging and labeling of their products provided to Injured Infant when they knew or should have known that their products were unreasonably dangerous and cause NEC, serious injury, and death in premature infants; and/or

e.  Representing that their cow's milk-based products were necessary to the growth and nutrition of premature infants on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent when they knew or should have known that their products were not necessary to achieve adequate growth; and/or

f.  Representing that their cow's milk-based products were necessary to the growth and nutrition of premature infants on the packaging and labeling of their products provided to Injured Infant when they knew or should have known that their products were not necessary to achieve adequate growth; and/or

g.  Representing that their cow's milk-based products were similar or equivalent to breast milk on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

Case ID: 220302594

h.  Representing that their cow's milk-based products were similar or equivalent to breast milk on the packaging and labeling of their products provided to Injured Infant; and/or

i.  Representing that their cow's milk-based products could be fed with confidence to premature infants and/or that premature infants would be healthy regardless of whether they were fed their cow's milk-based products or breast milk on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

j.  Representing that their cow's milk-based products could be fed with confidence to premature infants and/or that premature infants would be healthy regardless of whether they were fed their cow's milk-based products or breast milk on the packaging and labeling of their products provided to Injured Infant; and/or

k.  Representing that their cow's milk-based products have no serious side effects on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent when they knew or should have known the contrary to be true; and/or

l.  Representing that their cow's milk-based products have no serious side effects on the packaging and labeling of their products provided to Injured Infant when they knew or should have known the contrary to be true; and/or

m.  Representing that their cow's milk-based products were similar or equivalent to breast milk on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent when they knew or should have known the contrary to be true; and/or

Case ID: 220302594

n.  Representing that their cow's milk-based products were similar or equivalent to breast milk on the packaging and labeling of their products provided to Injured Infant when they knew or should have known the contrary to be true; and/or

o.  Representing that their cow's milk-based products were safe for premature infants on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

p.  Representing that their cow's milk-based products were safe for premature infants on the packaging and labeling of their products provided to Injured Infant; and/or

q.  Representing that their cow's milk-based products were necessary for optimum growth on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

r.  Representing that their cow's milk-based products were necessary for optimum growth on the packaging and labeling of their products provided to Injured Infant; and/or

s.  Representing that their products were based on up-to-date science, which made them safe for premature infants on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

t.  Representing that their products were based on up-to-date science, which made them safe for premature infants on the packaging and labeling of their products provided to Injured Infant.

149.  Abbott and Mead were negligent or careless in not determining those representations to be false.

46

Case ID: 220302594

150. The Defendant Manufacturers' misrepresentations induced, and were intended to induce, the Plaintiff Parent to allow their child to be fed Abbott's and Mead's infant products, in justifiable reliance on all the messaging they received about formula feeding, including, directly or indirectly, the Defendant Manufacturers' messaging. Had Abbott and Mead not committed these negligent misrepresentations, the Injured Infant would not have been exposed to their unreasonably dangerous cow's milk-based products.

151. As a direct and proximate result, Abbott's and Mead's products were fed to the Injured Infant, which caused and/or increased of their developing NEC and subsequent injuries.

152. As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms. Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers, individually, jointly and severally, as follows:

a. For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

b. For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

c. For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

d. For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from the Defendant Manufacturers' oppressive, fraudulent, and/or

Case ID: 220302594

malicious conduct, as permitted by law;

e. For interest as permitted by law;

f. For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g. For such other and further relief as the Court deems proper.

## COUNT VI: FAILURE TO WARN
### (Against Penn Medicine and Pennsylvania Hospital)

153. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

154. Penn Medicine and Pennsylvania Hospital as purchaser, supplier, and/or distributor of the products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to purchase, supply, and distribute products that were free of unreasonable risk of harm when used in their intended manner and for their intended purpose, and/or to formulate, adopt, and enforce adequate rules and policies for the same.

155. At all times relevant to this action, the Injured Infant used the cow's milk-based products purchased, supplied, and/or distributed by Penn Medicine and Pennsylvania Hospital in their intended manner and for their intended purpose.

156. Penn Medicine and Pennsylvania Hospital employed or contracted with the healthcare professionals and medical staff at Pennsylvania Hospital, managing these individuals during their treatment of the Injured Infant.

157. Penn Medicine and Pennsylvania Hospital negligently, outrageously, and recklessly supplied and distributed the Defendant Manufacturers' milk-based infant feeding products to these healthcare professionals and medical staff for use on premature infants, including the Injured Infant.

Case ID: 220302594

158. Moreover, at all relevant times, Penn Medicine and Pennsylvania Hospital knowingly authorized the Defendant Manufacturers' sales representatives to market, advertise, distribute, and/or sell their products at Pennsylvania Hospital. The Defendant Manufacturers' sales representatives were encouraged to interact with Pennsylvania Hospital's healthcare professionals and medical staff. These interactions provided the Defendant Manufacturers' sales representatives an opportunity to co-opt Pennsylvania Hospital's healthcare professionals and medical staff into assisting with the marketing, distribution, and/or sale of the Defendant Manufacturers' unreasonably dangerous products to consumers, such as the Plaintiff Parent.

159. Penn Medicine and Pennsylvania also knowingly, and intentionally, allowed the Defendant Manufacturers' sales representatives to routinely misrepresent the risks and benefits of Defendants' products to Pennsylvania Hospital's healthcare professionals and medical staff, including the misrepresentation that premature babies would not grow adequately with human milk and human milk products and that use of donor milk was not advised for premature infants.

160. Penn Medicine and Pennsylvania Hospital knew or reasonably should have known at the time that they acquired, distributed, and supplied the Defendant Manufacturers' cow's milk-based infant products that these products significantly increased the risk of NEC, serious injury, and death.

161. Nonetheless, Penn Medicine and Pennsylvania Hospital acted negligently, outrageously, and recklessly, and breached its duty by:

        a. Failing to warn that cow's milk-based products significantly increase the risk of NEC, severe injury, and death in those babies; and/or

        b. Failing to warn that cow's milk-based products are unsafe and/or contraindicated for premature infants like the Injured Infant; and/or

Case ID: 220302594

c.  Failing to warn or instruct its healthcare professionals and medical staff on the information that should be provided to parents in order to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risk; and/or

d.  Failing to provide its healthcare professionals and medical staff with the well-researched and well-established studies that link cow's milk-based products to NEC and death in premature infants; and/or

e.  Failing to provide a warning in a method reasonably calculated/expected to reach the parents of newborns; and/or

f.  Failing to provide statistical evidence showing the magnitude of increased risk of NEC in premature infants associated with cow's milk-based products; and/or

g.  Failing to prevent the Defendant Manufacturers' sales representatives from misrepresenting to Pennsylvania Hospital's healthcare professionals and medical staff that premature babies would not grow adequately with human milk and human milk products and that use of donor milk was not advised for premature infants.

162.  Reasonable hospitals under the same or similar circumstances would have warned of the above risks, would have instructed their healthcare professionals and medical staff—as well as patients—on the safe use of the Defendant Manufacturers' products, and would have restricted the ability of the Defendant Manufacturers' sales representatives to market the Defendant Manufacturers' unreasonably dangerous products without adequate warning.

163.  Penn Medicine and Pennsylvania Hospital knew or reasonably should have known that its medical professionals and the parents of premature infants, including the Plaintiff Parent, would not have realized the risks associated with feeding cow's milk-based formula to premature infants.

Case ID: 220302594

164. Had Penn Medicine and Pennsylvania Hospital exercised reasonable care by satisfying its duty to warn its medical providers and patients about the Defendant Manufacturers' unreasonably dangerous products, the Injured Infant would not have been exposed to the Defendant Manufacturers' cow's milk-based products.

165. As a direct and proximate result of Penn Medicine and Pennsylvania Hospital's failure to warn of the danger posed by the Defendant Manufacturers' unreasonably dangerous cow's milk-based products, the Injured Infant was fed the Defendant Manufacturers' cow's milk-based products, which caused and/or increased the risk of developing NEC and significant injuries.

166. As a further direct and proximate result of Penn Medicine and Pennsylvania Hospital's failure to warn of the Defendant Manufacturers' unreasonably dangerous products, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms. Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against Penn Medicine and Pennsylvania Hospital, individually, jointly and severally, as follows:

a. For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

b. For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of Penn Medicine's conduct;

c. For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

d. For punitive damages in excess of $50,000 and this Court's arbitrational limit

resulting from Penn Medicine and Pennsylvania Hospital's oppressive, outrageous, reckless, and/or malicious conduct, as permitted by law;

e. For interest as permitted by law;

f. For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g. For such other and further relief as the Court deems proper.

### COUNT VII:  CORPORATE LIABILITY OF HEALTH-CARE PROVIDER
### (Against Penn Medicine and Pennsylvania Hospital)

167.  Plaintiff incorporates by references each of the preceding paragraphs as if fully set forth herein.

168.  At all relevant times, Penn Medicine and Pennsylvania Hospital owed a duty of care to the Injured Infant to ensure their safety and well-being while the Injured Infant was under the care of Pennsylvania Hospital staff.   Specifically, Penn Medicine and Pennsylvania Hospital had a duty to the Injured Infant to formulate, adopt, and enforce adequate rules and policies to ensure quality care for the Injured Infant.   Further, Penn Medicine and Pennsylvania Hospital owed a duty to the Injured Infant to oversee its healthcare professionals and medical staff that provided patient care to the Injured Infant.

169.  Penn Medicine and Pennsylvania Hospital owed a duty to its patients, and the Injured Infant in particular, to formulate, adopt, and enforce adequate rules and policies for the purchase, supply, distribution, and use of products that were free of unreasonable risk of harm when used in their intended manner and for their intended purpose and ensured quality care for the Injured Infant.

170.  At all times relevant to this action, the Injured Infant used the cow's milk-based products purchased, supplied, and/or distributed by Penn Medicine and Pennsylvania Hospital in their intended manner and for their intended purpose.

Case ID: 220302594

171. Moreover, at all relevant times, Penn Medicine and Pennsylvania Hospital knowingly authorized the Defendant Manufacturers' sales representatives to market, advertise, distribute, and/or sell their products at Pennsylvania Hospital. The Defendant Manufacturers' sales representatives were encouraged to interact with Pennsylvania Hospital's healthcare professionals and medical staff. These interactions provided the Defendant Manufacturers' sales representatives an opportunity to co-opt Pennsylvania Hospital's healthcare professionals and medical staff into assisting with the marketing, distribution, and/or sale of the Defendant Manufacturers' unreasonably dangerous products.

172. Penn Medicine and Pennsylvania Hospital also knowingly allowed the Defendant Manufacturers' sales representatives to routinely misrepresent the risks and benefits of Defendants' products to Pennsylvania Hospital's healthcare professionals and medical staff, including the misrepresentation that premature babies would not grow adequately with human milk and human milk products and that use of donor milk was not advised for premature infants.

173. Penn Medicine and Pennsylvania Hospital knew or reasonably should have known at the time that it formulated, adopted, and enforced its rules for the acquisition, distribution, and supply of the Defendant Manufacturers' cow's milk-based infant products, including the access afforded the Defendant Manufacturer's sales representatives, that these products significantly increased the risk of NEC, serious injury, and death for premature infants.

174. Since prior to 2000, Penn Medicine and Pennsylvania Hospital knew or reasonably should have known that premature babies are increased risk for NEC.

175. Since prior to 2000, Penn Medicine and Pennsylvania Hospital knew or reasonably should have known that NEC increases the risk of permanent injury and death.

176. Since 2000, Penn Medicine and Pennsylvania Hospital knew or reasonably should have

Case ID: 220302594

known prior to that human milk (mother's milk) was safest and best for premature infants.

177. Since 2000, Penn Medicine and Pennsylvania Hospital knew or reasonably should have known that human milk (mother's milk) decreased the risk of NEC, serious injury, and death for premature infants.

178. By no later than 2012, Penn Medicine and Pennsylvania Hospital knew or reasonably should have known that donor human milk decreased the risk of NEC, serious injury, and death for premature infants.

179. Penn Medicine and Pennsylvania Hospital knew or reasonably should have known that its medical professionals and the parents of premature infants, including the Plaintiff Parent, would not have realized the risks associated with feeding cow's milk-based formula to premature infants.

180. Nonetheless, Penn Medicine and Pennsylvania Hospital acted negligently, outrageously, and recklessly, and breached its duty by:

     a. Failing to formulate, adopt, and enforce adequate rules and policies that would have required human milk (mother's milk and/or donor milk) to be recommended to premature babies; and/or

     b. Failing to formulate, adopt, and enforce adequate rules and policies that would have restricted or prevented the use of cow's milk-based products for feeding premature babies; and/or

     c. Failing to formulae, adopt, and enforce adequate rules and policies that informed the Plaintiff Parent that human milk (mother's milk and/or donor milk) significantly decrease the risk of NEC, severe injury, and death in premature babies, like the Injured Infant; and/or

     d. Failing to formulate, adopt, and enforce adequate rules and policies that warned the

54

Case ID: 220302594

Plaintiff Parent that cow's milk-based products significantly increase the risk of NEC, severe injury, and death in premature babies, like the Injured Infant; and/or

e. Failing to formulate, adopt, and enforce adequate rules and policies that discussed the risks of cow's milk-based products significantly increasing the risk of NEC, severe injury, and death in premature babies, like the Injured Infant; and/or

f. Failing to formulate, adopt, and enforce adequate rules and policies that warned its healthcare professionals and medical staff that cow's milk-based products are unsafe and/or contraindicated for premature babies like the Injured Infant; and/or

g. Failing to formulate, adopt, and enforce adequate rules and policies to instruct its healthcare professionals and medical staff on the information that should be provided to parents in order to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risk; and/or

h. Failing to formulate, adopt, and enforce adequate rules and policies to provide its healthcare professionals and medical staff with the well-researched and well-established studies that link cow's milk-based products to NEC and death in premature infants; and/or

i. Failing to formulate, adopt, and enforce adequate rules and policies to ensure a warning in a method reasonably calculated/expected to reach the parents of premature newborns, like the Plaintiff Parent; and/or

j. Failing to formulate, adopt, and enforce adequate rules and policies to prevent the Defendant Manufacturers' sales representative from misrepresenting to Pennsylvania Hospital's healthcare professionals and medical staff that premature

Case ID: 220302594

babies would not grow adequately with human milk and human milk products and/or that use of donor milk was not advised for premature infants; and/or

k. Failing to establish a donor milk program that was sufficient to meet the needs of the premature babies, like the Injured Infant.

l. Failing to formulate, adopt, and enforce adequate rules and policies regarding the feeding of premature infants leaving it to the discretion of the medical team and parent without a discussion of risks and benefits.

m. Allowing parental preference to be the standard for feeding premature infants;

n. Failing to follow the American Academy of Pediatrics recommendations relating to feeding premature infants;

o. Failing to follow the American Academy of Pediatrics recommendations to use donor milk if mother's milk was unavailable instead of cow's milk-based products;

p. Failing to recommend donor milk if mother's milk was unavailable by no later than 2012; and

q. Failing to transfer to a hospital by no later than 2012 where donor milk was available if there was no donor milk available.

181. A reasonable hospital under the same or similar circumstances would have formulated, adopted, and enforced adequate policies, and rules to restrict the feeding of cow's milk-based products to premature babies, including developing an adequate donor milk program, instructing its healthcare professionals and medical staff on the safe use of Defendants Manufacturers' cow's milk-based products, and restricting the marketing of the Defendant Manufacturers' unreasonably dangerous products to its healthcare professionals, medical staff, and parents of premature infants under its care.

Case ID: 220302594

182. Had Penn Medicine and Pennsylvania Hospital exercised reasonable care by satisfying its duty to formulate, adopt, and enforce adequate rules and policies to ensure the quality care of its patients, the Injured Infant would not have been exposed to the Defendant Manufacturers' cow's milk-based products.

183. As a direct and proximate result of Penn Medicine and Pennsylvania Hospital failure to formulate and enforce adequate policies and rules related to the danger posed by the Defendant Manufacturers' unreasonably dangerous cow's milk-based products, the Injured Infant was fed the Defendant Manufacturers' cow's milk-based products, which caused and/or increased the risk of developing NEC and significant injuries.

184. As a further direct and proximate result of Penn Medicine and Pennsylvania Hospital negligent, reckless, and outrageous conduct the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms. Her life has been significantly affected by the Injured Infant's injuries.

185. In the alternative, Penn Medicine and Pennsylvania Hospital owed a duty to its patients, and the Injured Infant in particular, to oversee the practicing healthcare professionals and medical staff that provided the products at issue to infants under Pennsylvania Hospital's care, including the Injured Infant.

186. Penn Medicine and Pennsylvania Hospital employed or contracted with the healthcare professionals and medical staff at Pennsylvania Hospital and was responsible for overseeing those individuals during their treatment of the Injured Infant.

187. Nonetheless, Penn Medicine and Pennsylvania Hospital acted negligently, recklessly, and outrageously breached its duty by:

    a. Failing to oversee its healthcare professionals and medical staff on their use of

cow's milk-based products for feeding premature babies; and/or

b. Failing to warn or instruct its healthcare professionals and medical staff that cow's milk-based products significantly increase the risk of NEC, severe injury, and death in those babies; and/or

c. Failing to warn or instruct its healthcare professionals and medical staff that cow's milk-based products are unsafe and/or contraindicated for premature babies like the Injured Infant; and/or

d. Failing to oversee its healthcare professionals and medical staff to restrict their feeding of cow's milk-based products to premature babies; and/or

e. Failing to warn or instruct its healthcare professionals and medical staff on the information that should be provided to parents in order to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risk; and/or

f. Failing to provide its healthcare professionals and medical staff with the well-researched and well-established studies that link cow's milk-based products to NEC and death in premature infants; and/or

g. Failing to provide its healthcare professionals and medical staff with warnings about the dangers of the Defendants' Manufacturers products in a method reasonably calculated/expected to reach the parents of newborns; and/or

h. Failing to provide statistical evidence to its healthcare professionals and medical staff showing the magnitude of increased risk of NEC in premature infants associated with cow's milk-based products; and/or

i. Failing to oversee its healthcare professionals and medical staff to ensure that the

58

Defendant Manufacturers' sales representatives' misrepresentations that premature babies would not grow adequately with human milk and human milk products and that use of donor milk was not advised for premature infants had not influenced the use and/or misuse of the Defendant Manufacturers' products.

188. A reasonable hospital under the same or similar circumstances would have warned of the above risks, would have instructed its healthcare professionals and medical staff on the safe use of the Defendant Manufacturers' products, and would have restricted the ability of the Defendant Manufacturers' sales representatives to market the Defendant Manufacturers' unreasonably dangerous products without adequate warning.

189. A reasonable hospital under the same or similar circumstances would have overseen and managed its healthcare professionals and medical staff to ensure that they received proper training and updating on the risks associated with feeding cow's milk-based formula to premature infants.

190. Had Penn Medicine and Pennsylvania Hospital exercised reasonable care by satisfying its duty to oversee its healthcare professionals and medical staff who provide patient care, the Injured Infant would not have been exposed to the Defendant Manufacturers' cow's milk-based products.

191. As a direct and proximate result of Penn Medicine and Pennsylvania Hospital's failure to oversee its healthcare professionals and medical staff on the danger posed by the Defendant Manufacturers' unreasonably dangerous cow's milk-based products, the Injured Infant was fed the Defendant Manufacturers' cow's milk-based products, which caused and/or increased the risk of developing NEC and significant injuries.

192. As a further direct and proximate result of Penn Medicine and Pennsylvania Hospital's negligent and reckless conduct, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms. Her life has been significantly affected by the Injured Infant's

Case ID: 220302594

injuries.

WHEREFORE, Plaintiff demands judgment against Penn Medicine and Pennsylvania Hospital, individually, jointly and severally, as follows:

    a.  For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

    b.  For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of Penn Medicine and Pennsylvania Hospital's conduct;

    c.  For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

    d.  For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from Penn Medicine's oppressive, fraudulent, and/or malicious conduct, as permitted by law;

    e.  For interest as permitted by law;

    f.  For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

    g.  For such other and further relief as the Court deems proper.

### DEMAND FOR JURY TRIAL

193. Plaintiff hereby demands a jury trial for all claims triable.


Dated: July 16, 2024

                                     Respectfully submitted,

                                     **KLINE & SPECTER, P.C.**

Case ID: 220302594

By:    */s/ Tobias L. Millrood*
       Tobias L. Millrood, Esq.
       Elizabeth A. Crawford, Esq.
       Timothy A. Burke, Esq.
       John P. O'Neill, Esq.

       Benjamin Whiting, Esq. (pro hac vice)
       **KELLER POSTMAN LLC**
       150 N. Riverside Plaza, Suite 4100
       Chicago, IL 60606
       Telephone: (312) 741-5220
       Fax: (312) 971-3502

       *Attorneys for Plaintiffs*

Case ID: 220302594

# EXHIBIT A-55

BURNS WHITE LLC
By:   James A. Young, Esquire
      Richard S. Margulies, Esquire
      Douglas A. Brockman, Esquire
      Meredith A. Lowry, Esquire
Attorney ID Nos. 00213/62306/67185/321131
1835 Market Street, Suite 2700
Philadelphia, PA 19103
(215) 587-1600
jayoung@burnswhite.com; rsmargulies@burnswhite.com
dabrockman@burnswhite.com; malowry@burnswhite.com

*Attorneys for Defendant, The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine*

| | | |
|---|---|---|
| SHONDERA DRAYTON on her own behalf and as Parent and Natural Guardian of A.D., a Minor | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | MARCH TERM 2022 |
| MEAD JOHNSON & COMPANY, LLC, et al. | : | NO. 2594 |
| Defendants. | : | |

## ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

Kindly enter the appearance of Meredith A. Lowry, Esquire as co-counsel on behalf of Defendants, The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine, in the above-captioned matter.

Date: July 22, 2024

                      **BURNS WHITE LLC**

                      BY: */s/ Meredith A. Lowry*
                            Meredith A. Lowry, Esquire

Filed and Attested by the Office of Judicial Records 22 JUL 2024 09:31 pm D. EMPERATO

<u>**CERTIFICATE OF SERVICE**</u>

I, Meredith A. Lowry, Esquire, hereby certify that a true and correct copy of the foregoing

*Entry of Appearance* was served via the Court's electronic filing on all counsel of record.

|  |  |
|---|---|
| | **BURNS WHITE LLC** |
| Date: July 22, 2024 | BY: <u>*/s/ Meredith A. Lowry*</u> |
| | Meredith A. Lowry, Esquire |